**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AES CORPORATION, Petitioner, - against - ARGENTINE REPUBLIC, Respondent. | Civil Action No. 1:25-cv-02540-RBW **ORAL ARGUMENT REQUESTED** |

**RESPONDENT THE ARGENTINE REPUBLIC'S**
**MOTION TO STAY THE PROCEEDING**

Respondent the Argentine Republic (the "Republic") respectfully submits this Motion to Stay the present action. In this action, Petitioner AES Corporation seeks recognition and enforcement of an arbitral award (the "Award") issued against the Republic on May 30, 2025 in an arbitration conducted under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"), under 22 U.S.C. § 1650a and Article 54 of the ICSID Convention. (Pet. ¶ 1.) On September 26, 2025, the Republic timely filed an application for annulment of the Award under Article 52 of the ICSID Convention, which is currently pending before an *ad hoc* Committee.

The Republic hereby moves this Court, for the reasons set forth in the accompanying Memorandum of Points and Authorities in Support of its Motion to Stay the Proceeding, for an order suspending all applicable deadlines in this action until the *ad hoc* Committee resolves the Republic's application for annulment. Pursuant to Local Civil Rule 7(f), oral argument is requested.

Date: October 13, 2026

Respectfully submitted,

/s/ *Amanda F. Davidoff*
Amanda F. Davidoff (D.C. Bar No. 978033)
Stephanie M. Kelly (D.C. Bar No. 1671765)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006-5215
Telephone: (202) 956-7500
Facsimile: (202) 956-7676
davidoffa@sullcrom.com
kellys@sullcrom.com

Sergio J. Galvis (NY Reg. No. 1934264)
(*pro hac vice*)
Qingyang Song (NY Reg. No. 5925474)
(*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
galviss@sullcrom.com
songq@sullcrom.com

*Counsel for the Argentine Republic*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AES CORPORATION,<br><br>Petitioner,<br><br>- against -<br><br>ARGENTINE REPUBLIC,<br><br>Respondent. | Civil Action No. 1:25-cv-02540-RBW<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONDENT THE ARGENTINE REPUBLIC'S MOTION TO STAY THE PROCEEDING**

Amanda F. Davidoff (D.C. Bar No. 978033)
Stephanie M. Kelly (D.C. Bar No. 1671765)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006-5215
Telephone: (202) 956-7500
Facsimile: (202) 956-7676
davidoffa@sullcrom.com
kellys@sullcrom.com

Sergio J. Galvis (NY Reg. No. 1934264)
(*pro hac vice*)
Qingyang Song (NY Reg. No. 5925474)
(*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
galviss@sullcrom.com
songq@sullcrom.com

*Counsel for the Argentine Republic*

October 13, 2026

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ........................................ 1

**BACKGROUND** ........................................ 2

A. The Award and the Republic's Annulment Application ........................................ 2

B. Petitioner's Recognition and Enforcement Action in This Court ........................................ 4

**ARGUMENT** ........................................ 5

A. A Stay Would Promote Judicial Efficiency and Conserve the Court's and the Parties' Resources ........................................ 6

B. Petitioner Will Suffer Little, If Any, Prejudice from a Limited Stay ........................................ 9

C. The Republic Would Face Substantial and Potentially Irremediable Hardship If a Stay Is Denied ........................................ 11

**CONCLUSION** ........................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Matter of Arb. of Certain Controversies Between Getma Int'l & Republic of Guinea*,
142 F. Supp. 3d 110 (D.D.C. 2015) ....................11

*Belize Soc. Dev. Ltd.* v. *Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012) ....................5

*ConocoPhillips Petrozuata B.V.* v. *Bolivarian Republic of Venezuela*,
628 F. Supp. 3d 1 (D.D.C. 2022) ....................7

*Cube Infrastructure Fund Sicav* v. *Kingdom of Spain*,
2021 WL 7447978 (D.D.C. May 17, 2021) ....................11

