# Davidoff Declaration
# Exhibit 2

**INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES**

**The AES Corporation**
Claimant

v.

**The Argentine Republic**
Respondent / Applicant

**(ICSID Case No. ARB/02/17)**
**Annulment Proceeding**

---

# DECISION ON THE STAY OF ENFORCEMENT OF THE AWARD

***Members of the* ad hoc *Committee***

Prof. Dário Moura Vicente, President of the *ad hoc* Committee
Prof. José Antonio Moreno Rodríguez, Member of the *ad hoc* Committee
Prof. Attila M. Tanzi, Member of the *ad hoc* Committee

***Secretary of the Committee***
Mr. Carlos Molina Esteban

---

9 April 2026

## Contents

I. PROCEDURAL HISTORY ....... 3

II. THE PARTIES' POSITIONS ....... 5

A. Argentina's Position ....... 5

**1. The Applicable Legal Standard** ....... 5

**2. Whether the Stay should be Maintained or Lifted** ....... 6

*a) The Argentine legal framework preserves the right to enforcement of ICSID awards* 7

*b) Argentina acknowledges its international obligations* ....... 7

*c) Continuing the stay of enforcement would not prejudice AES* ....... 8

*d) Lifting the suspension would severely harm Argentina* ....... 9

**3. Whether Security Should be Ordered** ....... 11

B. AES's Position ....... 12

**1. The Applicable Legal Standard** ....... 12

**2. Whether the Stay should be Maintained or Lifted** ....... 14

*a) Argentina has not met its burden to demonstrate circumstances requiring continuation of the stay* ....... 14

*b) The stay must be lifted due to material risk of non-compliance with the Award* ....... 15

*c) The balance of interests favors lifting the stay* ....... 17

**3. Whether Security Should be Ordered** ....... 18

III. THE COMMITTEE'S ANALYSIS ....... 19

A. The Applicable Legal Standard ....... 19

B. The Committee's Assessment of the Parties' Positions ....... 22

**1. Argentina's Position** ....... 22

**2. AES' position** ....... 24

**3. The Admissibility of the Request for the Provision of a Financial Security** ....... 25

D. Conclusion ....... 28

IV. DECISION ....... 28

# I. PROCEDURAL HISTORY

1. On 26 September 2025, the Argentine Republic filed an application for annulment of the Award (the "**Annulment Application**") and requested the stay of enforcement of the Award pursuant to Article 52(5) of the ICSID Convention.[1]

2. On 17 October 2025, the Secretary-General of ICSID registered the Annulment Application and informed the parties of the provisional stay of enforcement of the Award pursuant to ICSID Arbitration Rule (1984) 54(2) (the "**ICSID Arbitration Rules**").

3. On 15 January 2026, the *ad hoc* Committee was constituted and the annulment proceeding began in accordance with ICSID Arbitration Rules 6 and 53. The *ad hoc* Committee is composed of Prof. Dário Moura Vicente, a national of Portugal, serving as President, and Profs. José Antonio Moreno Rodríguez, a national of Paraguay, and Attila M. Tanzi, a national of Italy, serving as Committee members (the "**Committee**"). Mr. Carlos Molina Esteban, ICSID Legal Counsel, was designated to serve as Secretary of the Committee.

4. On 20 January 2026, AES Corporation ("**AES**") sent a letter to the Committee proposing a briefing schedule concerning the continuation of the stay of enforcement of the Award. On 27 January 2026, the Argentine Republic proposed an alternative briefing schedule, and on 29 January 2026, AES confirmed its agreement with Argentina's proposed schedule.

5. On 30 January 2026, the Committee issued Procedural Order No. 1, by which it: (i) approved the briefing schedule concerning the Continuation of the Stay of Enforcement of the Award as agreed by the parties; (ii) decided to maintain the Stay of Enforcement of the Award pending the Committee's decision on this matter; and (iii) reserved its decision on the costs of this incident for the Committee's final decision on the Annulment Application.

[1] Annulment Application, ¶61.

6. On 6 February 2026, pursuant to Procedural Order No. 1, the Argentine Republic submitted a request for the continuation of the stay of enforcement of the Award (the "**Request**").

7. On 20 February 2026, AES filed observations opposing the continuation of the stay of enforcement of the Award (the "**Response**").

8. On 27 February 2026, the Argentine Republic filed a reply in support of the continuation of the stay of enforcement of the Award (the "**Reply**").

9. On 6 March 2026, AES filed a rejoinder opposing the continuation of the stay of enforcement of the Award (the "**Rejoinder**").

10. On 10 March 2026, the Committee held a First Session by video conference. An audio recording of the session was distributed to the Members of the Committee and the parties. Participating in the session were:

Members of the *ad hoc* Committee:
Prof. Dário Moura Vicente, President of the *ad hoc* Committee
Prof. José Antonio Moreno Rodríguez, Member of the *ad hoc* Committee
Prof. Attila M. Tanzi, Member of the *ad hoc* Committee

ICSID Secretariat:
Mr. Carlos Molina Esteban, Secretary of the *ad hoc* Committee

Participating on behalf of AES Corporation (Claimant):
Mr. James Hosking, Chaffetz Lindsey LLP
Ms. Silvia Marroquin, Chaffetz Lindsey LLP
Mr. Nigel Blackaby, KC, Freshfields US LLP
Mr. Juan Ignacio Amado Aranda, Freshfields US LLP
Ms. Maria Victoria Abut, Freshfields US LLP
Mr. Marc Michael, AES Corporation

Participating on behalf of the Argentine Republic (Respondent / Applicant):
Mr. Juan Ignacio Stampalija, Subprocurador del Tesoro de la Nación
Ms. María Alejandra Etchegorry, Procuración del Tesoro de la Nación
Mr. Julián Rivainera, Procuración del Tesoro de la Nación
Mr. Miguel Schargrodsky, Procuración del Tesoro de la Nación

11. During the First Session, the Committee and the parties considered (i) the draft procedural order circulated by the Secretary of the Committee on 29 January 2026; (ii) the parties' comments and respective positions on the draft procedural order; and (iii) the amended draft procedural order circulated by the Secretary of the Committee on 9 March 2026. Among other items on the agenda, the parties confirmed the proper constitution of the Committee.

12. On 12 March 2026, the Committee issued Procedural Order No. 2 governing the procedural matters of the annulment proceeding, including the further schedule of written and oral pleadings.

## II. THE PARTIES' POSITIONS

### A. Argentina's Position

13. Argentina "requests the Committee to continue the stay of enforcement of the Award unconditionally while the present annulment proceedings are pending".[2]

#### 1. The Applicable Legal Standard

14. Argentina argues that neither the ICSID Convention nor the ICSID Arbitration Rules specify the circumstances that annulment committees must analyze when deciding whether to continue the stay of enforcement. It accordingly submits that committees enjoy discretion to assess the parties' arguments and determine the matter in light of all relevant circumstances and "in view of the particularities of each case".[3]

---

[2] Reply, ¶64. *See also*, Request, ¶37.
[3] Request, ¶12, relying on, *inter alia*, *Patrick Mitchell v. Democratic Republic of the Congo*, ICSID Case No. ARB/99/7, Decision on the Stay of Enforcement of the Award, 30 November 2004, ¶23 (**AL A RA 7**). *See also*, Reply, ¶4.

