**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE AES CORPORATION,<br>Petitioner,<br>v.<br>THE ARGENTINE REPUBLIC,<br>Respondent. | Civil Action No. 1:25-cv-02540-RBW |

**PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENT'S MOTION TO STAY THE PROCEEDING**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

BACKGROUND ..... 4

A. The Underlying Dispute and the ICSID Arbitration Award ..... 4

B. This Enforcement Proceeding ..... 5

C. The ICSID Annulment Proceeding and Lifting of the Conditional Stay ..... 5

ARGUMENT ..... 8

I. ARGENTINA'S ATTEMPT TO STAY ENFORCEMENT OF THE AWARD IS A MATTER EXCLUSIVELY FOR THE ICSID-APPOINTED *AD HOC* COMMITTEE ..... 8

A. The ICSID Convention Precludes the Stay of Enforcement That Argentina Seeks ..... 8

B. Even If the Court Retains the Power to Stay Enforcement, No Further Stay Is Warranted Where the Committee Has Already Lifted the Stay ..... 11

II. ARGENTINA FAILS TO DEMONSTRATE ANY ENTITLEMENT TO A DISCRETIONARY STAY ..... 13

A. Judicial Economy Favors Proceeding to Judgment ..... 14

B. Further Delay Would Materially Prejudice AES's Ability to Enforce the Award ..... 18

C. Argentina's Claimed Hardship Depends on Execution Measures That Are Not Before the Court ..... 23

CONCLUSION ..... 26

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ACF Renewable Energy Ltd. v. Republic of Bulgaria*,
804 F. Supp. 3d 141 (D.D.C. 2025) ....................10, 15, 16

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
798 F. Supp. 2d 260 (D.D.C. 2011) ....................23

*Matter of Arb. of Certain Controversies Between Getma Int'l and Republic of Guinea*, 142 F. Supp. 3d 110 (D.D.C. 2015) ....................12

*Attestor Master Value Fund LP v. Argentina*,
113 F.4th 220 (2d Cir. 2024) ....................24

* *Belize Soc. Dev. Ltd. v. Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012) ....................13, 18

*Blasket Renewable Invs., LLC v. Kingdom of Spain*,
2024 WL 4298808 (D.D.C. Sept. 26, 2024) ....................16

*Blasket Renewable Invs., LLC v. Kingdom of Spain*,
2026 WL 1236125 (D.D.C. Apr. 10, 2026) ....................19

*Blasket Renewable Invs., LLC v. Kingdom of Spain*,
2026 WL 2941227 (D.D.C. Sept. 30, 2026) ....................15, 16

*Chevron Corp. v. Republic of Ecuador*,
949 F. Supp. 2d 57 (D.D.C. 2013) ....................10, 22

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*,
628 F. Supp. 3d 1 (D.D.C. 2022) ....................19, 22

*Dietz v. Bouldin*,
579 U.S. 40 (2016) ....................11

*EM Ltd. v. Banco Cent. De La República Argentina*,
800 F.3d 78 (2d Cir. 2015) ....................13, 21

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007) ....................13

*Enka Renewables, LLC v. Georgia*,
2026 WL 2676739 (D.D.C. Sept. 11, 2026) ....................16

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
156 F.3d 310 (2d Cir. 1998) ....................22

*Eurus Energy Holdings Corp. v. Kingdom of Spain*,
2026 WL 2874086 (D.D.C. Sept. 24, 2026) ....................15

*Gold Reserve, Inc. v. Bolivarian Republic of Venezuela*,
146 F. Supp. 3d 112 (D.D.C. 2015) ....................10

*Hulley Enters. Ltd. v. Russian Fed'n*,
211 F. Supp. 3d 269 (D.D.C. 2016) ....................25

*Hulley Enters. Ltd. v. Russian Fed'n*,
502 F. Supp. 3d 144 (D.D.C. 2020) ....................25

*ICS Inspection and Control Servs. Ltd. v. Argentine Republic*,
Docket No. 1:26-cv-01093 (D.D.C. Mar. 31, 2026) ....................20

*InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*,
2021 WL 2665406 (D.D.C. June 29, 2021) ....................15, 16

*Infrastructure Servs. Lux. S.a.r.l. v. Kingdom of Spain*,
2019 WL 11320368 (D.D.C. Aug. 28, 2019) ....................2, 13

*JSC DTEK Krymenergo v. Russian Fed'n*,
2025 WL 1148347 (D.D.C. Apr. 17, 2025) ....................10

*Koch Mins. Sàrl v. Bolivarian Republic of Venezuela*,
514 F. Supp. 3d 20 (D.D.C. 2020) ....................17

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ....................2, 13, 23

*LLC SPC Stileks v. Republic of Moldova*,
2021 WL 5318029 (D.D.C. Nov. 16, 2021) ....................10

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
397 F. Supp. 3d 34 (D.D.C. 2019) ....................14, 15, 16

*Micula v. Gov't of Romania*,
104 F. Supp. 3d 42 (D.D.C. 2015) ....................10

*Micula v. Gov't of Romania*,
404 F. Supp. 3d 265 (D.D.C. 2019) ....................9

*Micula v. Gov't of Romania*,
101 F.4th 47 (D.C. Cir. 2024) ....................15

*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
112 F.4th 1088 (D.C. Cir. 2024) ....................16

*NJSC Naftogaz of Ukraine v. Russian Fed'n*,
2026 WL 2069990 (D.D.C. July 17, 2026)....10, 19, 20

*NML Cap., Ltd. v. Argentine Republic*,
727 F.3d 230 (2d Cir. 2013)....13, 21

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
419 F. Supp. 3d 51 (D.D.C. 2019)....23, 25

*Owens v. Republic of Sudan*,
141 F. Supp. 3d 1 (D.D.C. 2015)....23

*Palladian Partners, L.P. v. Republic of Argentina*,
Docket No. 1:25-cv-01954 (D.D.C. June 23, 2025)....20

*Perenco Ecuador Ltd. v. Republic of Ecuador*,
2023 WL 2536368 (D.D.C. Mar. 16, 2023)....9

*Perimetral Oriental de Bogotá, S.A.S., v. Agencia Nacional de Infraestructura*,
2026 WL 3347264 (D.D.C. Nov. 5, 2026)....10, 19

*Republic of Argentina v. NML Cap., Ltd.*,
573 U.S. 134 (2014)....21

*RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*,
2021 WL 1226714 (D.D.C. Mar. 31, 2021)....15

*SAUR Int'l S.A.S. v. Republic of Argentina*,
Docket No. 1:26-cv-01392 (D.D.C. Apr. 23, 2026)....20

*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
414 F. Supp. 3d 94 (D.D.C. 2019)....11, 14

*Tenaris S.A. v. Bolivarian Republic of Venezuela*,
2020 WL 3265476 (D.D.C. June 17, 2020)....11, 13

*Tenaris, S.A. v. Bolivarian Republic of Venezuela*,
2021 WL 1177996 (D.D.C. Mar. 29, 2021)....11

* *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*,
590 F. Supp. 3d 262 (D.D.C. 2022).... *passim*

*TIG Ins. Co. v. Republic of Argentina*,
110 F.4th 221 (D.C. Cir. 2024)....24

*Titan Consortium 1, LLC v. Argentine Republic*,
Docket No. 1:21-cv-2250 (D.D.C. May 20, 2026)....23

*Unión Fenosa Gas, S.A. v. Arab Republic of Egypt*,
2020 WL 2996085 (D.D.C. June 4, 2020) .......... 17, 18, 25

*United States v. City of New Britain*,
347 U.S. 81 (1954) .......... 21-22

*United States v. Williamson*,
161 F.4th 803 (D.C. Cir. 2025) .......... 1, 8, 11

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
87 F.4th 510 (D.C. Cir. 2023) .......... 5, 8

*Webuild S.p.A. v. Argentine Republic*,
Docket No. 1:21-cv-02464 (D.D.C. Sept. 20, 2021) .......... 20

**Statutes**

9 U.S.C. § 10 .......... 10

9 U.S.C. § 12 .......... 10

9 U.S.C. § 201 *et seq*. .......... 10

9 U.S.C. § 207 .......... 10

22 U.S.C. § 1650 .......... 1, 9

* 22 U.S.C. § 1650a .......... *passim*

28 U.S.C. § 1608(a) .......... 5

28 U.S.C. § 1610(c) .......... 3, 23

28 U.S.C. § 1963 .......... 23

Convention on the Settlement of Investment Disputes Act of 1966, Pub. L. No. 89–532, 80 Stat. 334 (1966) .......... 1, 8, 9, 10

**Treaties**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 .......... 10, 12

* Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 .......... *passim*

**Other Authorities**

*Casinos Austria Int'l v. Argentine Republic*,
ICSID Case No. ARB/14/32, Decision on Annulment (Nov. 6, 2025) ....................................7