*Fraport AG Frankfurt Airport Services Worldwide* v. *Republic of the Philippines*,
ICSID Case No. ARB/03/25, Decision on the Application for Annulment of Fraport AG Frankfurt Airport Services Worldwide (Dec. 23, 2010) ....................9

*Higgins* v. *SPX Corp.*,
2006 WL 1008677 (W.D. Mich. Apr. 18, 2006) ....................12

*Hulley Enters. Ltd.* v. *Russian Fed'n*,
211 F. Supp. 3d 269 (D.D.C. 2016) ....................6, 10

*InfraRed Env't Infrastructure GP Ltd.* v. *Kingdom of Spain*,
2021 WL 2665406 (D.D.C. June 29, 2021) ....................5, 7, 10

*Koch Mins. Sarl* v. *Bolivarian Republic of Venezuela*,
514 F. Supp. 3d 20 (D.D.C. 2020) ....................1, 5, 6, 12

*Landis* v. *N. Am. Co.*,
299 U.S. 248 (1936) ....................5

*Masdar Solar & Wind Cooperatief U.A.* v. *Kingdom of Spain*,
397 F. Supp. 3d 34 (D.D.C. 2019) ....................1, 2, 6, 7, 12

*Occidental Petroleum Corporation and Occidental Exploration and Production Company* v. *Ecuador (II)*, ICSID Case No. ARB/06/11, Decision on Annulment of the Award (Nov. 2, 2015) ....................9

*Perenco Ecuador Limited* v. *Republic of Ecuador*, ICSID Case No. ARB/08/6, Decision on Annulment (May 28, 2021) ....................9

*RREEF Infrastructure (G.P.) Ltd.* v. *Kingdom of Spain*,
2021 WL 1226714 (D.D.C. Mar. 31, 2021)....................7, 11

*Tethyan Copper Co. Pty Ltd.* v. *Islamic Republic of Pakistan*,
590 F. Supp. 3d 262 (D.D.C. 2022)....................7

*Union Fenosa Gas, S.A.* v. *Arab Republic of Egypt*,
2020 WL 2996085 (D.D.C. June 4, 2020).................... *passim*

**Statutes**

22 U.S.C. § 1650a....................4

28 U.S.C. § 1608(d)....................5

**Other Authorities**

ICSID Arbitration Rules 1984....................4, 10

**PRELIMINARY STATEMENT**

AES Corporation ("Petitioner") asks this Court to recognize and enforce an arbitration award of over $732 million dollars against the Republic of Argentina (the "Republic") while the International Centre for Settlement of Investment Disputes ("ICSID") is still considering whether the award should be annulled in whole or in part. The Court should not recognize and enforce a flawed arbitral award that an ICSID *ad hoc* Committee (the "ICSID Committee") may soon annul (in whole or in part). Doing so would force the Court and the parties to expend substantial resources on proceedings that may prove unnecessary, while exposing the Republic to serious economic harm that would be difficult—if not impossible—to unwind. The equitable and practical course is to instead stay this action for the limited period necessary for the ICSID Committee to complete its review.

Courts in this District evaluate motions to stay by considering three factors: judicial economy, the hardship a stay would impose on the nonmoving party, and the hardship the moving party would suffer absent a stay. All three factors strongly favor a stay here.

*First*, courts have repeatedly recognized that a stay pending ICSID annulment proceedings conserves judicial resources and avoids the risk of inconsistent or unnecessary proceedings. *See, e.g.*, *Masdar Solar & Wind Cooperatief U.A.* v. *Kingdom of Spain*, 397 F. Supp. 3d 34, 39-40 (D.D.C. 2019); *Koch Mins. Sarl* v. *Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 45 (D.D.C. 2020). Those considerations carry particular force here because "the possibility of the award being set aside, or at least modified, is not merely wishful thinking." *Union Fenosa Gas, S.A.* v. *Arab Republic of Egypt*, 2020 WL 2996085, at *4 (D.D.C. June 4, 2020). The Republic's annulment application identifies three independent grounds for annulment: (i) the Tribunal manifestly exceeded its powers; (ii) the Tribunal departed from fundamental rules of procedure; and (iii) the Tribunal failed to state reasons for material aspects of its decision.