15. Argentina further alleges that *ad hoc* committees have frequently maintained stays of enforcement pending annulment[4] and refers to *Enron v. Argentina*, where the committee stated that a stay should be continued absent very exceptional circumstances.[5]

16. On that basis, Argentina rejects AES's position that a stay may be continued only in "exceptional circumstances,"[6] arguing that such a standard lacks textual support in the ICSID framework[7] and is inconsistent with annulment committee practice.[8]

17. Finally, Argentina, relying on *LSF-KEB v. Korea*, submits that the party requesting the stay of enforcement has the burden "to show circumstances which it alleges require the stay", while the opposing party has the burden to "show that the circumstances which [it] allege[s] require there to be no stay".[9] Argentina maintains that the requesting party need not prove that a stay is required, but must merely specify the circumstances justifying the stay.[10]

### 2. Whether the Stay should be Maintained or Lifted

18. Argentina lists the following circumstances to support its request*:* a) the Argentine legal framework preserves the right to enforce ICSID awards; b) Argentina recognizes its international obligations; c) continuation of the stay would not harm AES; and d) Argentina would be seriously harmed if the stay is not continued.

---

[4] Request, ¶13, citing, *inter alia*, *Amco Asia Corporation, Pan American Development Limited and P.T. Amco Indonesia v. Indonesia*, ICSID Case No. ARB/81/1, Annulment Decision, 16 May 1986*,* ¶8 (**AL A RA 8**); *Elsamex, S.A. v. Honduras*, ICSID Case No. ARB/09/4, Decision on the Continuation of the Stay of Enforcement of the Award, 7 January 2014, ¶86 § VI (**AL A RA 23**) and *LSF-KEB Holdings SCA and others v. Korea*, ICSID Case No. ARB/12/37, Decision on Stay of Enforcement, 15 December 2023, ¶100 (**AL A RA 6**).

[5] Request, ¶13, citing *Enron Corporation & Ponderosa Assets, L.P. v. Argentina*, ICSID Case No. ARB/01/3, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 7 October 2008, ¶43 (**AL A RA 4**). Argentina also cites *Azurix Corp. v. Argentina*, ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 28 December 2007*,* ¶22 (**AL A RA 1**).

[6] Reply, ¶4.

[7] Reply, ¶4, citing ICISD Convention, Art. 52(5).

[8] Reply, ¶5.

[9] Request, ¶ 11, citing *LSF-KEB Holdings SCA and others v. Republic of Korea*, ICSID Case No. ARB/12/37, Decision on Stay of Enforcement, 15 December 2023, ¶74 (**AL A RA 6**). *See also*, Reply, ¶6.

[10] Reply, ¶6, citing *Venezuela Holdings, B.V., and others v. Venezuela,* ICSID Case No. ARB/07/27, Procedural Decision No. 2, 28 July 2015, ¶8 (**AL A RA 25**); *and* ICISD Arbitration Rule 54(4).

*a) The Argentine legal framework preserves the right to enforcement of ICSID awards*

19. Argentina maintains that the Argentine legal and judicial framework preserves the enforceability of ICSID awards.[11] In support thereof, it relies on the Argentine Constitution, under which international treaties — including the ICSID Convention and the Argentina–United States BIT — have hierarchical superiority over, and prevail upon, domestic law.[12]

20. Argentina also refers to decisions of Argentine courts confirming that ICSID awards are binding[13] and should be recognized and enforced without need for an *exequatur*.[14]

*b) Argentina acknowledges its international obligations*

21. Argentina rejects AES's contention that the likelihood of compliance with the Award should be a preponderant factor in deciding whether to continue the stay. Instead, it argues that annulment committees enjoy broad discretion to consider relevant factors.[15]

22. Argentina further submits that AES has presented an "incorrect and unfair picture" of Argentina's approach to compliance with ICSID awards and judicial decisions.[16]

23. First, the Respondent asserts that the conclusion of post-award settlement agreements with award creditors constitute instances of compliance with ICSID awards,[17] settlements being "common practice" by which award creditors obtain satisfaction.[18]

[11] Request, ¶15. *See also*, Reply, ¶8.
[12] Request, ¶¶15-17. Argentina also cites to the *Azurix v. Argentina* committee, stating that the enforcement regime set forth in the Argentine Constitution and domestic law are consistent with the ICSID Convention. *Azurix Corp. v. Argentina*, ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 28 December 2007, ¶38 (**AL A RA 1**).
[13] Request, ¶18.
[14] Request, ¶19.
[15] Reply, ¶9.
[16] Reply, ¶27.
[17] Reply, ¶¶11-15.
[18] Reply, ¶16, citing "Background Paper – Compliance with and Enforcement of ICSID Awards", June 2024, ¶¶13-14 (**AL A RA 55**).

24. Second, Argentina disputes AES's claim that it sought to disregard its compliance obligations in *Impregilo*, *Teinver*, *Mobil*, and *Casinos v. Argentina*, noting that enforcement proceedings in *Impregilo* and *Teinver* remain pending and that no evidence of repudiation has been adduced with respect to *Mobil* or *Casinos*.[19]

25. Third, Argentina rejects AES's position that it resisted enforcement of the *Urbaser v. Argentina* award in Argentine courts for nearly a decade: enforcement proceedings were initiated in 2021, a decision was issued in 2023, and the award was paid last year.[20]

26. Finally, Argentina notes that the press materials cited by AES date back at least ten years and merely reflect its exercise of legitimate defense rights, adding that the same applies to AES's assertions regarding the *Petersen v. Argentina* case, which remains pending on appeal and subject to enforcement proceedings in multiple *fora.*[21]

*c) Continuing the stay of enforcement would not prejudice AES*

27. Argentina submits that the only potential prejudice to AES resulting from the continuation of the stay is the delay in the satisfaction of the Award pending the outcome of the annulment proceeding, should the Annulment Application ultimately be dismissed.[22]

28. Argentina contends that such delay does not constitute prejudice to the Award creditor, as annulment committees have consistently found that the postponement of payment of an award can be adequately remedied through the payment of interest.[23]

29. Argentina also challenges AES's assertion that the interest granted in the Award is lower than the Claimant's hypothetical return, had it had access to the funds during the annulment proceeding.[24] It believes that AES's reliance on WACC is inappropriate because (i) WACC

---

[19] Reply, ¶17.
[20] Reply, ¶18.
[21] Reply, ¶¶19-27.
[22] Request, ¶20.
[23] Request, ¶21.
[24] Reply, ¶30.

is a discount rate reflecting *ex ante* business risk and is not comparable to an interest rate;[25] (ii) AES has not identified concrete investment opportunities;[26] (iii) the Tribunal already rejected AES's request to use WACC as an interest rate during the original arbitration;[27] and (iv) AES's position is inconsistent with its stated intention to hold any received funds in "a segregated account" during the pendency of the annulment proceeding.[28]

30. Additionally, Argentina relies on *Azurix* and *Enron v. Argentina* to state that the delay in payment caused by the stay of the enforcement is incidental to the ICSID Convention's annulment mechanism, and does not prejudice the award creditor, whose rights are subject to that framework.[29]

31. Argentina also submits that, in light of AES's size and financial position, delayed payment would not cause financial distress and that AES has not shown any immediate need for the funds, as evidenced by its willingness to place them in a separate account.[30]

32. Finally, Argentina argues that AES has not demonstrated how lifting the stay would eliminate or reduce the risk of non-compliance with the Award, which would exist independently of whether enforcement is stayed.[31]