Christoph H. Schreuer, *The ICSID Convention: A Commentary*
(3d ed. 2022) ....................................................................................................................9

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*,
ICSID Case No. ARB/07/30, Decision on Annulment (Jan. 22, 2025)..................................17

*Cube Infrastructure Fund SICAV v. Kingdom of Spain*,
ICSID Case No. ARB/15/20, Decision on Annulment (Mar. 28, 2022) ................................17

Daniel Bases, *Argentine Debt Holdouts Make Final Plea to U.S. Court for Payment*, Reuters (Apr. 22, 2013) ..........................................................................21

*EDF Int'l S.A. v. Argentine Republic*,
ICSID Case No. ARB/03/23, Decision on Annulment (Feb. 5, 2016) .....................................7

*El Paso Energy Int'l Co. v. Argentine Republic*,
ICSID Case No. ARB/03/15, Decision on Annulment (Sept. 22, 2014)...............................7, 8

ICSID, *The ICSID Caseload – Statistics, Issue 2026-2* (2026) .............................................16, 17

ICSID, *Updated Background Paper on Annulment* (Mar. 2024) ........................................ *passim*

*InfraRed Env't Infrastructure v. Kingdom of Spain*,
ICSID Case No. ARB/14/12, Decision on Annulment (June 10, 2022).................................17

Leila Miller & Rodrigo Campos, *Argentina's Country Risk Falls Steadily, Fueling Debate on Return to Capital Markets*, Reuters (May 12, 2026).............................................25

Liz Moyer, *Argentina's Debt Settlement Ends 15-Year Battle*,
N.Y. Times (Feb. 29, 2016) ..................................................................................................21

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
ICSID Case No. ARB/14/1, Order of the Ad Hoc Committee Taking Note of the Discontinuance (Nov. 27, 2020) ..........................................................................17

*Occidental Petroleum Corp. v. Republic of Ecuador (II)*,
ICSID Case No. ARB/06/11, Decision on Annulment (Nov. 2, 2015) ..................................20

*RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*,
ICSID Case No. ARB/13/30, Decision on Annulment (June 10, 2022).................................17

Rules of Procedure for Arbitration Proceedings (ICSID Arbitration Rules) (1984) ................7, 19

*Suez, Sociedad General de Aguas de Barcelona S.A., and InterAgua Servicios Integrales del Agua S.A. v. Argentine Republic*,
ICSID Case No. ARB/03/17, Decision on Annulment (Dec. 14, 2018)....................................8

*Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*,
ICSID Case No. ARB/12/1, Procedural Order Taking Note of the Discontinuance (Jan. 6, 2023)..........................................................................................17

Toby Fisher, *Koch's Award Against Venezuela Upheld at ICSID*, Global Arbitration Review (May 26, 2022)...........................................................................17

*Unión Fenosa Gas, S.A. v. Arab Republic of Egypt*,
ICSID Case No. ARB/14/4, Order Taking Note of the Discontinuance (Mar. 12, 2021) ..........................................................................................................17

Petitioner The AES Corporation ("AES" or "Petitioner") opposes the Motion to Stay the Proceeding ("Motion" or "Mot.") filed by Respondent the Argentine Republic ("Argentina" or "Respondent") on October 13, 2026 (ECF No. 24). The Motion seeks to stay indefinitely this Court's consideration of AES's Petition (ECF No. 1) to recognize and enforce the Award (ECF No. 1-2) under 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention" or "Convention").[1] The Motion should be denied for three independent reasons.

*First*, under the ICSID Convention and its implementing statute, whether to stay enforcement of the Award is a question for the *ad hoc* committee appointed by ICSID to hear Argentina's annulment application (the "Committee"), not a question for the enforcing courts. Argentina asked the Committee to stay enforcement, and the Committee denied that request in a carefully reasoned decision applying the ICSID Convention and applicable ICSID rules. That should end the matter. To be sure, district courts have the inherent power to stay proceedings before them. But that power may be exercised only "when doing so does not contradict any express rule or statute." *United States v. Williamson*, 161 F.4th 803, 809 (D.C. Cir. 2025). Here, the legislation that implements the United States' treaty obligations under the ICSID Convention—the Convention on the Settlement of Investment Disputes Act of 1966, Pub. L. No. 89–532, 80 Stat. 334 (1966) (the "ICSID Act") (codified at 22 U.S.C. §§ 1650 and 1650a)—is just such a statute. Section 1650a commands that the pecuniary obligations against Argentina "***shall*** be enforced" by the district courts—without caveat, and without provision for stay or delay. 22 U.S.C. § 1650a (emphasis added). (*See infra* Argument Section I.A, p. 8.)

*Second*, even if the ICSID Act does not displace the district courts' general inherent power to stay proceedings, courts should be hesitant to exercise that power where, as here, the Award debtor seeks to relitigate arguments that the annulment Committee already considered and rejected.

[1] Capitalized terms not defined herein are as defined in the Petition. ECF No. 1.

The Committee charged by ICSID to decide Argentina's annulment case has already determined that enforcement of the Award should not be suspended during the pendency of that very annulment proceeding. In doing so, the Committee considered the same arguments that Argentina now presents to the Court. The Committee initially granted Argentina a conditional stay, subject to Argentina providing a bank guarantee to cover the full amount of the Award. Davidoff Decl. Ex. 2 ("Stay Decision"), ECF No. 24-3, ¶¶ 106, 108. But Argentina refused to provide that guarantee, and also failed to commit to paying the Award if it is not annulled. ECF No. 24-4 at 3. As a result, on July 9, 2026, the Committee declared that "the suspension of enforcement of the Award stands lifted with immediate effect." *Id.* Argentina presents no new arguments or evidence that would compel a different result. Although the Committee's decision lifting the stay does not bind this Court, that decision engaged in the same kind of balancing exercise now before this Court and concluded that AES would suffer very real prejudice if prevented from taking steps to enforce the Award. As in *Tethyan Copper*, "granting a stay would prejudice [AES], particularly given [Argentina's] refusal to commit to paying the Award." *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 272 (D.D.C. 2022). (*See infra* Argument Section I.B, p. 11.)

*Third*, Argentina cannot carry the "burden" that lies "heavily" upon it, as movant, to show a "clear case" as to why a stay is needed and warranted. *Landis v. N. Am. Co.*, 299 U.S. 248, 255–56 (1936); *see also Infrastructure Servs. Lux. S.a.r.l. v. Kingdom of Spain*, 2019 WL 11320368, at *2 (D.D.C. Aug. 28, 2019) ("The party seeking the stay has the burden of showing that the stay is needed and warranted."). Each of the three factors the Court weighs on a motion to stay—judicial economy, the hardship a stay would impose on AES, and the hardship its denial would impose on Argentina—independently cuts against the Motion. *See Tethyan Copper*, 590 F. Supp. 3d at 269–70. Taking each in turn: (*i*) A stay would not serve judicial economy. It would conserve little: Argentina has not moved to dismiss, does not (and cannot) contest jurisdiction before this Court, and has already answered the Petition, *see* ECF No. 25. And unlike in the cases on which Argentina relies, the narrow issues before this Court do not overlap with those pending before the

annulment Committee. The only savings Argentina posits depend on an implausible chain of events in which this Court enforces the Award, AES then *immediately* attaches Argentine assets in subsequent judicial proceedings, the Committee eventually annuls the Award, and AES refuses to return any amounts collected post-annulment. That is not a serious proposition. Considering just one link in that elaborate chain: historically, only about five percent of ICSID awards are ever annulled, even in part. *See infra*, pp. 16–17. On the basis of that remote possibility, Argentina asks the Court to stay enforcement of an Award that Congress has commanded "shall be enforced" without caveat or provision for delay. 22 U.S.C. § 1650a. (*ii*) A stay would prejudice AES because delay materially reduces the likelihood that AES will ever collect on the Award. "A stay only prolongs justice denied." *Tethyan Copper*, 590 F. Supp. 3d at 271. (*iii*) Argentina, for its part, identifies no concrete hardship from allowing this action to proceed. Its asserted harms assume immediate attachment and execution of sovereign assets, which are steps well beyond the entry of judgment on the Petition. Argentina also ignores the "reasonable period of time" requirement of the Foreign Sovereign Immunities Act ("FSIA"), which gives courts control over when sovereign assets can be attached. *See* 28 U.S.C. § 1610(c). Moreover, any hardship is self-inflicted: the Committee fashioned a security mechanism precisely to address Argentina's claimed concern, but Argentina refused to use it. And AES already offered to hold (and remains willing to hold) any amounts collected in a separate account pending resolution of the annulment proceeding. Stay Decision, ECF No. 24-3, ¶¶ 34, 82. (*See infra* Argument Section II, p. 13.) Accordingly, the hardship that Argentina posits (of trying to recover assets attached by AES in the unlikely event that the Award is annulled) will never actually arise and therefore should not serve as a basis for a stay.