Proceeding now therefore creates a substantial risk that the Court will expend resources enforcing an award that the ICSID Committee later annuls in whole or in part.

*Second*, the balance of hardships points decisively in the same direction. Petitioner will suffer little, if any, prejudice from a short stay while the annulment proceedings—which are scheduled to be fully briefed and argued by March 2027—run their course. And in the meantime, the award will continue to accrue interest, preserving Petitioner's economic interests and compensating it for the delay.

*Third*, the Republic, by contrast, faces immediate and substantial harm if recognition and enforcement proceed. It would be "undeniably . . . burdened" by the prospect of "having to recover assets seized during this action should the annulment proceeding go its way." *Union Fenosa*, 2020 WL 2996085, at *4 (citing *Masdar Solar*, 397 F. Supp. 3d at 40). That concern is "heightened here" by the significant fiscal and macroeconomic constraints facing the Republic vis-à-vis "the enormity of the award," *id.*, which—at $732 million dollars before interest—is multiple times the Republic's annual budgets allocated to its defense and justice ministries and its disease prevention program. *See Union Fenosa*, 2020 WL 2996085, at *4.

At bottom, proceeding now would create substantial and potentially irreversible harm for little practical gain. A short stay will preserve the status quo, allow the ICSID Committee's review process to run its course, and avoid proceedings that may ultimately prove unnecessary. The Court should therefore stay this action until the pending annulment proceedings are resolved.

## BACKGROUND

### A. The Award and the Republic's Annulment Application

In 2002, Petitioner filed a request for arbitration with ICSID, alleging that certain measures adopted by the Republic in the energy sector had violated the Treaty Between the United

States of America and the Argentine Republic Concerning the Reciprocal Encouragement and Protection of Investment of November 14, 1991 (the "Argentina-U.S. BIT"). (*See* Pet. ¶¶ 8-9.) In December 2005, the parties agreed to stay the proceedings while they pursued settlement. (Ex. 1 (Annulment Application) ¶ 11.) While the stay was pending for over a decade, the parties entered into agreements under which, the Republic maintains, Petitioner expressly waived the arbitration claims at issue here through its subsidiaries. (*Id.* ¶¶ 11, 31.) Nevertheless, on January 11, 2019, Petitioner requested to restart arbitration, and the proceedings resumed on December 12, 2019. (Pet. Ex. A (Award) ¶¶ 28, 138.)

On May 30, 2025, an ICSID arbitral tribunal (the "Tribunal") rendered an award (the "Award") against the Republic, with one Tribunal member dissenting on the apportionment of costs and legal fees. (*See* Pet. ¶ 12 & n.2; Pet. Ex. A (Award) ¶ 602; Pet. Ex. B (Dissenting Opinion).) The Tribunal concluded that certain regulatory measures adopted by the Republic "impair[ed] the management and operation of [Petitioner's] investment" and awarded Petitioner more than $732 million in damages, arbitration costs, and legal fees (plus interest thereon). (Pet. Ex. A (Award) ¶¶ 602(iii), (vi), (vii), (ix)-(xi).)

On September 26, 2025, the Republic timely filed an application (the "Annulment Application") under Article 52 of the ICSID Convention, seeking annulment of the Award on three separate grounds. *First*, the Republic contends that the Tribunal "manifestly exceeded its powers" by exercising jurisdiction over claims that Petitioner expressly waived and by failing to apply the proper governing law in its damages analysis. *Second*, the Republic asserts that the Tribunal "serious[ly] depart[ed]" from "fundamental rule[s] of procedure" by failing to hold Petitioner to its burden of proof, denying the Republic the right to cross-examine Petitioner's key witnesses, and denying it access to Petitioner's economic model underlying its damages claim. *Third*, the

Republic argues that the Award fails to state reasons for several parts of the Tribunal's determinations. (Ex. 1 (Annulment Application) ¶¶ 3, 26-60 (citing ICSID Convention, Art. 52(1)(b), (d)-(e)).) Any one of these grounds is a basis "to annul the [A]ward" in full or in part. *See* ICSID Convention, Art. 52(3).