*d) Lifting the suspension would severely harm Argentina*

33. Argentina claims that lifting the stay would impair its ability to implement public and macroeconomic policies and would expose it to serious difficulties in recovering any

---

[25] Reply, ¶¶31-34 citing to Mark Kantor, "Valuation for Arbitration: Compensation Standards, Valuation Methods and Expert Evidence", Kluwer Law International, 2008, p. 49 (**Anexo A RA 37**) *and* Franklin M. Fisher and R. Craig Romaine, "Janis Joplin's Yearbook and the Theory of Damages," Journal of Accounting Auditing & Finance, vol. 5, n.º 1, winter 1990, p. 146 (**Anexo A RA 38**).
[26] Reply, ¶¶30-32.
[27] Reply, ¶36.
[28] Reply, ¶37.
[29] Request, ¶¶21-22, citing *Azurix Corp. v. Argentina*, ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 28 December 2007, ¶42 (**AL A RA 1**); *and Enron Corporation & Ponderosa Assets, L.P. v. Argentina*, ICSID Case No. ARB/01/3, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 7 October 2008, ¶52 (**AL A RA 4**).
[30] Reply, ¶29.
[31] Reply, ¶28.

amounts paid should the Award be annulled.[32]

34. Argentina states that, given the magnitude of the Award, lifting the stay would compromise public resources allocated to essential functions,[33] a harm that would not be remedied by a subsequent refund in the event of annulment.[34]

35. Moreover, Argentina maintains that given its current financial constraints and difficulty accessing international capital markets, the lifting of the stay would limit its capacity to pay the Award.[35] In support, Argentina refers to IMF and OECD statements underscoring the country's need to strengthen reserves and other macroeconomic indicators, especially in the context of Argentina's 48-month Extended Facilities Program with the IMF, approved in April 2025 (the "**IMF Program**").[36]

36. Argentina also submits that lifting the stay creates a real risk of non-recovery in the event of annulment,[37] a factor recognized by annulment committees as relevant to the continuation of a stay.[38] Argentina adds that the risk of non-recovery arises, *inter alia*, from the possibility that (i) third parties may seize its restitution rights; and (ii) from the difficulties and costs associated with recovering amounts paid following annulment.[39]

37. Argentina states that the fact that the Claimant is financially solvent does not make the risk of non-recovery disappear.[40]

---

[32] Request, ¶24. *See also,* Reply, ¶38.
[33] Request, ¶26.
[34] Request, ¶27.
[35] Request, ¶31.
[36] Request, ¶¶28-30, citing *IMF Country Report No. 25/219*, August 2025, p. 1 (**A RA 13**) *and OECD Economic Outlook,* 2 December 2025, volume 2025, issue 2, pp. 107-108 (**A RA 15**).
[37] Request, ¶32.
[38] Request, ¶33, relying on, *inter alia*, *RREEF Infrastructure (G.P.) Limited and RREEF Pan-European Infrastructure Two Lux S.à r.l. v. Spain*, ICSID Case No. ARB/13/30, Decision on the Stay of Enforcement of the Award, 28 October 2020, ¶64 (**AL A RA 34**); *SolEs Badajoz GmbH v. Spain*, ICSID Case No. ARB/15/38, Decision on the Stay of Enforcement of the Award, 26 August 2020, ¶59 (**AL A RA 39**); *and Maritime International Nominees Establishment (MINE) v. Guinea (II)*, ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶27 (**AL A RA 5**).
[39] Request, ¶35 and Reply, ¶44 citing "Memorandum of Sullivan & Cromwell LPP", 25 February 2026, pp. 2-3 (**Anexo A RA 34**).
[40] Request, ¶32, citing *Dan Cake S.A. v. Hungary*, ICSID Case No. ARB/12/9, Decision on the Request for Continuation of the Stay of Enforcement of the Award, 25 December 2018, ¶ 62 (**AL A RA 32**).

38. Finally, Argentina contends that AES's reliance on *SGS v. Paraguay* is inapposite, as Paraguay did not assert an inability to promptly pay the award, claim economic hardship, or raise concerns regarding the recovery of amounts paid — arguments Argentina advances in this case.[41]

**3. Whether Security Should be Ordered**

39. Argentina submits that the continuation of the stay should not be conditioned on the provision of security,[42] arguing that neither the ICSID Convention nor its drafting history authorizes annulment committees to "anticipate the satisfaction of an award or to take enforcement measures to secure such satisfaction".[43]

40. Argentina further contends that requiring security would improperly place AES in a better position than prior to the initiation of the annulment, convert award compliance obligations "into a financial guarantee",[44] and be inconsistent with Article 55 of the ICSID Convention, which preserves immunity from execution.[45]

41. Finally, according to Argentina, conditioning the stay on security would penalize its exercise of the right to request annulment[46] and effectively increase the compensation awarded, as the costs of the security would be irrecoverable regardless of the annulment

[41] Reply, ¶42, citing *SGS Société Générale de Surveillance SA v. Paraguay,* ICSID Case No. ARB/07/29, Decision on the Stay of Enforcement of the Award, 22 March 2013, ¶92 (**A/AES Auth. 006**).
[42] Reply, ¶46.
[43] Reply, ¶¶47-52, citing, *inter alia, Azurix Corp. v. Argentina,* ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 28 December 2007, ¶33 (**AL A RA 1**); *El Paso Energy International Company v. Argentina*, ICSID Case No. ARB/03/15, Decision on Respondent Request for Stay of Enforcement of the Award, 14 November 2012, ¶56 (**AL A RA 21**); *and Carnegie Minerals (Gambia) Limited v. Republic of The Gambia*, ICSID Case No. ARB/09/19, Decision on the Gambia's Request for a Continued Stay of Enforcement of the Award, 18 October 2018, ¶51 (**AL A RA 31**).
[44] Reply, ¶¶53-54 citing *Victor Pey Casado and President Allende Foundation v. Republic of Chile*, ICSID Case No. ARB/98/2, Decision on the Republic of Chile's Application for a Stay of Enforcement of the Award, 5 May 2010, ¶34 (**AL A RA 17**).
[45] Reply, ¶55.
[46] Reply, ¶¶56-59; citing, *inter alia, Azurix Corp. v. Argentina,* ICSID Case No. ARB/01/12, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 28 December 2007, ¶¶32-34 (**AL A RA 1**); *Enron Corporation & Ponderosa Assets, L.P. v. Argentina*, ICSID Case No. ARB/01/3, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 7 October 2008, ¶¶44-45 (**AL A RA 4**); *Maritime International Nominees Establishment (MINE) v. Guinea,* ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶22 (**AL A RA 5**).

outcome.[47] Argentina also asserts that requiring security would expose it to a significant risk of third-party attachment,[48] a concern it states was recognized by the annulment committee in *Enron v. Argentina*.[49]

## B. AES's Position

42. AES requests that the Committee grant the following relief:

*(a) DISMISS Argentina's request to continue the stay of enforcement of the Award;*
*(b) ORDER that the stay of enforcement be lifted immediately;*
*(c) In the alternative:*
*(i) ORDER that Argentina provide financial security in the form of a bank guarantee (or, alternatively, a payment into escrow) sufficient to satisfy the Award in full;*
*(ii) ORDER Argentina to provide a letter confirming its intention to satisfy the Award as required under Article 53 of the ICSID Convention, including its intention not to subject satisfaction of the Award to any further legal proceedings or remedies; and*
*(iii) DECLARE that the Argentina's failure to comply with either of the above orders will result in the immediate lifting of the stay of enforcement of the Award;*
*(d) AWARD to AES the costs and fees incurred in opposing Argentina's request to continue the stay of enforcement of the Award; and*
*(e) AWARD any other relief to AES deemed appropriate by the Tribunal.*[50]