The ICSID Convention required Argentina to make prompt, full payment on the Award upon its issuance, and the Committee refused to delay its enforcement any longer. Tellingly, Argentina's Motion nowhere commits to paying the Award, honoring Argentina's treaty obligations, or complying with a judgment from this Court if its annulment application is dismissed. That approach is consistent with Argentina's long and well-documented history of

refusing to pay awards and court judgments, and instead forcing creditors into drawn-out, expensive efforts to locate and attach Argentina's assets. For decades, Argentina's litigation strategy has been one of delay. This Court, respectfully, should not endorse that strategy. AES respectfully requests that the Court deny the Motion.

## BACKGROUND

### A. The Underlying Dispute and the ICSID Arbitration Award

The Petition presents an overview of the underlying dispute resolved in the Award. *See* ECF No. 1, ¶¶ 4–15. In short, the arbitration concerned Argentina's wholesale upending of the legal and economic frameworks under which AES had invested in Argentina's electricity sector, causing AES significant losses. *Id.* ¶ 7. AES commenced arbitration on November 5, 2002, against Argentina under the Argentina-U.S. BIT and the ICSID Convention. *Id.* ¶ 8. Between 2006 and 2018, the arbitration was stayed as the parties sought to settle the dispute. *Id.* ¶ 11. The arbitration resumed in late 2019, after negotiations failed. *Id.*

The Tribunal issued the Award five and a half years later, on May 30, 2025. *Id.* ¶ 12. The Tribunal unanimously found Argentina liable for breaching its obligations under the Argentina-U.S. BIT. *Id.* The Tribunal unanimously awarded AES damages in the amount of $715.9 million. *Id.* ¶ 13. In addition, a Tribunal majority awarded AES reimbursement of its legal fees in the amount of approximately $15.8 million, as well as all costs of the arbitration, in the amount of approximately $1.3 million.[2] *Id.* The Tribunal also awarded AES pre- and post-award simple interest on the damages and costs awards, running at the 1-year U.S. Treasury bill rate from December 31, 2020 until payment in full. *Id.* Argentina admits that it has not made any payment under the Award to date. Answer, ECF No. 25, ¶ 13.

---

[2] Although all members of the Tribunal agreed that Argentina had breached the Argentina-U.S. BIT and owed AES $715.9 million in damages plus interest, the arbitrator appointed by Argentina issued a one-page partial dissent solely on the apportionment of costs and fees. Other than this "one specific point," the dissenting arbitrator "agree[d] with the general terms of the Award" and "joined the majority of [his] fellow arbitrators." Hosking Decl. Ex. B (Dissenting Opinion of Professor Domingo Bello Janeiro), ECF No. 1-3.

### B. This Enforcement Proceeding

The Award immediately became "binding" and due in full under Article 53(1) of the ICSID Convention. Convention, ECF No. 1-4, art. 53(1) ("The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention."). AES commenced this action to enforce the Award under 22 U.S.C. § 1650a on August 4, 2025. ECF No. 1. Under 22 U.S.C. § 1650a(a), the Award gives AES a "right arising under a treaty of the United States" to have the "pecuniary obligations imposed by" the Award enforced as if it were a final judgment of a court in the United States.

In a Joint Motion filed on July 24, 2026, Argentina agreed that service of the Petition had been completed under 28 U.S.C. § 1608(a) of the FSIA. ECF No. 18, ¶ 4(a) (granted via Minute Order on July 27, 2026).[3]

### C. The ICSID Annulment Proceeding and Lifting of the Conditional Stay

The ICSID Convention is a multilateral agreement signed by 163 countries "aimed at promoting private international investment." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 87 F.4th 510, 514 (D.C. Cir. 2023). The Convention expressly prohibits "any appeal" of an ICSID award or "any other remedy except those provided for in this Convention." Convention, ECF No. 1-4, art. 53(1). One of the remedies permitted by the Convention is "annulment," a procedure in which a specially constituted, three-person *ad hoc* committee reviews an ICSID award for exceptional defects under five limited grounds, primarily dealing with matters of due process. *Id.* art. 52. Argentina applied to annul the Award on September 26, 2025, and requested a stay of enforcement of the Award pending resolution of the annulment proceedings. Stay Decision, ECF No. 24-3, ¶¶ 1, 6. AES opposed that request. *Id.* ¶¶ 6–9. Over the course of

---

[3] Separately, Argentina was served in accordance with the FSIA and the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention") as of September 3, 2026. *See* Friedman Decl. ¶ 2; *id.* Ex. A (Certificate of Service).

six months, the Committee accepted two rounds of briefing on and resolved Argentina's request to stay enforcement of the Award.

On April 9, 2026, the Committee rendered its initial decision on Argentina's stay application. Stay Decision, ECF No. 24-3. The Committee issued a 30-page opinion that addressed many of the issues Argentina now seeks to relitigate. Argentina claimed, as it does before this Court, that it would suffer severe financial hardship from immediate enforcement of the Award. *Id.* ¶¶ 83–86. The Committee weighed that argument against the "credible" risk of nonpayment by Argentina, "given [Argentina's] history with the enforcement of ICSID awards" and the fact that "no ICSID award has ever been immediately paid by Argentina." *Id.* ¶¶ 91–92. The Committee also recognized that the continued accrual of interest would not fully compensate AES during a stay because simple interest at a risk-free rate does not cover the "loss of immediate access to the funds it is entitled to under the Award and the potential additional enforcement costs." *Id.* ¶ 92.

The Committee sought a "balanced solution": it would stay enforcement of the Award if Argentina provided "suitable financial security" in the form of a bank guarantee "covering the full amount of the capital and interest owed to AES." *Id.* ¶¶ 94, 106, 108a. The Committee cautioned that the stay would be automatically lifted if Argentina failed to provide that guarantee. *Id.* ¶ 110.

Despite the Committee's clear directive, Argentina refused to provide security in the full amount of the Award. Friedman Decl. Ex. B (June 30, 2026 AES Email to Committee). Argentina claimed that doing so was not feasible but provided no evidence in support of that assertion. *Id.* On July 9, 2026, after several more rounds of submissions, the Committee reminded Argentina that the amount of the guarantee was set and "not subject to negotiation," noted Argentina's "clear[] and unequivocal[]" representation that it would not comply with the Committee's order, and lifted the stay of enforcement with immediate effect. Davidoff Decl. Ex. 3 (July 9, 2026 Committee Letter), ECF No. 24-4, at 2. The Award has been fully enforceable under the ICSID Convention since that time. It is thus currently entitled to "the same full faith and credit" as a "final judgment" of any court of the United States. 22 U.S.C. § 1650a(a).

The parties continue to brief the merits of Argentina's annulment application. That briefing will conclude in early 2027, and a hearing before the Committee is scheduled for March 11–12, 2027. Davidoff Decl. Ex. 4 (Revised Procedural Calendar), ECF No. 24-5. The deadlines for post-hearing and costs submissions have not yet been fixed. *Id.*

Argentina suggests that the Committee's annulment decision will quickly follow the hearing, citing the 60-day decision deadline and 30-day extension under the applicable ICSID Arbitration Rules. *See* Mot. 4, citing Rules 38, 46, and 53 of the ICSID Arbitration Rules 1984.[4] That is a misleading presentation of ICSID practice, and Argentina knows it. Those deadlines are triggered only once an *ad hoc* committee declares the annulment proceedings closed. *See* ICSID Arbitration Rule 46. This routinely happens well after a final hearing—typically when a committee is close to issuing its decision. For example, over a quarter of annulment decisions from the last decade were issued more than one year after a hearing. *See* ICSID, Updated Background Paper on Annulment (Mar. 2024), ¶ 67 ("ICSID Background Paper") (19 out of 73 decisions).[5] In practice, the timeline varies widely by committee, but decisions are almost never rendered within a few months. Argentina, a frequent ICSID defendant, is aware of this fact: in one recent ICSID annulment proceeding against Argentina, the *ad hoc* committee rendered its decision more than two years after the hearing. *See Casinos Austria Int'l v. Argentine Republic*, ICSID Case No. ARB/14/32, Decision on Annulment (Nov. 6, 2025) ¶ 30.[6] In another, the committee took 20 months. *See EDF Int'l S.A. v. Argentine Republic*, ICSID Case No. ARB/03/23, Decision on Annulment (Feb. 5, 2016) ¶ 11.[7] In several other cases involving Argentina, decisions were rendered around a year after the annulment hearings. *See El Paso*

---

4 A copy of the 1984 ICSID Arbitration Rules is available at: https://icsid.worldbank.org/sites/default/files/documents/Old%20Rules/1984%20-%20ICSID%20Basic%20Documents%20-%20ENG.pdf (starting at PDF p. 55).