On October 17, 2025, the ICSID Secretary-General registered the Republic's Annulment Application and provisionally stayed enforcement of the Award. (Ex. 2 (Stay Decision) ¶ 2.) On April 9, 2026, the ICSID Committee continued the stay through the conclusion of the annulment proceedings, on the condition that the Republic post "suitable" security covering the full amount of the principal and interest due under the Award, on terms to be agreed by the parties. (Ex. 2 (Stay Decision) ¶ 108.) In light of ongoing economic hardship, the Republic could not post a security in that full amount but offered to discuss alternative security. Because the parties could not reach agreement, the ICSID Committee lifted the provisional stay on July 9, 2026. (Ex. 3 (Jul. 9, 2026 Ltr. from the Secretary of the ICSID Committee).)

The annulment proceedings, however, remain ongoing. The parties' briefing on the Annulment Application is scheduled to conclude by February 1, 2027, less than four months from now, and a hearing is set for March 11-12, 2027. (Ex. 4 (Revised Procedural Calendar).) Under the ICSID Arbitration Rules 1984, which govern the annulment proceedings here (Ex. 5 (Procedural Order No. 2) ¶ 1.1; Pet. Ex. A (Award) ¶ 11), once the parties have completed their presentation of the case and the proceeding is declared closed, the ICSID Committee must issue its decision within 60 days, subject to a single 30-day extension. *See* Rules 38, 46, and 53 of the ICSID Arbitration Rules 1984.

### B. Petitioner's Recognition and Enforcement Action in This Court

On August 4, 2025, Petitioner filed its petition in this case, seeking recognition and enforcement of the Award under 22 U.S.C. § 1650a and Article 54 of the ICSID Convention. (Pet.

¶ 1.) On July 24, 2026, the parties filed a joint motion seeking to resolve any disputes regarding the completion, sufficiency, and timing of service of the Petition as consideration for an extension of the Republic's deadline under 28 U.S.C. § 1608(d) to serve its answer or otherwise respond to the Petition. (ECF No. 18.) The Court granted the joint motion on July 27, 2026, and ordered the Republic to serve its answer or otherwise respond to the Petition and to file its motion to stay by October 13, 2026. (Jul. 27, 2026 Minute Order.)

**ARGUMENT**

The Court should stay this action and defer any ruling on the Petition until the ICSID Committee resolves the Republic's Annulment Application. The Court may issue a stay under its "inherent" authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936). In considering a motion to stay, the Court should "weigh competing interests and maintain an even balance between [its] interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd.* v. *Gov't of Belize*, 668 F.3d 724, 732-33 (D.C. Cir. 2012) (internal quotation marks omitted).

As a threshold matter, the ICSID Committee's lifting of the provisional stay following Petitioner's refusal to consider a compromise security amount does not preclude a stay here. Courts frequently issue stays "even when the ICSID lifted its stay on enforcing an award before issuing a decision in annulment proceedings." *Koch*, 514 F. Supp. 3d at 45; *see InfraRed Env't Infrastructure GP Ltd.* v. *Kingdom of Spain*, 2021 WL 2665406, at *6 (D.D.C. June 29, 2021) (same). That is because "the ICSID's lifting of the stay merely permits but does not require a signatory state to enforce the award." *Union Fenosa*, 2020 WL 2996085, at *5 (staying enforcement where an ICSID *ad hoc* committee lifted its stay following defendant's failure to post required security). Accordingly, the Court must independently evaluate whether a stay is

warranted by balancing (1) the "benefits of a stay," (2) the "hardship to the [Republic] of denying a stay," and (3) "any injury to [Petitioner] from issuing a stay." *Hulley Enters. Ltd.* v. *Russian Fed'n*, 211 F. Supp. 3d 269, 280 (D.D.C. 2016). Taken together, these factors weigh decisively in favor of a stay.