### 1. The Applicable Legal Standard

43. AES submits that the applicable legal framework governing a stay of enforcement is set out in Articles 52(5) and 53(1) of the ICSID Convention and Arbitration Rule 54, under which awards are immediately enforceable, unless a committee determines that "exceptional", "special", or "particular" circumstances require a stay.[51]

---

[47] Reply, ¶60.
[48] Reply, ¶61.
[49] Reply, ¶62, citing *Enron Corporation & Ponderosa Assets, L.P. v. Argentina*, ICSID Case No. ARB/01/3, Decision on the Claimants' Second Request to Lift Provisional Stay of Enforcement of the Award, 20 May 2009, ¶39 (**AL A RA 15**).
[50] Response, ¶71; Rejoinder, ¶59.
[51] Response, ¶¶13-14, 19, citing ICSID Convention, Art. 52(5) and *Infrastructure Services Luxembourg Sàrl v. Kingdom of Spain*, ICSID Case No. ARB/13/31, Decision on Stay of Enforcement of the Award, 21 October 2019, ¶60 (**A/AES Auth. 018**); *See also*, Rejoinder, ¶7, citing ICSID Convention, Art. 53(1).

44. Relying on *Total v. Argentina*, AES argues that a stay may only be granted where circumstances "require" it, contending that this imperative language reflects the exceptional nature of continued stays of enforcement.[52]

45. AES rejects the notion that the ICSID Convention or Arbitration Rules confer a right to stay of enforcement, noting that (i) *ad hoc* committees have consistently affirmed the principle of immediate enforceability and have not granted stays as "standard practice";[53] and (ii) there is no presumption in favor of continuing stays, as that would contradict the language of the ICSID Convention and Arbitration Rules.[54]

46. AES maintains that Argentina relies on a "cherry-picked" set of decisions, that does not reflect contemporary practice, pointing to ICSID statistics showing that 79% of committees between 2016 and 2023 did not continue stays unconditionally.[55]

47. AES further opposes Argentina's position that it is not required to voluntarily pay ICSID awards before domestic recognition,[56] stating that committees have consistently required Argentina to "comply with an ICSID award without the award creditor having to submit to any agency of the State Party to enforce the award".[57]

[52] Response, ¶15 citing *Total SA v. Argentine Republic,* ICSID Case No. ARB/04/1, Decision on Stay of Enforcement of the Award, 4 December 2014, ¶79 (**A/AES Auth. 009**). *See also* Rejoinder, ¶9.
[53] Response, ¶16; citing *BayWa re GmbH v. Spain,* ICSID Case No. ARB/15/16, Procedural Order No. 2, Decision on Stay of Enforcement of the Award, 20 December 2021, ¶70 (**A/AES Auth. 024**). AES also relies on, *inter alia*, *LSF-KEB Holdings SCA v. Republic of Korea,* ICSID Case No. ARB/12/37, Decision on Stay of Enforcement of the Award, 15 December 2023, ¶75 (**AL A RA 6**); *Aharon Naftali Biram v. Spain,* ICSID Case No. ARB/16/17, Decision on Stay of Enforcement of the Award, 29 April 2022, ¶63 (**A/AES Auth. 027**); and *Valores Mundiales SL v. Venezuela,* ICSID Case No. ARB/13/11, Decision on Stay of Enforcement of the Award, 6 September 2018, ¶83 (**A/AES Auth. 017**).
[54] Response, ¶¶19-20, citing *BayWa re GmbH v. Spain,* ICSID Case No. ARB/15/16, Procedural Order No. 2, Decision on Stay of Enforcement of the Award, 20 December 2021, ¶73 (**A/AES Auth. 024**); *and ESPF Beteiligungs GmbH v. Italian Republic,* ICSID Case No. ARB/16/5, Decision on Stay of Enforcement of the Award, 9 July 2021, ¶45 (**A/AES Auth. 023**).
[55] Rejoinder, ¶10, relying on ICSID, *Updated Background Paper on Annulment*, p. 22, fn. 113 (**A/AES Auth.-30)**.
[56] Rejoinder, ¶7.
[57] Rejoinder, ¶8, citing *Sempra Energy International v. Argentina,* ICSID Case No. ARB/02/16, Decision on Stay of Enforcement of the Award (II), 7 August 2009, ¶52 (**A/AES Auth.-002**).

48. AES rejects Argentina's contention that the award creditor has the burden of demonstrating that the circumstances require lifting the stay.[58] For AES, that burden lies with the party seeking continuation of the stay, which must demonstrate exceptional circumstances requiring it.[59] AES contends that shifting this burden to the award creditor lacks support in the ICSID Convention, the Arbitration Rules, and annulment committee practice.[60]

49. AES further submits that Argentina's Reply is inconsistent with its Request, noting that Argentina initially acknowledged bearing the burden of establishing exceptional circumstances but subsequently denied that burden.[61]

50. Finally, AES argues that Argentina's reliance on *LSF-KEB v. Korea* to articulate its burden-of-proof standard is misplaced, as that decision is inapposite,[62] and Argentina's position is directly contradicted by decided jurisprudence.[63]

### 2. Whether the Stay should be Maintained or Lifted

#### *a) Argentina has not met its burden to demonstrate circumstances requiring continuation of the stay*

51. AES submits that Argentina has failed to establish circumstances requiring continuation of the stay, and that the reasons advanced in support of a continued stay lack merit.[64]

---

[58] Response, ¶23-24, citing *Sempra Energy International v. Argentina,* ICSID Case No. ARB/02/16, Decision on Stay of Enforcement of the Award, 5 March 2009, ¶27 (**AL A RA 14**); *Burlington Resources Inc v. Ecuador,* ICSID Case No. ARB/08/5, Decision on Stay of Enforcement of the Award, 31 August 2017, ¶74 (**A/AES Auth. 015**); and *OI European Group BV v. Venezuela,* ICSID Case No. ARB/1 1/25, Decision on Stay of Enforcement of the Award, 4 April 2016, ¶128 (**A/AES Auth. 012**). *See also,* Rejoinder, ¶12.
[59] Response, ¶¶17-18, citing ICSID Arbitration Rule 54(4).
[60] Response, ¶¶21-24. *See also*, Rejoinder, ¶¶11-14.
[61] Rejoinder, ¶¶11-12.
[62] Response, ¶22, referring to *LSF-KEB Holdings SCA v. Republic of Korea,* ICSID Case No. ARB/12/37, Decision on Stay of Enforcement of the Award, 15 December 2023, ¶¶18, 76 (**AL A RA 6**). *See also*, Rejoinder, ¶13.
[63] Response, ¶¶23-24.
[64] Response, ¶27.