5 The ICSID Background Paper provides a comprehensive assessment of annulment under the ICSID Convention and collates data about every ICSID annulment proceeding. A copy is available at: https://icsid.worldbank.org/sites/default/files/publications/Background_Paper_on_Annulment.pdf.

6 Available at: https://icsidfiles.worldbank.org/icsid/ICSIDBLOBS/OnlineAwards/C4025/DS21827_En.pdf.

7 Available at: https://icsidfiles.worldbank.org/icsid/ICSIDBLOBS/OnlineAwards/C23/DC7432_En.pdf.

*Energy Int'l Co. v. Argentine Republic*, ICSID Case No. ARB/03/15, Decision on Annulment (Sept. 22, 2014) ¶ 21 (annulment decision rendered approximately 11.5 months after the hearing);[8] *Suez, Sociedad General de Aguas de Barcelona S.A., and InterAgua Servicios Integrales del Agua S.A. v. Argentine Republic*, ICSID Case No. ARB/03/17, Decision on Annulment (Dec. 14, 2018) ¶ 16 (annulment decision rendered approximately 11 months after the hearing).[9] In those cases, Argentina's annulment applications were dismissed. That is not surprising, as annulment is an "exceptional" remedy that the drafters of the ICSID Convention intended to be a "rare event." ICSID Background Paper, ¶ 79 n.148.

## ARGUMENT

### I. ARGENTINA'S ATTEMPT TO STAY ENFORCEMENT OF THE AWARD IS A MATTER EXCLUSIVELY FOR THE ICSID-APPOINTED *AD HOC* COMMITTEE

#### A. The ICSID Convention Precludes the Stay of Enforcement That Argentina Seeks

The ICSID Convention, as implemented by Congress through the ICSID Act, displaces a district court's inherent power to stay proceedings. Although district courts "[g]enerally" have the power to stay proceedings, *Tethyan Copper*, 590 F. Supp. 3d at 269, that inherent power is not absolute. It may only be exercised "when doing so does not contradict any express rule or statute." *Williamson*, 161 F.4th at 809. Here, a judicial stay of enforcement of the Award would contradict the ICSID Convention as implemented by Congress, including 22 U.S.C. § 1650a.

The Convention establishes a unique, comprehensive framework for resolving disputes between investors and sovereign States. *See Valores Mundiales*, 87 F.4th at 514–16 (providing an overview of the ICSID Convention, its implementing legislation, and enforcement of ICSID awards in contracting States). ICSID awards are final and immediately enforceable under Chapter IV of the Convention (containing Articles 36 to 55). *See* Convention, ECF No. 1-4, arts. 53(1) (awards binding on parties), 54(1) (contracting States to recognize and enforce awards as binding).

---

8 Available at: https://icsidfiles.worldbank.org/icsid/ICSIDBLOBS/OnlineAwards/C17/DC4874_En.pdf.

9 Available at: https://icsidfiles.worldbank.org/icsid/ICSIDBLOBS/OnlineAwards/C18/DS11770_En.pdf.

Once an award is issued, the parties "shall abide by and comply with [its] terms." *Id*. art. 53(1). There is one narrow "except[ion]" to that rule of immediate enforceability: where "enforcement shall have been stayed ***pursuant to the relevant provisions of this Convention***." *Id*. (emphasis added). In other words, ICSID awards may only be stayed "pursuant to" the ICSID Convention.

The only "relevant provision[]" of the Convention here is Article 52, which allows an ICSID *ad hoc* committee to stay enforcement of the award "if it considers that the circumstances so require." *Id*. art. 52(5). The default rule, then, is that ICSID awards are enforceable upon issuance and remain so throughout any annulment proceeding—unless the committee finds that the circumstances "require" otherwise. *See* Christoph H. Schreuer, *The ICSID Convention: A Commentary* (3d ed. 2022), Article 52, ¶ 718 ("[A]nnulment proceedings that are not accompanied by a stay of enforcement . . . [are not] a basis for domestic courts to withhold recognition or refuse enforcement. . . . [I]f the *ad hoc* committee, once it is constituted, declines to continue or to grant a stay, the award is fully binding and enforceable. The fact alone that annulment proceedings are pending has no suspensive effect.").

Congress enacted the ICSID Act to "carry[] out . . . the obligations of the United States under the [ICSID] Convention." Pub. L. No. 89–532, 80 Stat. 334 (codified at 22 U.S.C. §§ 1650 and 1650a). *See Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 269 (D.D.C. 2019). Congress recognized the Convention's emphasis on the mandatory enforceability of ICSID arbitral awards in Section 1650a, which states unequivocally that an ICSID award "shall be enforced," without caveat or provision for delay. 22 U.S.C. § 1650a(a). With that "command," Congress underscored the "sense of urgency" with which courts should enforce ICSID awards. *Perenco Ecuador Ltd. v. Republic of Ecuador*, 2023 WL 2536368, at *6 (D.D.C. Mar. 16, 2023). Section 1650a further directs courts to give an ICSID award "the same full faith and credit" as they would if it were already a "final judgment" of a state court. 22 U.S.C. § 1650a(a). It also gives an ICSID award recipient "a right arising under a treaty of the United States" to have the pecuniary obligations of the award enforced. *Id*. The statute allows courts "no discretion to defy the Convention or

Congress's direction that [they] 'shall' enforce ICSID awards." *ACF Renewable Energy Ltd. v. Republic of Bulgaria*, 804 F. Supp. 3d 141, 152 (D.D.C. 2025).

Congress also went a step further in Section 1650a, expressly providing that the Federal Arbitration Act ("FAA") "shall not apply" to ICSID awards. That provision highlights two important distinctions between ICSID and non-ICSID arbitration under federal law. First, the FAA *does* allow a court to stay award enforcement proceedings in cases where the adverse party moves to vacate the award.[10] 9 U.S.C. § 12. Section 1650a, by contrast, contains no such provision allowing a court to stay enforcement proceedings pending annulment.

Second, Chapter 2 of the FAA implements the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") that applies to most non-ICSID international arbitrations. 9 U.S.C. § 201 *et seq*. Unlike the ICSID Convention, the New York Convention expressly permits the *enforcement court* to adjourn proceedings "if it considers it proper" while a set-aside (vacatur) application is pending. New York Convention, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 art. VI. The FAA also expressly empowers a court to "defer[]" recognition or enforcement, but only on grounds specified in the New York Convention. 9 U.S.C. § 207. This language does not appear in the ICSID Act. By omitting such language from Section 1650a, Congress was "keenly aware" of the FAA, but "elected not" to include similar stay language for ICSID awards. *Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 50 (D.D.C. 2015). And even with the FAA's express language permitting a stay, courts in this District routinely decline to stay enforcement of a New York Convention award merely because a set-aside (vacatur) proceeding is pending.[11]

---

[10] Vacatur is the FAA analog to annulment under the ICSID Convention. *See* 9 U.S.C. § 10.

[11] *See, e.g.*, *Perimetral Oriental de Bogotá, S.A.S., v. Agencia Nacional de Infraestructura*, 2026 WL 3347264, at *3–5 (D.D.C. Nov. 5, 2026); *NJSC Naftogaz of Ukraine v. Russian Fed'n*, 2026 WL 2069990, at *4–8 (D.D.C. July 17, 2026); *JSC DTEK Krymenergo v. Russian Fed'n*, 2025 WL 1148347, at *7 (D.D.C. Apr. 17, 2025); *LLC SPC Stileks v. Republic of Moldova*, 2021 WL 5318029, at *4, 6 (D.D.C. Nov. 16, 2021); *Gold Reserve, Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 135, 137 (D.D.C. 2015); *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 61, 72–73 (D.D.C. 2013). A stay is still less appropriate under the ICSID Convention, which has no such express provision, and where the annulment committee has already decided that a stay is not warranted pending resolution of its own proceedings.

Although some courts in this District have granted stays sought by ICSID award debtors, *see* Mot. 6–7, those courts appear not to have considered (because the parties in those cases did not argue) the threshold question of whether exercising the court's general inherent power would "contradict" the ICSID Convention, as implemented through 22 U.S.C. § 1650a. *Williamson*, 161 F.4th at 809. AES respectfully submits that it would. As courts in this District have observed, "the Court may well lack the discretion to stay the enforcement of an ICSID award because doing so would likely [run] afoul of ICSID's implementing statute, 22 U.S.C. § 1650a . . . ." *Tenaris S.A. v. Bolivarian Republic of Venezuela*, 2020 WL 3265476, at *4 (D.D.C. June 17, 2020); *see also Tenaris, S.A. v. Bolivarian Republic of Venezuela*, 2021 WL 1177996, at *4 (D.D.C. Mar. 29, 2021) ("[T]he Court may lack authority to stay the enforcement of the arbitration award" given the language of the implementing statute, 22 U.S.C. § 1650a). As demonstrated above, the Award is "binding" under the ICSID Convention and the sole potential "except[ion]" to its immediate enforcement—a stay "pursuant to the relevant provisions of this [ICSID] Convention"—has already been denied. Convention, ECF No. 1-4, art. 53(1); *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 108 (D.D.C. 2019) (denying a stay of enforcement of ICSID award because under the Convention, an award is binding unless stayed pursuant to the Convention). "Absent such a stay, [Argentina] ***must*** 'abide by and comply with the terms of the award.'" *TECO*, 414 F. Supp. 3d at 108 (quoting ICSID Convention, art. 53(1)) (emphasis added).