### A. A Stay Would Promote Judicial Efficiency and Conserve the Court's and the Parties' Resources

The pending annulment proceeding may eliminate in whole or in part the Award that Petitioner asks this Court to recognize and enforce. In these circumstances, courts have recognized that a stay preserves judicial and party resources and is ultimately more efficient than proceeding in parallel. That is because if a court were to "confirm an award that the ICSID [C]ommittee annuls or modifies," "more expensive litigation involving more complex issues would result" that may never be necessary. *Masdar Solar*, 397 F. Supp. 3d at 39. Further, a stay ordered now "would still likely be shorter than the possible delay that would occur if this Court were to confirm the award and the [ICSID Committee] were to then set it aside." *Id.* Conducting unnecessary legal proceedings and then the work needed to undo their effects "is precisely the opposite of what arbitration attempts to promote: the swift and (relatively) simple disposition of litigation." *Id.* at 39-40.

For precisely this reason, courts in this District have stayed parallel recognition and enforcement actions pending ICSID annulment proceedings where, as here, the action remained at an early stage. *See id.* at 36-37 (granting a stay where sovereign had been served but merits briefing had not begun); *Koch*, 514 F. Supp. 3d at 26, 47 (granting a stay after sovereign "made its first appearance" following entry of default); *Union Fenosa*, 2020 WL 2996085, at *2, 5 (same). This action is similarly in its infancy: the Republic has only recently been served, and the parties have not commenced briefing or otherwise invested substantial resources litigating the Petition.

*Cf. Tethyan Copper Co. Pty Ltd.* v. *Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 270 (D.D.C. 2022) (denying a stay in part because "[b]riefing before this Court on [the relevant] issues is now complete"). As a result, a stay would conserve judicial and party resources while avoiding unnecessary proceedings and "the possibility for conflicting judgments." *InfraRed*, 2021 WL 2665406, at *5; *RREEF Infrastructure (G.P.) Ltd.* v. *Kingdom of Spain*, 2021 WL 1226714, at *7-8 (D.D.C. Mar. 31, 2021) ("[c]onsiderations of judicial economy favor a stay" because "[t]here can be no serious dispute that the ICSID proceedings could significantly impact this litigation"); *Union Fenosa*, 2020 WL 2996085, at *4 ("considerations of judicial economy favor a stay" where "a parallel proceeding is ongoing" and "there is a possibility that the award will be set aside").[1]

The benefits of a brief stay are especially likely to be realized here because the Republic's Annulment Application presents substantial grounds for relief. (*See generally* Ex. 1 (Annulment Application).) The Republic does not ask this Court to rule on those grounds, but their nature and seriousness make clear that annulment of the Award (in whole or in part) is, at least, a genuine possibility. *See Union Fenosa*, 2020 WL 2996085, at *4 (judicial economy favored a stay in part because "the possibility of the award being set aside, or at least modified, [was] not merely wishful thinking"); c*f. ConocoPhillips Petrozuata B.V.* v. *Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, 10 (D.D.C. 2022) (deciding not to stay the proceedings *sua sponte* in part because there was "no reason to think annulment particularly likely"). As detailed in the Republic's Annulment Application, there are serious grounds for annulment of the Award under

[1] Although comity is not a formal element of the stay analysis, courts in this District have recognized that it weighs in favor of a stay where parallel proceedings before an international tribunal remain ongoing and "premature enforcement risks conflicting results and [a] consequent offense to international comity." *Masdar Solar*, 397 F. Supp. 3d at 39 (citation omitted). Respect for ICSID's ongoing annulment review process therefore provides an additional, independent reason to preserve the status quo pending the ICSID Committee's decision.