52. First, AES argues that it is irrelevant that Argentine domestic law recognizes the right to enforce awards, as Article 53(1) of the ICSID Convention requires immediate and voluntary compliance with ICSID awards.[65]

53. Second, relying on *Enron v. Argentina* and *Burlington v. Ecuador*, AES contends that, regardless of alleged hardship, Argentina's obligation to comply with the Award cannot constitute an exceptional circumstance justifying a continued stay.[66]

54. Third, AES rejects Argentina's argument based on the risk of non-recovery in the event of annulment, submitting that such a risk presupposes "a valid concern as to the Claimants' ability or willingness to repay in the event of annulment",[67] which Argentina has not demonstrated.[68] In this regard, AES emphasizes its financial soundness as a multinational corporation and notes its willingness to hold any amounts collected in a segregated account pending the annulment proceeding.[69]

*b) The stay must be lifted due to material risk of non-compliance with the Award*

55. AES argues that Argentina's likely non-compliance with the Award is an additional, and determinative factor compelling the lifting of the stay.[70] It invokes the *Sempra v. Argentina* committee, which treated compliance prospects as "essential" and conditioned the continued stay on the provision of security.[71] AES contends that Argentina's recent conduct

[65] Response, ¶¶28-31, citing ICSID Convention, Art. 53(1); *Enron Corporation v. Argentina,* ICSID Case No. ARB/01/3, Decision on the Argentine Republic's Request for a Continued Stay of Enforcement of the Award, 7 October 2008, ¶¶69, 74 (**AL A RA 4**); *Sempra Energy International v. Argentina,* ICSID Case No. ARB/02/16, Decision on Stay of Enforcement of the Award (II), 7 August 2009, ¶¶52-53 (**A/AES Auth. 002**); *Total SA v. Argentina,* ICSID Case No. ARB/04/1, Decision on Stay of Enforcement of the Award, 4 December 2014, ¶92 (**A/AES Auth. 009**).
[66] Response, ¶¶32-33; citing *Enron Corporation v. Argentina,* ICSID Case No. ARB/01/3, Decision on Stay of Enforcement of the Award, 7 October 2008, ¶51 (**AL A RA 4**); *Burlington Resources Inc v. Ecuador,* ICSID Case No. ARB/08/5, Decision on Stay of Enforcement of the Award, 31 August 2017, ¶83 (**A/AES Auth. 015**).
[67] Response, ¶34, referring, *inter alia*, to *Hydro Energy 1 Sà rl. v Spain,* ICSID Case No. ARB/15/42, Decision on Stay of Enforcement of the Award, 26 March 2021, ¶85 (**A/AES Auth. 022**).
[68] Response, ¶35.
[69] ibid.
[70] Response, ¶36 and Rejoinder, ¶17.
[71] Response, ¶¶37-39, citing *Sempra Energy International v. Argentina,* ICSID Case No. ARB/02/16, Decision on Stay of Enforcement of the Award, 5 March 2009, ¶¶ 30, 53, 112 (**AL A RA 14**). *See also* Rejoinder, ¶17.

leaves little doubt it will not comply with the Award,[72] referring to the *EDF* and *Total v. Argentina* committees, which considered Argentina's past history of non-compliance with ICSID awards in lifting or denying stays of enforcement.[73]

56. In this regard, AES rejects Argentina's contention that post-award settlements constitute instances of compliance, noting that such settlements involved discounted payments made years after the awards were rendered.[74] AES further notes that (i) Argentina's Request cites no instance of prompt, unconditional compliance with an ICSID award; (ii) at least six ICSID awards against Argentina remain fully outstanding;[75] and (iii) *Urbaser v. Argentina,* an adverse costs award paid a decade after its issuance, following years of enforcement proceedings, does not constitute a meaningful precedent of award compliance.[76]

57. AES further relies on Argentina's conduct before U.S. federal courts as corroborating evidence of a systematic pattern of non-compliance. It points to Argentina's refusal to pay sovereign bondholders notwithstanding adverse rulings, its removal of assets from U.S. jurisdiction to frustrate enforcement,[77] and its non-compliance with a court order for USD 16 billion in the *Petersen* case, whose enforcement Argentina is resisting in multiple jurisdictions.[78]

58. While AES characterizes Argentina's conduct as "abusive,"[79] it submits that the Committee need not resolve that question, the dispositive issue being whether there is a material risk that Argentina will not pay the Award.[80]

---

[72] Response, ¶¶41-42; Rejoinder ¶¶24-25.
[73] Response, ¶¶38-39, citing *EDF International SA v. Argentina,* ICSID Case No. ARB/03/23, Decision on Annulment, 5 February 2016, ¶¶8-9 (**A/AES Auth. 011**); *and Total SA v. Argentina,* ICSID Case No. ARB/04/1, Decision on Stay of Enforcement of the Award, 4 December 2014, ¶¶97, 108 (**A/AES Auth. 009**).
[74] Response, ¶¶43-44. *See also,* Rejoinder, ¶¶22-23.
[75] Rejoinder, ¶¶23-24.
[76] Response, ¶45, citing *Urbaser SA v. Argentina,* ICSID Case No. ARB/07/26, Award, 8 December 2016, ¶1234 (**AL A RA 050**). *See also*, Rejoinder, ¶¶21, 25.
[77] Response, ¶46-47. *See also*, Rejoinder, ¶26.
[78] Response, ¶48.
[79] Rejoinder, ¶19.
[80] Rejoinder, ¶¶18-20.

*c) The balance of interests favors lifting the stay*

59. While AES maintains that Argentina has failed to meet the threshold for continuation of the stay, it further submits that, in any event, the balance of interests favors lifting it.[81] According to AES, continuing the stay of enforcement will cause serious and imminent prejudice to AES, as it exposes it to a risk of non-recovery,[82] allows Argentina to continue its enforcement-resistance tactics,[83] and fails to adequately compensate AES for payment delays, given that the Award accrues only simple interest — less than the returns AES, or any reasonable party, would realize if it had access to the awarded funds.[84]

60. Conversely, AES submits that Argentina would suffer no serious harm if the stay of enforcement was lifted: it is already obligated to pay the awarded amounts, and whether it does so now or upon rejection of the annulment application makes no difference — those funds are unavailable for other fiscal purposes.[85] AES adds that compliance with ICSID awards is, in any case, consistent with Argentina's broader macroeconomic objectives, including those under its IMF Program.[86]

61. AES further rejects Argentina's claim that lifting the stay would divert resources from current public policies. According to AES, given Argentina's past conduct, lifting the stay would not lead to immediate payment of the Award, but would merely allow it to seek recognition and enforcement in domestic courts — a process that will likely extend well beyond the annulment phase.[87]

62. AES also contends that Argentina's stated risk of non-recovery in the event of annulment is "practically non-existent", given AES's sound financial position and its offer to hold any amounts recovered through enforcement in a segregated account pending the annulment

[81] Rejoinder, ¶28.
[82] Response, ¶53.
[83] Response, ¶54.
[84] Response, ¶55. *See also*, Rejoinder, ¶¶31-32.
[85] Response, ¶57. *See also,* Rejoinder ¶35.
[86] Response, ¶58.
[87] Rejoinder, ¶36.

proceedings.[88] Invoking *SGS v. Paraguay*, AES further argues that Argentina's potential difficulty recovering disbursed funds upon annulment is irrelevant, noting that committee's observation that paying an award only to seek reimbursement later "is the natural consequence of the enforcement regime created by the ICSID Convention, where a stay is the exception and not the rule."[89] AES similarly dismisses as unproven and legally irrelevant the risk that third-party creditors could intercept any amounts returned to Argentina, adding that any such vulnerability would only reflect Argentina's failure to comply with its international obligations.[90]