### B. Even If the Court Retains the Power to Stay Enforcement, No Further Stay Is Warranted Where the Committee Has Already Lifted the Stay

In the alternative, even if the ICSID Convention and its implementing statute left room for courts to stay these proceedings in their discretion, exercise of that discretion must be a "reasonable response to the problems and needs confronting the court's fair administration of justice." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (citation omitted). Courts' inherent power to manage their dockets "must be exercised with restraint" and avoid "undermining other vital interests related to the fair administration of justice." *Id.* at 48. Here, the "fair administration of justice" strongly

counsels against granting Argentina an end-run around the Committee—and around the self-contained framework of the ICSID Convention.

As explained above, Argentina already sought a stay from the Committee, the sole authority charged by the Convention with administering the annulment proceeding. Over the course of several months, the Committee considered the same arguments that Argentina makes here and issued a reasoned, 30-page decision balancing the parties' competing interests. *Supra* p. 6; *see* Stay Decision, ECF No. 24-3, ¶¶ 13–41 (summary of Argentina's arguments). The Committee conditioned a stay upon Argentina providing full security. When Argentina refused, the Committee lifted the stay.

Argentina has identified no considerations unique to this Court or the United States that would warrant a different result or more favorable relief here. Indeed, Argentina makes no new arguments at all.[12] Consistency with the primary jurisdiction (here, ICSID) is generally the "more prudent" course. *Matter of Arb. of Certain Controversies Between Getma Int'l and Republic of Guinea*, 142 F. Supp. 3d 110, 116 (D.D.C. 2015). Although in *Getma*, this Court granted a stay requested by an award debtor in a New York Convention (not ICSID Convention) case, the Court noted that a stay was already in place under the applicable rules of the Common Court of Justice and Arbitration and that "no foreign tribunal ha[d] denied a request to stay." *Id.* Here, the opposite is true: no stay is in place under the ICSID Convention or rules, because the ICSID Committee has already lifted it. Argentina claims that "[r]espect for ICSID's ongoing annulment review process" provides an "independent reason" to stay these proceedings. Mot. 7 n.1. Argentina has it backwards. The Committee has already decided on the appropriate course of action while an annulment application is pending before it. Respect for the Committee's decision-making is not served by granting the unconditional stay that the Committee refused to provide.

[12] Although Argentina introduces short excerpts from a 2026 IMF staff report, *see* Mot. 12, the Committee already considered Argentina's reliance on the full IMF Country Report for 2025. *See* Stay Decision, ECF No. 24-3, ¶ 35. In all events, the 2026 IMF staff report does not support Argentina's arguments for a stay, not least because it projects economic expansion in 2026. *See infra* footnote 21.

Indeed, a stay would run "afoul" of the Convention's streamlined, self-contained enforcement scheme as well as its federal implementing statute. *Tenaris*, 2020 WL 3265476, at *4. That is particularly so with a respondent that shows little respect for ICSID awards and U.S. court judgments. *See* Stay Decision, ECF No. 24-3, ¶ 91 ("no ICSID award has ever been immediately paid by Argentina"); *see also NML Cap., Ltd. v. Argentine Republic*, 727 F.3d 230, 238, 247 (2d Cir. 2013) ("Argentina has been a uniquely recalcitrant debtor . . . . [C]ounsel for Argentina told the panel that it 'would not voluntarily obey' the district court's injunctions, even if those injunctions were upheld by this Court."); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 466 n.2 (2d Cir. 2007) ("We note that Argentina has made many contributions to the law of foreign insolvency through its numerous defaults on its sovereign obligations, as well as through what we might term a diplomacy of default . . . . Argentina emerged as the single most resistant debtor in international finance.") (internal quotations omitted); *EM Ltd. v. Banco Cent. De La República Argentina*, 800 F.3d 78, 98–99 (2d Cir. 2015) (declining to "condone or excuse Argentina's continuing failure to pay the judgments duly entered against it by the District Court. Our decision . . . in this lawsuit is not intended to allow the Republic to avoid its bargained-for obligations, or to continue shirking the debts it has the ability to pay, although we suspect that this will be a predictable and unfortunate outcome of our decision.").

## II. ARGENTINA FAILS TO DEMONSTRATE ANY ENTITLEMENT TO A DISCRETIONARY STAY

Even assuming that Section 1650a does not displace the Court's general inherent power to stay proceedings, Argentina nevertheless cannot meet its "burden of showing that the stay is needed and warranted." *Infrastructure Servs.*, 2019 WL 11320368, at *2 (citing *Landis*, 299 U.S. at 255). A court possesses the inherent authority to "control the disposition of the causes on its docket." *Landis*, 299 U.S. at 254. In exercising that discretion, a court must "weigh competing interests and maintain an even balance" between its "interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55). In actions to enforce foreign arbitral awards, a stay

should not be granted lightly, as it implicates "federal courts' obligations under international treaties to promptly recognize these awards." *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 39 (D.D.C. 2019). Argentina cannot meet that standard because the Court's interests in judicial economy (Section II.A *infra*) and the balance of possible hardships to each party (Sections II.B and II.C *infra*) all weigh against staying these proceedings.

### A. Judicial Economy Favors Proceeding to Judgment

Argentina seeks the very antithesis of judicial economy: an indefinite, second stay of enforcement pending resolution of its annulment application when the original stay has already been litigated and rejected. Nothing about that proposal "preserves judicial and party resources." Mot. 6. A stay of these proceedings would not, as Argentina claims, "preserve the *status quo*." Mot. 2, 7 n.1, 10. Quite the opposite: Argentina asks the Court to reinstate, indefinitely and unconditionally, a stay that the Committee charged with adjudicating its annulment application has already lifted. That would disserve judicial economy, for two reasons.

*First*, as is evident from Argentina's summary of its annulment arguments (Mot. 8), there are no overlapping arguments before this Court and the annulment Committee. There is therefore no concern of "litigating the same issues in two forums," *Tethyan Copper*, 590 F. Supp. 3d at 270, which is the driving factor when courts have found judicial economy favors awaiting the second forum's decision. *See infra* pp. 15–16.

The path to judgment here is straightforward. Argentina has raised no jurisdictional objection before this Court (nor could it), has not moved to dismiss, and has already answered the Petition, *see* ECF No. 25. As to the merits, while a court is "more than a 'rubber stamp'" in enforcing an ICSID award, it need only "ensure that it has subject-matter and personal jurisdiction" and "that the award is authentic." *TECO*, 414 F. Supp. 3d at 101. The only actual defense that Argentina has raised is "the principle of international comity," which Circuit precedent forecloses

as a defense.[13] *Eurus Energy Holdings Corp. v. Kingdom of Spain*, 2026 WL 2874086, at *11 (D.D.C. Sept. 24, 2026) ("the D.C. Circuit has rejected a resort to 'international comity' as a defense to the enforcement of an ICSID award") (citing *Micula v. Gov't of Romania*, 101 F.4th 47, 54 (D.C. Cir. 2024)); *see also ACF Renewable Energy*, 804 F. Supp. 3d at 152 ("Section 1650a accounts for—and forecloses—Bulgaria's comity objections . . . . [C]omity concerns are essentially 'baked in' to the ICSID Convention and its implementing statute.") (internal quotation omitted). All that remains, then, is for the Court to ensure that the Award is authentic—which Argentina does not dispute. *See* Answer, ECF No. 25, ¶¶ 12–13, 27; Mot. 3.

Judicial economy favors prompt adjudication where the Court has few, if any, outstanding issues to resolve. *Tethyan Copper,* 590 F. Supp. 3d at 270 (denying motion to stay where briefing is substantially complete). That is particularly so where there are no overlapping issues with the other proceedings. Here, awaiting the annulment decision would neither (*i*) "narrow the issues" and so "assist in the determination of the questions of law," nor (*ii*) provide this Court with "the value of any additional clarity." *ACF Renewable Energy*, 804 F. Supp. 3d at 152 (denying motion to stay); *Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2026 WL 2941227, at *13 (D.D.C. Sept. 30, 2026) (same).