Articles 52(1)(b), (d), and (e) of the ICSID Convention, including, by way of example, the following:

- The Tribunal manifestly "exceeded its powers" by exercising jurisdiction over Petitioner's claims, despite the fact that Petitioner had expressly waived the arbitration claims at issue through agreements executed through its subsidiaries. (Ex. 1 (Annulment Application) ¶ 31.)
- The Tribunal "seriously departed from fundamental rules of procedure" by (1) refusing to allow the Republic to cross-examine the only two witnesses with direct knowledge of Petitioner's waivers of its claims; and (2) quantifying the amount of damages based on Petitioner's economic model, to which the Republic had requested but was denied access. (*Id.* ¶¶ 35-44.)
- The Tribunal compounded its departure from fundamental rules of procedure by failing, without explanation, to consider the findings of another ICSID tribunal that ruled in favor of the Republic on claims concerning the same measures brought by an investor in the same industry, notwithstanding the parties' extensive briefing on that ruling. (*Id.* ¶ 44.)
- The Tribunal failed to "express the grounds on which [the Award] is based" in material aspects of its determinations, including by awarding damages without establishing the purported causal link between the alleged breaches and the damages claimed. (*Id.* ¶¶ 45, 58.)

Acceptance of any one of these grounds would support annulment of the Award in whole or in part. *See* ICSID Convention, Art. 52(3) ("The Committee shall have the authority to annul the award or any part thereof on any of [these] grounds[.]"). And ICSID *ad hoc* committees

have annulled awards for comparable defects. *See, e.g.*, *Occidental Petroleum Corporation and Occidental Exploration and Production Company* v. *Ecuador (II)*, ICSID Case No. ARB/06/11, Decision on Annulment of the Award (Nov. 2, 2015), ¶¶ 49, 590(1) (partially annulling an award on the basis that the tribunal had manifestly exceeded its powers by "decid[ing] issues not subject to their jurisdiction");[2] *Fraport AG Frankfurt Airport Services Worldwide* v. *Republic of the Philippines*, ICSID Case No. ARB/03/25, Decision on the Application for Annulment of Fraport AG Frankfurt Airport Services Worldwide (Dec. 23, 2010), ¶¶ 200, 287(1) (annulling an award in full on the basis that the tribunal had departed from a fundamental rule of procedure by depriving one party of "the right . . . to make submissions on evidence submitted by its opponent");[3] *Perenco Ecuador Limited* v. *Republic of Ecuador*, ICSID Case No. ARB/08/6, Decision on Annulment (May 28, 2021), ¶¶ 367, 461, 744(a) (partially annulling an award on the basis that the tribunal failed to "show the premises leading to [its] conclusion" to award loss of profits as damages).[4]

For all of these reasons, considerations of judicial economy strongly favor a stay.

### B. Petitioner Will Suffer Little, If Any, Prejudice from a Limited Stay

Petitioner will suffer no cognizable hardship from a brief stay pending resolution of the ICSID annulment proceedings given that the annulment proceedings are advancing under an established schedule, the Award will continue to accrue interest in the meantime, and Petitioner will retain every substantive enforcement right if the Award survives annulment.

---

[2] Available at: https://icsidfiles.worldbank.org/icsid/ICSIDBLOBS/OnlineAwards/C80/DC6912_En.pdf.

[3] Available at: https://www.italaw.com/sites/default/files/case-documents/ita0341.pdf.

[4] Available at: https://icsidfiles.worldbank.org/icsid/ICSIDBLOBS/OnlineAwards/C301/DS16452_En.pdf.