### 3. Whether Security Should be Ordered

63. Relying on *Karkey v. Pakistan*, AES rejects Argentina's contention that annulment committees lack authority to condition a stay of enforcement, submitting that the discretion to continue or lift a stay *a fortiori* includes the power to order "medium solutions" such as conditional stays.[91] AES further submits that Argentina's reliance on the Convention's drafting history is misguided and inconsistent with the prevailing jurisprudence recognizing committees' power to order conditioned stays.[92]

64. In the present circumstances, AES submits that conditioning the stay on a written undertaking is not a viable option, as Argentina has previously disregarded such promises, leading to the lifting of stays in several cases.[93] AES therefore advocates for the posting of a financial security that covers the amount of the Award as "a more credible alternative" to ensure the compliance with Article 53 of the ICSID Convention, given Argentina's record of non-compliance with arbitral awards.[94]

---

[88] Rejoinder, ¶34.
[89] Response, ¶¶59-60, citing *SGS Société Générale de Surveillance SA v. Paraguay,* ICSID Case No. ARB/07/29, Decision on Stay of Enforcement of the Award, 22 March 2013, ¶93 (**A/AES Auth. 006**).
[90] Response, ¶¶61-62. *See also*, Rejoinder, ¶¶38-39.
[91] Rejoinder, ¶44, citing *Karkey Karadeniz Elektrik Uretim AS v. Islamic Republic of Pakistan,* ICSID Case No. ARB/13/1, Decision on Stay of Enforcement of the Award, 22 February 2018, ¶128 (**A/AES Auth.-016**).
[92] Rejoinder, ¶45.
[93] Response, ¶¶64-65; Rejoinder ¶58.
[94] Response, ¶¶66-67, citing *Schreuer's Commentary on the ICSID Convention* (3rd edn, Cambridge University Press, 2022), pp. 1425-1426 (**A/AES Auth. 025**).

65. Finally, AES dismisses Argentina's claim that requiring a guarantee would confer an unfair advantage on AES or penalize Argentina for exercising its right to seek annulment, submitting that it merely preserves the integrity of obligations under Article 53(1) of the ICSID Convention and counterbalances the negative effects of the stay on the award creditor.[95] AES further dismisses as unsubstantiated and legally irrelevant the alleged risk that financial security would expose Argentina's collateral to third-party attachment, noting that any such risk would stem from Argentina's own conduct and could in any event be mitigated by posting security outside the U.S.[96]

## III. THE COMMITTEE'S ANALYSIS

### A. The Applicable Legal Standard

66. Arbitral awards rendered under the ICSID Convention are, in principle, immediately binding on the parties. Article 53(1) of the Convention confirms this as follows:

> "*The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention*."

67. Moreover, under Article 54(1) of the Convention, such awards are directly enforceable in all Contracting States without any requirement for review or confirmation. The rule states:

> "*Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such*

[95] Rejoinder, ¶¶46-52 citing, *inter alia*, *Sempra Energy International v. Argentine Republic*, ICSID Case No. ARB/02/16, Decision on Stay of Enforcement of the Award, 5 March 2009, ¶95 (**AL A RA 14**).
[96] Rejoinder, ¶¶53-57.

> *courts shall treat the award as if it were a final judgment of the courts of a constituent state.*"

68. Thus, ICSID arbitral awards become binding upon issuance and are automatically enforceable in all Contracting States to the Convention. Consequently, suspending the enforcement of such an award is an exception to the principle of immediate enforcement.

69. However, annulment committees may suspend the enforcement of awards if the circumstances of the case so require, under the terms provided in Article 52(5) of the ICSID Convention, which states:

> "*The Committee may, if it considers that the circumstances so require, stay enforcement of the award pending its decision. If the applicant requests a stay of enforcement of the award in his application, enforcement shall be stayed provisionally until the Committee rules on such request.*"

70. Neither the Convention nor the ICSID Rules establish requirements for granting or denying a request for stay of enforcement of the award. Consequently, annulment committees have discretion to decide on requests for a stay.[97]

71. In exercising this discretion, a committee cannot presume in favor of granting or maintaining a stay. Instead, a stay of enforcement must be justified by specific circumstances.

72. In accordance with Rule 54(4) of the ICSID Arbitration Rules, the request for stay of enforcement of the award must specify such circumstances:

[97] *See Patrick Mitchell v. Democratic Republic of the Congo*, ICSID Case No. ARB/99/7, Decision on the Stay of Enforcement of the Award, 30 November 2004, ¶23 (**AL A RA 7**); *CMS Gas Transmission Company v. Argentine Republic*, ICSID Case No. ARB/01/8, Decision on the Application of the Argentine Republic for a Stay of Enforcement of the Award, 1 September 2006, ¶35 (**AL A RA 2**); *MTD Equity Sdn Bhd. & MTD Chile S.A. v. Republic of Chile*, ICSID Case No. ARB/01/7, Decision on Respondent's Request for Continued Stay of Enforcement of the Award, 1 June 2005, ¶26 (**AL A RA 3**); and *Enron Corporation & Ponderosa Assets, L.P. v. Argentine Republic*, ICSID Case No. ARB/01/3, Decision on the Argentine Republic's Request to Continue the Stay of Enforcement of the Award, 7 October 2008, ¶22 (**AL A RA 4**).

> *"A request pursuant to paragraph (1), (2) (second sentence) or (3) shall specify the circumstances that require the stay or its modification or termination. A request shall only be granted after the Tribunal or Committee has given each party an opportunity of presenting its observations."*

73. The difficulty that the annulment applicant may face in order to recover the amount of the award in the event of annulment constitutes one such circumstance.[98]

74. The prospect of non-compliance by the annulment claimant with the award if it is not annulled is, however, also a relevant circumstance that should be considered.[99]

75. Although *ad hoc* committees have discretion to decide on the stay of enforcement of an arbitral award, given the provisional nature of the stay granted by the ICSID Secretary-General and the fact that the stay will be automatically lifted unless the committee decides to maintain it, it is the party requesting the maintenance of the stay — namely, the annulment applicant — who must specify and prove the circumstances supporting the requested decision.

76. When deciding on a request to continue the stay, it is essential to balance the parties' interests and consider the potential harm each may face if the stay is maintained or lifted.[100] The core aim of an *ad hoc* committee's decision in addressing the issue at hand is, in fact, to identify a solution that best balances those interests, minimizing harm to either party both during and after the proceedings.

---

[98] *See RREEF Infrastructure (G.P.) Limited and RREEF Pan-European Infrastructure Two Lux S.à r.l. v. Spain*, ICSID Case No. ARB/13/30, Decision on the Stay of Enforcement of the Award, 28 October 2020, ¶64 (**AL A RA 34**); *SolEs Badajoz GmbH v. Spain*, ICSID Case No. ARB/15/38, Decision on the Stay of Enforcement of the Award, 26 August 2020, ¶59 (**AL A RA 39**); *and Maritime International Nominees Establishment (MINE) v. Guinea (II)*, ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶27 (**AL A RA 5**).
[99] *See Sempra Energy International v. Argentina,* ICSID Case No. ARB/02/16, Decision on Stay of Enforcement of the Award, 5 March 2009, ¶30 (**AL A RA 14**).
[100] *See Carnegie Minerals (Gambia) Limited v. Republic of The Gambia*, ICSID Case No. ARB/09/19, Decision on the Gambia's Request for a Continued Stay of Enforcement of the Award, 18 October 2018, ¶¶42-46, 53 (**AL A RA 31**).