By contrast, Argentina relies on a cluster of inapposite cases from 2019–2021 in which courts in this District stayed the enforcement of awards against Spain at the jurisdictional stage. Mot. 1, 6–7, citing *Masdar Solar*, 397 F. Supp. 3d at 34; *InfraRed Env't Infrastructure GP Ltd. v. Kingdom of Spain*, 2021 WL 2665406 (D.D.C. June 29, 2021); *RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*, 2021 WL 1226714 (D.D.C. Mar. 31, 2021). In the unique circumstances of those cases, judicial economy favored staying enforcement because, at the time, arbitral tribunals, ICSID annulment committees, and enforcing courts worldwide were confronted with "[t]hickly tangled legal issues" regarding "conflict between recent EU law and multiple treaty regimes."

---

13 Argentina's Answer identifies two defenses in addition to its comity argument. ECF No. 25, at 9. But those are not in reality defenses to the Petition. The first merely repeats the argument that the proceedings should be stayed pending annulment, and the second confusingly states that the Award should be annulled *in the ICSID annulment proceedings*, which is not an argument that this Court can resolve. *Id*.

*InfraRed*, 2021 WL 2665406, at *1. These were issues of "first impression" to U.S. courts, and Spain's motions to dismiss required resolving questions "largely identical" to those being "litigated before the ICSID Annulment Committee." *Id.* at *3, 5. Judicial economy was served by avoiding litigation on "essentially the same issues in two separate forums," and awaiting the ruling of the annulment committee which, at minimum, could be of "persuasive value" to the court. *Masdar Solar*, 397 F. Supp. 3d at 38, 40 ("Rather than delve prematurely into EU case law, international treaties, and sovereign constitutions, this Court decides to take door number two and issue a stay in the present matter."); *see also InfraRed*, 2021 WL 2665406, at *6. None of the same considerations apply here.

Once the D.C. Circuit issued its decision in *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, the legal landscape changed. 112 F.4th 1088, 1109 (D.C. Cir. 2024) (the United States "must open the doors of its courthouses" to ICSID award-holders "seeking to enforce such awards"). Since then, courts have been far less willing to grant further stays of enforcement based on parallel proceedings. *See, e.g.*, *Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2024 WL 4298808, at *4 (D.D.C. Sept. 26, 2024) (denying motion to stay); *ACF Renewable Energy*, 804 F. Supp. 3d at 152 (same); *Blasket Renewable Invs.*, 2026 WL 2941227 (same); *Enka Renewables, LLC v. Georgia*, 2026 WL 2676739, at *2 (D.D.C. Sept. 11, 2026) (same).

*Second*, Argentina's speculation that annulment is a "genuine possibility" because its annulment application alleges "serious grounds" does not sway the analysis and is, in any event, incorrect. *See* Mot. 7. Annulment is an exceptional remedy, and Argentina has offered no objective evidence demonstrating that annulment is sufficiently likely to justify suspending an otherwise enforceable award. *See* Mot. 7–9. Annulment is not an appeal, which the Convention expressly prohibits. *See supra* p. 5. Rather, annulment is an "extraordinary" remedy limited to those rare cases in which violation of fundamental principles undermines the integrity of arbitral proceedings. ICSID Background Paper, *supra* note 5, ¶¶ 77–80. ICSID's most recent statistics confirm the exceptional nature of annulment. Of the 543 ICSID awards rendered between 1972 and 2026, only eight have been annulled in full, and 20 annulled in part. ICSID, *The ICSID*

*Caseload – Statistics, Issue 2026-2* 21 (2026).[14] Tellingly, of the many cases from this Court cited in Argentina's Motion, none resulted in annulment by an ICSID *ad hoc* committee.[15]

Annulment is particularly unlikely here because the Award was unanimous on all relevant points. As Argentina accepts (Mot. 3), the Tribunal was unanimous in (*i*) finding that Argentina breached its obligations under the Argentina-U.S. BIT and (*ii*) awarding AES $715.9 million in damages, plus interest.[16] That unanimity is particularly significant because the case on which Argentina relies most heavily, *Unión Fenosa v. Egypt*, turned on "several unique circumstances," including that the dissenting arbitrator had disagreed with "all aspects of the majority's award: its jurisdictional holding, merits conclusion, and calculation of damages." *Unión Fenosa Gas, S.A. v. Arab Republic of Egypt*, 2020 WL 2996085, at *4–5 (D.D.C. June 4, 2020); *see also Koch Mins. Sàrl v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 46 (D.D.C. 2020) (dissent disagreed on liability and damages). The *Unión Fenosa* court also emphasized other "unique circumstances" that justified a stay pending annulment proceedings, such as the size of the award ("one of the largest awards in ICSID's history"), "duplicative" issues between the enforcement and annulment proceedings, and "uncertainties regarding an unprecedented global [COVID-19] pandemic." 2020

---

[14] Available at: https://icsid.worldbank.org/sites/default/files/publications/2026-2_ENG_TheICSIDCaseload Statistics.pdf.

[15] The annulment committees upheld the awards in *ConocoPhillips v. Venezuela*, *Cuba Infrastructure v. Spain*, *InfraRed v. Spain*, *RREEF v. Spain*, and *Koch v. Venezuela*, while the annulment applicants agreed to dismiss their applications in *Masdar Solar v. Spain*, *Tethyan Copper v. Pakistan*, and *Unión Fenosa v. Egypt*. Mot. 1–2, 5–7, 10–12; *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/07/30, Decision on Annulment (Jan. 22, 2025), ¶ 956 (dismissing annulment application); *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, ICSID Case No. ARB/15/20, Decision on Annulment (Mar. 28, 2022), ¶ 504 (same); *InfraRed Env't Infrastructure v. Kingdom of Spain*, ICSID Case No. ARB/14/12, Decision on Annulment (June 10, 2022), ¶ 815 (same); *RREEF Infrastructure (G.P.) Ltd. v. Kingdom of Spain*, ICSID Case No. ARB/13/30, Decision on Annulment (June 10, 2022), ¶ 171 (same); Toby Fisher, *Koch's Award Against Venezuela Upheld at ICSID*, Global Arbitration Review (May 26, 2022), https://globalarbitrationreview.com/article/kochs-award-against-venezuela-upheld-icsid; *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, ICSID Case No. ARB/14/1, Order of the Ad Hoc Committee Taking Note of the Discontinuance (Nov. 27, 2020); *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, ICSID Case No. ARB/12/1, Procedural Order Taking Note of the Discontinuance (Jan. 6, 2023); *Unión Fenosa Gas, S.A. v. Arab Republic of Egypt*, ICSID Case No. ARB/14/4, Order Taking Note of the Discontinuance (Mar. 12, 2021). The above decisions on annulment are available on ICSID's website, at https://icsid.worldbank.org/cases/case-database.

[16] As noted above, the one-page dissent by Argentina's appointed arbitrator disagreed on a minor point regarding the apportionment of legal costs and fees. ECF No. 1-3. Otherwise, the dissenting arbitrator "agree[d] with the general terms of the Award" and "joined the majority of [his] fellow arbitrators." ECF No. 1-3 at 2.

WL 2996085, at *1, 5. The *Unión Fenosa* court cautioned that its decision should "not suggest that a stay is always or even often warranted whenever a losing party petitions to annul an ICSID award." *Id.* at *5. As another court in this District noted, *Unión Fenosa* is "expressly limited to its facts." *Tethyan Copper*, 590 F. Supp. 3d at 271. None of its "unique considerations" are at play here. *Unión Fenosa*, 2020 WL 2996085, at *1. Ultimately, Argentina's annulment application tries to reargue substantive and procedural issues that the Tribunal already resolved. Mot. 8. Annulment committees reject such attempts at re-litigation. *See* ICSID Background Paper, pp. 53–70. The Committee is anticipated to do so here too.

In short, a stay would not advance judicial economy: the issues before this Court do not overlap with the issues being litigated in the annulment; the path to judgment does not present the complex jurisdictional questions that drove the stays in Argentina's principal authorities; and Argentina has not shown that annulment is sufficiently likely to justify delaying an otherwise straightforward enforcement proceeding. Ultimately, the "minor chance" of annulment fails to override this Court's judicial interest in "swift adjudication." *Tethyan Copper*, 590 F. Supp. 3d at 270. Judicial economy therefore favors proceeding to judgment.

### B. Further Delay Would Materially Prejudice AES's Ability to Enforce the Award

The prejudice a stay would inflict on AES is a further reason to deny the Motion. *See Belize Soc. Dev.*, 668 F.3d at 732. As the Committee found in its decision lifting the original stay, "[t]he risk of Argentina's non-payment of the Award is credible, given its history with the enforcement of ICSID awards, especially since . . . ***no*** ICSID award has ***ever*** been immediately paid by Argentina." Stay Decision, ECF No. 24-3, ¶ 91 (emphasis added).