*First*, the requested stay is tied to a concrete, near-term deadline. The written phase of the annulment proceedings is already underway and scheduled to conclude within months, by February 1, 2027, with the annulment hearing itself set for March 11-12, 2027. (Ex. 4 (Revised Procedural Calendar).) Under the ICSID Arbitration Rules 1984 governing the annulment proceedings, a decision on the Annulment Application can reasonably be expected in 2027. (Rules 38, 46, and 53 of the ICSID Arbitration Rules 1984; *see also supra*, p. 4.) A stay would therefore preserve the status quo only until the ICSID Committee has an opportunity to address the Republic's pending Annulment Application; it would not impose an indefinite or open-ended delay. Courts in this District have recognized that stays of even longer duration impose limited hardship. *See, e.g.*, *Union Fenosa*, 2020 WL 2996085, at *5 (granting stay in part because "[a] delay of [seven] months, rather than years, . . . mitigates [petitioner's] hardship" and recognizing that "courts in this district have granted a stay to enforce arbitration awards in the face of far greater expected delays"); *Hulley*, 211 F. Supp. 3d at 288 (granting stay where set-aside proceedings were expected to conclude "within two and a half years").

*Second*, any delay-related prejudice to Petitioner is substantially mitigated because the Award continues to accrue interest—at the one-year U.S. Treasury Bills rate (Pet. Ex. A (Award) ¶ 602(xi)), which is currently 4.46%[5]—throughout the annulment proceedings. *See InfraRed*, 2021 WL 2665406, at *6 (concluding that because "plaintiffs' award will continue to collect interest at a rate of 2 percent" "their possible hardship" was "diminish[ed]" "even further" and could not "outweigh the concrete hardship to [the sovereign] that might follow a potentially

---

[5] This is the one-year U.S. Treasury Bills rate as of October 9, 2026, the latest date available. *See* U.S. Dep't of the Treasury, Daily Treasury Rates, https://home.treasury.gov/resource-center/data-chart-center/interest-rates/TextView?field_tdr_date_value=2026&type=daily_treasury_bill_rates (last visited Oct. 13, 2026).

premature decision on the merits by this Court"); *Union Fenosa*, 2020 WL 2996085, at *5 (recognizing that the award creditor would "be compensated for any delay because the award includes interest").

*Third*, a stay will not impair Petitioner's ability to seek recognition and enforcement if the Award survives annulment. The stay would simply delay recognition proceedings for a limited period, and if the annulment application is denied, Petitioner can proceed with this action at that time, with the benefit of accrued interest and without having lost any substantive enforcement right. By contrast, proceeding now would risk generating a federal judgment—and potentially further litigation on enforcement and execution—concerning an Award that the ICSID Committee may later annul in whole or in part.

In sum, the temporary stay requested by the Republic would impose, at most, a limited delay for which Petitioner is financially compensated, which falls far short of outweighing the other interests served by a stay here.

### C. The Republic Would Face Substantial and Potentially Irremediable Hardship If a Stay Is Denied

The Republic, by contrast, would face concrete and substantial hardship if this action proceeds while the validity of the Award remains under review. As a general matter, there is "very real harm" whenever a court confirms an award, the petitioner "take[s] action to execute on the judgment," and a subsequent review "determine[s] that the award was improper." *Matter of Arb. of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp. 3d 110, 118 (D.D.C. 2015). "If the arbitral award is enforced prematurely and is later annulled, there will undoubtedly be litigation to recover any . . . state assets that are seized during the pendency of the petition for annulment." *Cube Infrastructure Fund Sicav* v. *Kingdom of Spain*, 2021 WL 7447978, at *3 (D.D.C. May 17, 2021). Thus, "if the Court were to confirm the award now, [the Republic]

could face the arduous task of trying to recover seized assets if its annulment application before the ICSID proves successful." *RREEF Infrastructure*, 2021 WL 1226714, at *8; *see also Masdar Solar*, 397 F. Supp. 3d at 40 (recognizing sovereign's hardship of "ultimately having to recover assets seized during this action should the annulment proceeding go its way"). In light of the "possibility that the award will be set aside," the Court should avoid "'acting improvidently by enforcing the award prior to the completion' of annulment proceedings." *Id.* (quoting *Higgins* v. *SPX Corp.*, 2006 WL 1008677, at *4 (W.D. Mich. Apr. 18, 2006).)