77. The merits of the annulment application are not relevant for these purposes.

78. However, the character of the annulment application is relevant in a more limited sense: a stay should not be maintained where the application is purely dilatory or manifestly frivolous, as this would permit an abuse of the annulment mechanism to indefinitely delay enforcement.[101] That said, the mere fact that an application clears this minimum threshold is not, by itself, sufficient to justify a stay. Were it otherwise, any non-frivolous annulment application would automatically entitle the applicant to a stay, effectively reversing the principle of immediate enforceability of ICSID awards.

## B. The Committee's Assessment of the Parties' Positions

79. Having established the applicable standard for deciding Argentina's request to maintain the stay of enforcement of the arbitral award, the Committee now turns to the Parties' positions. As these have already been described in detail in Part II above, there is no need to restate them here. The Committee will therefore focus its analysis on the most pertinent aspects of the Parties' pleadings for purposes of applying the said standard.

### a) Argentina's Position

80. In respect of Argentina's contentions, the Committee notes the following.

81. The fact that Argentina's domestic law provides for the enforcement of ICSID awards is not material to deciding its request, as its obligations under the ICSID Convention take precedence. The abovementioned provisions of the ICSID Convention and Rules are sufficient to determine the issue at stake. Furthermore, ICSID awards can be enforced in any of the Convention's Contracting States, not just in Argentina.

82. Argentina has also not demonstrated a risk of non-recoupment from AES if the stay is lifted and the Award is later annulled. AES' offer to hold any collected funds in a segregated

[101] *See Maritime International Nominees Establishment (MINE) v. Guinea (II)*, ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶¶16, 18 (**AL A RA 5**); and *MTD Equity Sdn. Bhd. & MTD Chile S.A. v. Republic of Chile*, ICSID Case No. ARB/01/7, Decision on Respondent's Request for Continued Stay of Enforcement of the Award, 1 June 2005, ¶28 (**AL A RA 3**).

account further mitigates that risk substantially. For these reasons, this argument is not decisive for Argentina's request.

83. Argentina's argument regarding the potential financial hardship arising from the immediate enforcement of the Award is, without prejudice to the consideration addressed in the following paragraph, more relevant than its previously addressed arguments to assessing its request, particularly given: (i) the significant size of the Award relative to the country's budget for essential needs, as alleged by Argentina; and (ii) that if the Award were immediately enforced and later annulled, the resulting harm for Argentina might not be fully reparable through restitution alone.

84. To be sure, as noted by AES, such hardship would be inevitable if the annulment application were rejected by the Committee. Although this point is factually accurate, it is not an argument the Committee can properly consider at this stage of the proceedings without prejudging the outcome of the Annulment Application.

85. In the Committee's view, the key point in this proceeding is that Argentina's asserted hardship — stemming from the deprivation of funds needed for its public policies and social programs — would likely not be reparable should the Award be enforced and subsequently annulled. While the Committee makes no definitive finding on the extent of that hardship at this stage, it considers Argentina's allegations sufficiently substantiated for the purpose of this assessment. The reason is that any public needs left unmet during the enforcement period — due to the diversion of available funds to satisfy the Award — could not be retroactively remedied. This could entail significant economic disruption not easily quantified in monetary terms; and restitution would, in any event, presuppose AES's capacity and willingness to repay amounts already received.

86. Like other Committees before it, this Committee therefore considers that it should not disregard the prospect of such hardship when deciding the request for continuation of the stay of enforcement of the Award.[102]

87. Moreover, that hardship can be avoided during the annulment proceeding if the stay is maintained, without causing corresponding hardship for AES, if Argentina provides security in the amount of the Award plus the interest due on it.

88. This circumstance strongly suggests, from the perspective of balancing the Parties' respective harms during this proceeding, that the Committee should take Argentina's invoked hardship into account when deciding on its request for the continuation of the stay of enforcement of the Award.

**1. AES' position**

89. Before assessing AES's position, as summarised in Part II above, it bears recalling that the burden of justifying a stay of enforcement rests with Argentina as the requesting party. AES's allegations shall therefore not be assessed by the Committee as a counter-burden, but rather as part of the broader balancing exercise that the Committee must conduct when determining whether the circumstances of the case warrant a stay.

90. In respect of the issues raised by AES, the Committee will therefore confine itself to noting the following.

91. The risk of Argentina's non-payment of the Award is credible, given its history with the enforcement of ICSID awards, especially since — as claimed by AES and not convincingly refuted by Argentina — no ICSID award has ever been immediately paid by Argentina.

92. AES's claim of harm from delayed payment by Argentina is also plausible, as simple interest at a risk-free rate for late payment to which AES is entitled under the Award is

[102] *See*, for example, *Maritime International Nominees Establishment (MINE) v. Guinea (II)*, ICSID Case No. ARB/84/4, Interim Order No. 1, 12 August 1988, ¶27 (**AL A RA 5**).

unlikely to fully compensate it for the loss of immediate access to the funds it is entitled to under the Award and the potential additional enforcement costs.

93. Finally, Argentina has also not convincingly disputed AES's contention that it is a solvent corporation with assets worldwide and is, in any event, willing to provide an undertaking to hold any collected funds in a segregated account.

### 2. The Admissibility of the Request for the Provision of a Financial Security

94. In light of the foregoing, an appropriate solution to balance the Parties' respective interests is to continue the stay of enforcement, subject to Argentina providing appropriate security.

95. Argentina's principal request is to continue the stay. AES objected to it, but, in the alternative, has agreed to: (i) a lift of the stay subject to any recovered amounts being deposited in a separate account; or (ii) a continuation of the stay if suitable security is provided by Argentina.

96. Argentina has rejected both solutions proposed by AES and submitted that the Committee is not allowed by the ICSID Convention to determine the provision of a security.

97. Yet, nothing in the ICSID Convention prevents the Committee from conditioning the continuation of the stay on the provision of security by the award debtor, as has occurred in other ICSID cases.[103] Quite to the contrary, the discretion granted to *ad hoc* committees

[103] *See, e.g.*, *Compañía de Aguas del Aconquija SA v. Argentine Republic*, ICSID Case No. ARB/97/3, Decision on Stay of Enforcement of the Award, 4 November 2008, ¶37 (**AL A RA 13)**; *Sempra Energy International v. Argentine Republic,* ICSID Case No. ARB/02/16, Decision on Stay of Enforcement of the Award, 5 March 2009, ¶101 (**AL A RA 14)**; *Occidental Petroleum Corporation v. Republic of Ecuador,* ICSID Case No. ARB/06/11, Decision on the Stay of Enforcement of the Award (Rule 54 of the ICSID Arbitration Rules), 30 September 2013, ¶68 (**AL A RA 22)**; *Repsol YPF Ecuador, SA v. Empresa Estatal Petróleos del Ecuador (Petroecuador),* ICSID Case No. ARB/01/10, Procedural Order No. 1 (Decision on Stay of Enforcement of the Award), 22 December 2005, ¶¶7-8 (**AL A RA 12)**; *MTD Equity Sdn. Bhd. & MTD Chile S.A. v. Republic of Chile*, ICSID Case No. ARB/01/7, Decision on Respondent's Request for Continued Stay of Enforcement of the Award, 1 June 2005, ¶26 (**AL A RA 3)**; *Patrick Mitchell v. Democratic Republic of the Congo,* ICSID Case No. ARB/99/7, Decision on the Stay of Enforcement of the Award, 30 November 2004, ¶31 (**AL A RA 7)**; *Flughafen Zürich A.G. v. Bolivarian Republic of Venezuela,* ICSID Case No. ARB/10/19, Decision on Stay of Enforcement of the Award, 11 March 2016, ¶71 (**AL A RA 27)**; *Libananco Holdings Co Limited v. Republic of Turkey,* ICSID Case No. ARB/06/8, Decision on Stay of Enforcement of the Award, 7 May 2012, ¶55 (**AL A RA 20)**.