AES has now waited nearly a quarter-century to be compensated for Argentina's breach of the Argentina-U.S. BIT. AES has incurred millions of dollars in legal costs to pursue the compensation it has long been owed. Argentina is obligated to pay the Award but has refused to do so, necessitating yet another legal action by AES, before this Court.

As courts in this District have recognized, "delay is in itself a hardship." *NJSC Naftogaz of Ukraine v. Russian Fed'n*, 2026 WL 2069990, at *8 (D.D.C. July 17, 2026); *see also Perimetral Oriental de Bogotá*, 2026 WL 3347264, at *4 ("continued inability to obtain enforcement" weighs against stay of enforcement of award under the New York Convention). The "obvious harm" of further delay is that AES must wait even longer for compensation, "hurt[ing] the economic interests of not only the company but also of its shareholders and employees, who poured money and effort into [AES's investments]" in Argentina. *Tethyan Copper*, 590 F. Supp. 3d at 271; *see also ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, 10 (D.D.C. 2022) ("Any hardship to Venezuela also would have to be balanced against Petitioners' hardship in waiting even longer to begin collecting. Fifteen years is long enough."). In short, "[a] stay only prolongs justice denied." *Tethyan Copper*, 590 F. Supp. 3d at 271.

Argentina argues that a temporary postponement of payment will not prejudice AES because any prejudice will be mitigated by the continuing accrual of interest, and AES will retain its "substantive enforcement right" if the Award is not annulled. Mot. 9, 11. These arguments miss the "crux" of AES's concern: the harm to AES is not only about when AES will be compensated, but also about whether AES will be compensated at all. *Blasket Renewable Invs., LLC v. Kingdom of Spain*, 2026 WL 1236125, at *6 (D.D.C. Apr. 10, 2026) (The "crux of petitioner's concern" is "that Spain will simply refuse to pay the Judgment and, meanwhile, that other creditors will establish priority interests over Spain's attachable U.S.-based assets . . . . Thus, petitioner has good reason to seek enforcement of the Judgment expeditiously and reason to fear that, should an unbonded stay be granted, petitioner may never recover. Respondent's request for a stay is therefore denied.").

The stay that Argentina seeks is indefinite in duration. Contrary to Argentina's speculation, there is no guarantee that a decision "can reasonably be expected in 2027." Mot. 10. The basis for Argentina's argument is the ICSID Arbitration Rules' requirement that annulment decisions be rendered "within 60 days" of the closure of proceedings. Mot. 4. As noted above, however, the closure of proceedings does not typically occur until many months after the hearing. *Supra*

pp. 7–8. For example, one of the annulment decisions cited in Argentina's Motion was issued 19 months after the hearing. Mot. 9, citing *Occidental Petroleum Corp. v. Republic of Ecuador (II)*, ICSID Case No. ARB/06/11, Decision on Annulment (Nov. 2, 2015) ¶ 41.[17] Another ICSID annulment committee took more than two years after the hearing to issue its decision denying Argentina's annulment application in another case. *See supra* p. 7. Further, the annulment Committee's procedural calendar here contemplates additional submissions after the hearing, which would further prolong a decision. Davidoff Decl. Ex. 4 (Revised Procedural Calendar), ECF No. 24-5. The length of any stay pending the Committee's decision is therefore entirely uncertain. It is unlikely to be short.

Imposing a stay during that indefinite period would be particularly prejudicial to AES because each month's delay in entering judgment materially increases the risk that AES will never recover on the Award. *NJSC Naftogaz*, 2026 WL 2069990, at *8. The last two decades have shown that Argentina will satisfy awards and judgments only when it has run out of options to resist. *See, e.g.*, Stay Decision, ECF No. 24-3, ¶¶ 56–57, 91. Argentina is battling award or judgment enforcement in at least four other proceedings in this District alone.[18]

Argentina's long line of creditors means that any delay in entry of judgment increases AES's collection risk. As the annulment Committee recognized, "requiring AES to wait until the end of the annulment proceeding to start enforcement proceedings, without any security, would leave it worse off than if the stay were lifted, because in the meantime, Argentina's seizable assets may have been taken by other creditors." Stay Decision, ECF No. 24-3, ¶ 101. This is a case where "[d]elay could itself impact the ability to recover in full." *NJSC Naftogaz*, 2026 WL 2069990, at *8. That risk of prejudice is present "particularly given [Argentina's] refusal to

---

[17] Available at: https://icsidfiles.worldbank.org/icsid/ICSIDBLOBS/OnlineAwards/C80/DC6912_En.pdf.

[18] *See Webuild S.p.A. v. Argentine Republic*, Docket No. 1:21-cv-02464 (D.D.C. Sept. 20, 2021); *Palladian Partners, L.P. v. Republic of Argentina*, Docket No. 1:25-cv-01954 (D.D.C. June 23, 2025); *ICS Inspection and Control Servs. Ltd. v. Argentine Republic*, Docket No. 1:26-cv-01093 (D.D.C. Mar. 31, 2026); *SAUR Int'l S.A.S. v. Republic of Argentina*, Docket No. 1:26-cv-01392 (D.D.C. Apr. 23, 2026).

commit to paying the Award" under the terms ordered by the Committee. *Tethyan Copper*, 590 F. Supp. 3d at 272.

Argentina's pattern of flouting its obligations to creditors extends beyond ICSID awards. Litigation before U.S. federal courts arising out of Argentina's 2001 sovereign debt default shows Argentina's defiance of court judgments as well. For 15 years, Argentina openly declared its outright refusal to pay its bondholders, in defiance of U.S. courts. *See Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 136–37 (2014) ("NML brought 11 actions against Argentina in the Southern District of New York to collect on its debt, and prevailed in every one. It is owed around $2.5 billion, which Argentina has not paid."). Its government officials "publicly and repeatedly announced their intention to defy any rulings of this Court and the district court with which they disagree," while Argentina's U.S. counsel stated on the record that Argentina "would not voluntarily obey" court orders. *NML Cap.*, 727 F.3d at 238 (internal citations omitted). Argentina also reportedly removed from the United States any assets against which judgments might be enforced.[19] *Banco Cent.*, 800 F.3d at 99 (observing that Argentina was "shirking the debts it has the ability to pay" and would likely continue to do so).[20] The fact that Argentina "flouted" the annulment Committee's conditions for staying this Award suggests its conduct has not changed. *See, e.g.*, *Tethyan Copper*, 590 F. Supp. 3d at 271 (crediting petitioner's concern that the respondent State would use the stay to "preserv[e] its U.S. assets," given that the State had "flouted ICSID's conditions for a prolonged stay" and "provided no guarantee that, if the Court stays the case and the Committee does not find in Pakistan's favor, it will abide by that decision").

When it comes to Argentina's creditors, "first in time is the first in right," and "a prior lien gives a prior claim." *United States v. City of New Britain*, 347 U.S. 81, 85 (1954) (internal

---

[19] *See also* Daniel Bases, *Argentine Debt Holdouts Make Final Plea to U.S. Court for Payment*, Reuters (Apr. 22, 2013), https://www.reuters.com/article/markets/us/argentine-debt-holdouts-make-final-plea-to-us-court-for-payment-idUSL2N0D62L0/ (noting Argentina's "widely reported plan to move offshore its payments on the exchange bonds") (internal quotations omitted).

[20] Argentina was forced to settle with its bondholders in 2016 only because Argentina needed to lift an injunction that prevented it from raising capital. *See* Liz Moyer, *Argentina's Debt Settlement Ends 15-Year Battle*, N.Y. Times (Feb. 29, 2016), https://www.nytimes.com/2016/03/01/business/dealbook/argentinas-debt-settlement-ends-15-year-battle.html.

quotations omitted). With the list of creditors continuing to grow, even a few months' delay may jeopardize AES's ability to obtain priority liens on Argentina's assets and undermine AES's hard-fought right to recovery for Argentina's breach of its treaty obligations. A stay in this proceeding will only further "encourage abusive tactics" by Argentina at AES's expense. *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2d Cir. 1998).

Finally, the running of post-award interest is no answer. Argentina made the same argument to the *ad hoc* Committee, and the Committee rightly rejected it. Stay Decision, ECF No. 24-3, ¶ 92.

It is cold comfort to AES that interest will continue to accrue during any stay—which means nothing if AES ends up receiving nothing. *Cf.* Mot. 10–11. In any event, Argentina exaggerates the extent to which interest will compensate AES, even if AES is paid. *See id.* Simple interest at the risk-free rate set in the Award will yield far less than the returns AES could make if it had access to those funds. As the Committee recognized, the risk-free rate is "unlikely to fully compensate [AES] for the loss of immediate access to the funds it is entitled to under the Award and the potential additional enforcement costs." Stay Decision, ECF No. 24-3, ¶ 92; *see also Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 72 (D.D.C. 2013) ("Although Chevron will be entitled to prejudgment interest, which would continue to accrue in the event of a stay, that is not enough to offset its continued inability to obtain enforcement of its award. After such an extensive delay, the balance of hardships—and, indeed, the interests of justice—strongly favor immediate confirmation.").