This case also presents hardship of a fundamentally different order than the ordinary case where a judgment may later be set aside. The Award exceeds $732 million before additional interest, an extraordinary sum whose enforcement would pose serious consequences for a sovereign already facing significant fiscal and macroeconomic constraints. Courts have recognized that the economic effects of recognizing and enforcing a massive award against a financially distressed sovereign can constitute substantial hardship warranting a stay. *See Koch*, 514 F. Supp. 3d at 45-47 (setting aside default against Venezuela in an action seeking recognition and enforcement of an award of approximately $307 million—less than half the sum at issue here—in light of, among other factors, the potential economic ramifications).

Here, although the Republic has made progress strengthening its macroeconomic stability in recent years, the IMF has noted the Republic's "deeply negative" net reserve position, its high inflation, and its lack of "sustained access to international capital markets amid sizable [foreign exchange] debt obligations." (Ex. 6 (May 8, 2026 IMF Country Report), at 9, 40, 66.) These conditions sharply limit the Republic's ability to absorb, secure, or satisfy an award of this magnitude without drawing on scarce public resources. The size of the Award relative to essential government budgets illustrates the severity of the burden. The Award's principal amount of

$715.9 million (excluding costs and interest) is approximately 7.9 times the annual 2026 budget allocated to the Ministry of Defense, approximately 4.8 times the annual 2026 budget allocated to the Ministry of Justice, and approximately 3.6 times the annual 2026 budget allocated to the Prevention and Control of Communicable and Vaccine-preventable Diseases program of the Ministry of Health. (Ex. 7 (Ministry of Defense 2026 budget) at 45-10, 45-14; Ex. 8 (Ministry of Justice 2026 budget) at 40-10, 40-12; Ex. 9 (Ministry of Health 2026 budget) at 80-11.)[6] Taken together, the Award's principal amount dwarfs these annual combined 2026 budget allocations by over $275 million. Immediate recognition and enforcement of an award of this scale would needlessly place the Republic's public resources and essential governmental expenditures at risk. The Court should avoid "plung[ing] so deeply into [the Republic's] treasury during a period of immense uncertainty if there is a chance that the award might be set aside or mitigated to some extent." *Union Fenosa*, 2020 WL 2996085, at *4.

Accordingly, the Republic's concrete and potentially irreversible hardship substantially outweighs any injury to Petitioner stemming from a limited, interest-compensated delay. Considered together, judicial economy and the balance of hardships strongly favor staying this action until the Annulment Application is resolved.

**CONCLUSION**

For the foregoing reasons, the Republic respectfully requests that the Court stay the proceeding until the Republic's Annulment Application is resolved.

---

[6] These figures were calculated using the closing seller's exchange rate as of October 9, 2026, which was USD 1 = ARS 1,517, as reported by the Central Bank of the Argentine Republic. *See* Banco Central de la República Argentina, *Cotizaciones por Fecha*, https://www.bcra.gob.ar/cotizaciones-por-fecha-2/?date2=2026-10-09 (exchange rates for Oct. 9, 2026).

Respectfully submitted,

/s/ *Amanda F. Davidoff*
Amanda F. Davidoff (D.C. Bar No. 978033)
Stephanie M. Kelly (D.C. Bar No. 1671765)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006-5215
Telephone: (202) 956-7500
Facsimile: (202) 956-7676
davidoffa@sullcrom.com
kellys@sullcrom.com

Sergio J. Galvis (NY Reg. No. 1934264)
(*pro hac vice*)
Qingyang Song (NY Reg. No. 5925474)
(*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
galviss@sullcrom.com
songq@sullcrom.com

*Counsel for the Argentine Republic*

October 13, 2026

**CERTIFICATE OF SERVICE**

Pursuant to Local Civil Rule 5.4(d), I hereby certify that, on October 13, 2026, I caused the foregoing Memorandum of Points and Authorities in Support of Respondent the Argentine Republic's Motion to Stay the Proceeding to be electronically filed via the Court's CM/ECF system, which effected service of the document upon all counsel of record.

/s/ *Amanda F. Davidoff*
Amanda F. Davidoff

*Counsel for the Argentine Republic*