by Article 52(5) of the ICSID Convention in respect of the granting or not of the stay of the enforcement of an arbitral award necessarily entails that such committees may also take the intermediate course of granting a stay subject to conditions. This is moreover in accordance with the doctrine of inherent powers, which is well established in investor-State arbitration.[104]

98. Therefore, Argentina's claim that this exceeds the Committee's jurisdiction seems unfounded.

99. Argentina's argument — that this would place AES in a better position than before the annulment proceeding — also appears unconvincing. Under the ICSID Convention, AES is entitled to immediate enforcement of the Award. If the award debtor has multiple creditors, the award creditor's right to such immediate enforcement is stronger than the right to enforce a security after the proceeding concludes.

100. As the *ad hoc* Committee in *Sempra v. Argentina* stated:

> "*As to whether provision of a guarantee would, as Argentina contends, place the award creditor in "a better situation", the Committee considers that the appropriate comparison is not with a scenario where the award debtor would not comply with its obligation under Article 53 (where a guarantee would obviously be "better"), but with one where the debtor would comply. In such case the guarantee would not place the award creditor in a better situation. Although not relevant for the comparison, if there is a risk that the award debtor – whether a State party or a foreign investor – would not comply with its obligation under Article 53, the*

[104] See, referring to an *ad hoc* committee's decision relying on the doctrine in respect of an award creditor's request to obtain a guarantee from the award debtor, *Schreuer's Commentary on the ICSID Convention* (3rd edn, Cambridge University Press, 2022), p. 1424 (**A/AES Auth. 025**).

> *safeguard inherent in provision of a guarantee would be fully warranted."*[105]

101. Certainly, requiring AES to wait until the end of the annulment proceeding to start enforcement proceedings, without any security, would leave it worse off than if the stay were lifted, because in the meantime, Argentina's seizable assets may have been taken by other creditors.

102. While providing security may entail a cost for Argentina, as it invokes, it is likely to be substantially lower in financial terms than making an immediate full payment of the Award.

103. Of the two alternatives proposed by AES, continuing the stay with the provision of security appears less detrimental to Argentina, as it avoids the immediate disbursement of the Award amount. At the same time, it offers AES strong assurance of prompt compliance should the annulment request be denied.

104. Argentina expressed the concern that, if it must post funds as collateral to provide financial security, there is a significant risk that other creditors could attach those funds even if Argentina succeeds in its Annulment Application. However, this issue falls outside the Committee's remit. As the *ad hoc* Committee in *Sempra v. Argentina* rightly noted:

> *"The Committee does not see as its function to create safeguards against the possibility of third-party creditors generally obtaining satisfaction in respect of outstanding claims. […] As stated, the Committee does not see why its decision should be influenced by any desire to shield assets from being attached to satisfy any indebtedness to third parties. Such contingencies are outside the scope of considerations which an ad hoc committee should take into account."*[106]

[105] *Sempra Energy International v. Argentine Republic,* ICSID Case No. ARB/02/16, Decision on Stay of Enforcement of the Award, 5 March 2009, ¶95 (**AL A RA 14**).
[106] *Sempra Energy International v. Argentine Republic,* ICSID Case No. ARB/02/16, Decision on Stay of Enforcement of the Award (II), 7 August 2009, ¶¶ 19-20 (**A/AES Auth.-002**).

105. A letter from Argentina affirming its intent to comply with the Award, as proposed by AES, would seemingly be redundant, given Argentina's obligations under the ICSID Convention, or at least insufficient, since it would provide AES with no meaningful additional protection in the event of non-performance.

**D. Conclusion**

106. In light of the above, the Committee concludes that the most balanced solution is to: (i) grant a conditional stay of enforcement of the Award; and (ii) require Argentina to provide suitable financial security — specifically, an unconditional and irrevocable bank guarantee from a reputable international bank — covering all compensation and interest owed to AES under the Award.

107. The Committee further considers that the Parties should have a reasonable period to engage in good faith negotiations with a view to reaching an agreement on the precise terms of the guarantee and the identity of the issuing bank.

## IV. DECISION

108. For the above reasons, the Committee grants Argentina's request to continue the stay of enforcement of the Award until a final decision is made on the Annulment Application, subject to the following conditions:

a. Argentina shall provide suitable financial security, in the form of an unconditional and irrevocable bank guarantee, issued by a reputable international bank, covering the full amount of the capital and interest owed to AES under the Award;

b. This guarantee shall remain valid until the earliest of the following events: (i) the Committee annuls the Award in full; (ii) if the Committee rejects Argentina's

Annulment Application, AES receives full payment of the Award and accrued interest; (iii) if the Committee annuls the Award in part, AES receives payment of the remaining portion of the Award and accrued interest; or (iv) in any event, no later than the date agreed by the Parties pursuant to paragraphs (d) to (f) below, or, failing such agreement, the date determined by the Committee in a supplementary order.

c. The said bank guarantee may be collected by AES from the issuing bank in full if the Annulment Application is rejected, or in the event of partial annulment, may be partially collected by AES in the remaining amount of the Award rendered in its favor, in either case upon presentation of the Committee's final decision on the Application.

d. The Parties shall engage in good faith negotiations with a view to reaching an agreement on the precise terms of the guarantee and the choice of the banking institution. Within 30 days of being notified of this decision, they must inform the Committee of any agreement or explain why no agreement was reached;

e. If an agreement is reached, the guarantee shall be issued within the subsequent 30 days and notified to the Committee;

f. If the Parties do not reach an agreement within the specified period, the Committee will issue a supplementary order detailing the terms of the guarantee and the type of banking institution required. Argentina must comply with this order within 30 days of its notification.

109. The provisional stay of enforcement currently in place shall remain in effect during the period in which the Parties negotiate the terms of the guarantee and until the Committee formally acknowledges receipt of a guarantee that it considers compliant with the requirements set out in this decision. Upon such acknowledgment, the conditional stay granted under paragraph 108 shall come into full effect and replace the provisional stay.

110. Should Argentina fail to provide a compliant guarantee within the timeframes established in paragraph 108, the stay shall be lifted automatically, without the need for any further decision by the Committee.

111. The Committee reserves the right to modify this decision at any time if a material change in circumstances occurs.

112. The Committee's decision on the costs of Argentina's request for the continuation of the stay of enforcement of the Award, as well as the costs of procuring and maintaining the guarantee, is reserved for determination in the Committee's final decision on the Annulment Application.

113. All other requests are denied.

9 April 2026.

For and on behalf of the Committee:



(Prof. Dário Moura Vicente)
President of the *ad hoc* Committee