When faced with similarly recalcitrant respondents, courts in this District have refused to delay proceeding to judgment. *See ConocoPhillips*, 628 F. Supp. 3d at 10; *Tethyan Copper*, 590 F. Supp. 3d at 271. Respectfully, this Court should do the same, not least because it "cannot predict [Argentina's] compliance with this Award based on [Argentina's] history." *Tethyan Copper*, 590 F. Supp. 3d at 271.

### C. Argentina's Claimed Hardship Depends on Execution Measures That Are Not Before the Court

Argentina also fails to meet its burden to "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Its asserted hardships principally concern the consequences of attachment and execution, not the entry of judgment AES presently seeks.

*First*, Argentina conflates the entry of judgment with execution. *See* Mot. 11–13. Argentina invokes the prospect that recovery of seized assets could be difficult if the Award is annulled. But that "misconstrue[s] the posture of this case." *Tethyan Copper*, 590 F. Supp. 3d at 270. At this stage, AES seeks to convert the Award into a judgment, which is "but a preliminary step." *Id.* Before AES can execute against property subject to attachment under the FSIA, the Court must find that a "reasonable period of time" has elapsed and authorize attachment pursuant to 28 U.S.C. § 1610(c). *Id.* at 271. Indeed, Congress adopted Section 1610(c) to account for precisely the "fiscal and macroeconomic constraints" that Argentina describes (Mot. 12) and to accord a sovereign sufficient time to "work through its internal procedures to satisfy the judgment." *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 419 F. Supp. 3d 51, 54 (D.D.C. 2019); *see also Owens v. Republic of Sudan*, 141 F. Supp. 3d 1, 10 (D.D.C. 2015) ("[C]ase law and legislative history suggest that the purpose of Section 1610(c)'s reasonable-period requirement is to allow foreign states the opportunity to make arrangements for voluntary payment, while still allowing for more immediate enforcement efforts when necessary."). Argentina will have the opportunity to oppose execution at that point. *See, e.g.*, Argentina's Opposition to Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963, *Titan Consortium 1, LLC v. Argentine Republic*, No. 1:21-cv-2250 (D.D.C. May 20, 2026); *see also Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 271 (D.D.C. 2011) ("Section 1610(c) is designed to ensure that a foreign power is always given an opportunity to evaluate and respond to any court judgment entered against it which could subject its property and interests in the United States to attachment or execution . . . . [It] was therefore written into the statute as a way to ensure, through judicial review, that . . . each foreign power has a fair and adequate opportunity to appear and

contest any attachment or execution.”). As *Tethyan Copper* recognized in rejecting a similar argument, a claimed “litany of bad consequences” following collection against a sovereign does not establish hardship from the antecedent entry of judgment itself. 590 F. Supp. 3d at 270–71.

AES’s ability to attach Argentina’s assets is also uncertain. Argentina’s creditors have faced enormous hurdles in seeking to reach the country’s assets. *See, e.g.*, *TIG Ins. Co. v. Republic of Argentina*, 110 F.4th 221, 228 (D.C. Cir. 2024) (describing ongoing efforts to attach Argentina’s assets to satisfy a 2001 court judgment); *see also Attestor Master Value Fund LP v. Argentina*, 113 F.4th 220, 227–28 (2d Cir. 2024) (noting that “[o]ver the past twenty years, we have twice approved the attachment of [the] same reversionary interests by creditors” and “[a]lthough we have twice concluded that these reversionary interests belong to Argentina, Argentina seeks to relitigate the issue nearly twenty years after it was first decided”).

*Second*, Argentina’s concern about recovering seized assets is unwarranted. For one thing, Argentina could have mitigated that risk by providing the bank guarantee ordered by the Committee. Stay Decision, ECF No. 24-3, ¶ 87 (“hardship can be avoided . . . if Argentina provides security in the amount of the Award plus the interest due on it”). But Argentina refused. ECF No. 24-4. In addition, the Committee found that “Argentina ha[d] also not demonstrated a risk of non-recoupment from AES if the stay is lifted and the Award is later annulled.” Stay Decision, ECF No. 24-3, ¶ 82. Notably, “AES’ offer to hold any collected funds in a segregated account further mitigates that risk substantially.” *Id.* That offer, which still stands, should dispel any concerns about recovery in the highly unlikely event that AES executes on Argentina’s assets before the Committee’s decision. *See Tethyan Copper*, 590 F. Supp. 3d at 270–71.

*Finally*, Argentina has not identified any concrete fiscal hardship from allowing this proceeding to continue.[21] *See* Mot. 12–13. It repeats the arguments it made to the Committee regarding the "significant size of the Award relative to the country's budget for essential needs." Stay Decision, ECF No. 24-3, ¶ 83. Yet, comparisons between the size of the Award and expenditures on public programs do not establish that entry of judgment in this case would displace any particular expenditure or otherwise impair Argentina's ability to perform governmental functions. Argentina "does not set forth any facts from which the Court can infer that the funds or properties that plaintiff wishes to attach have been or will be used for the benefit for the [Argentinian] people." *OI Eur. Grp.*, 419 F. Supp. 3d at 56.

To be sure, satisfying a monetary obligation may have financial consequences for a sovereign debtor. But that is a simple consequence of Argentina's breach of its commitments to the United States and its investors. *See Hulley Enters. Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 286 (D.D.C. 2016) (observing that substantial economic harms alleged "follow inevitably from the Russian Federation's being the losing party in an indisputably high-stakes arbitration").

Argentina has not shown any hardship from being required to proceed now. This factor, too, weighs against a stay.

[21] Although Argentina presents a dire economic outlook, Mot. 12, according to the IMF staff report that it cites, Argentina has "ma[d]e progress in stabilizing the economy," deregulation and trade agreements with the United States and the European Union have resulted in a "recent credit rating upgrade," and "the economy is projected to expand by about 3½ percent in 2026." ECF No. 24-7, at 1. Recent news coverage supports this positive outlook. *See, e.g.*, Leila Miller & Rodrigo Campos, *Argentina's Country Risk Falls Steadily, Fueling Debate on Return to Capital Markets*, Reuters (May 12, 2026), https://www.reuters.com/world/americas/argentinas-country-risk-falls-steadily-fueling-debate-return-capital-markets-2026-05-12/ (noting growing "confidence in the government's ability to pay back its debt," following improvements in Argentina's country risk index and credit rating upgrade, and Argentina's "fiscal surplus every month since January of 2024"). And unlike Egypt in *Unión Fenosa*, Argentina is not facing a "massive fiscal crisis exacerbated by the ongoing global COVID-19 pandemic." 2020 WL 2996085, at *4. *Cf. Hulley Enters. Ltd. v. Russian Fed'n*, 502 F. Supp. 3d 144, 160 (D.D.C. 2020) (noting that the *Unión Fenosa* case can be "easily distinguished" because the respondent State "was facing near economic collapse").

## CONCLUSION

For the foregoing reasons, AES respectfully requests that the Court deny Argentina's Motion to stay this proceeding.

Dated: November 6, 2026
New York, New York

Respectfully submitted,
By: /s/ *Elliot Friedman*

James Hosking, admitted *pro hac vice*
james.hosking@chaffetzlindsey.com
Caline Mouawad, admitted *pro hac vice*
caline.mouawad@chaffetzlindsey.com
Andreas Frischknecht, D.C. Bar No. NY0213
andreas.frischknecht@chaffetzlindsey.com
CHAFFETZ LINDSEY LLP
1700 Broadway, 33rd Floor
New York, NY 10019
Telephone: (212) 257-6960

*Attorneys for Petitioner*
*The AES Corporation*

Elliot Friedman, D.C. Bar No. NY0106
elliot.friedman@freshfields.com
Sam Prevatt, admitted *pro hac vice*
sam.prevatt@freshfields.com
Sasha Aristotle (*pro hac vice* forthcoming)
sasha.aristotle@freshfields.com
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000

Carla Sung Ah Yoon, D.C. Bar No. 90032314
carla.yoon@freshfields.com
FRESHFIELDS US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555

*Attorneys for Petitioner*
*The AES Corporation*

**CERTIFICATE OF SERVICE**

I, Elliot Friedman, an attorney, hereby certify that on November 6, 2026, the foregoing Memorandum was served via ECF on all counsel of record.

Dated: November 6, 2026
New York, New York

Respectfully submitted,

By: /s/ *Elliot Friedman*

Elliot Friedman, D.C. Bar No. NY0106
elliot.friedman@freshfields.com
FRESHFIELDS US LLP
3 World Trade Center
175 Greenwich Street
51st Floor
New York, NY 10007
Telephone: (212) 277-4000

*Attorney for Petitioner*
*The AES Corporation*