**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AES CORPORATION,<br><br>Petitioner,<br><br>- against -<br><br>ARGENTINE REPUBLIC,<br><br>Respondent. | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Civil Action No. 1:25-cv-02540-RBW<br><br>**ORAL ARGUMENT REQUESTED** |

**RESPONDENT THE ARGENTINE REPUBLIC'S REPLY IN SUPPORT OF ITS MOTION TO STAY THE PROCEEDING**

Amanda F. Davidoff (D.C. Bar No. 978033)
Stephanie M. Kelly (D.C. Bar No. 1671765)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006-5215
Telephone: (202) 956-7500
Facsimile: (202) 956-7676
davidoffa@sullcrom.com
kellys@sullcrom.com

Sergio J. Galvis (NY Reg. No. 1934264)
(*pro hac vice*)
Qingyang Song (NY Reg. No. 5925474)
(*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
galviss@sullcrom.com
songq@sullcrom.com

*Counsel for the Argentine Republic*

November 24, 2026

# TABLE OF CONTENTS


**Page**

**PRELIMINARY STATEMENT** ....... 1

**ARGUMENT** ....... 3

**I. THIS COURT HAS WELL-SETTLED AUTHORITY TO STAY ENFORCEMENT OF THE AWARD** ....... 3

A. The ICSID Convention, Implemented by 22 U.S.C. § 1650a, Does Not Displace the Court's Inherent Authority to Stay Enforcement ....... 4

B. The Committee's Stay Decision Does Not Resolve Whether This Court Should Stay These Proceedings ....... 8

**II. JUDICIAL ECONOMY AND BALANCE OF HARDSHIPS WEIGH IN FAVOR OF A BRIEF STAY OF ENFORCEMENT** ....... 11

A. A Stay Would Promote Judicial Economy ....... 12

B. A Limited Stay Would Cause Petitioner Little, If Any, Prejudice ....... 15

C. Denying a Stay Would Expose the Republic to Substantial and Irremediable Hardship ....... 20

**CONCLUSION** ....... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*9REN Holding S.A.R.L.* v. *Kingdom of Spain*,
2020 WL 5816012 (D.D.C. Sept. 30, 2020) .....5, 9, 10

*ACF Renewable Energy Ltd.* v. *Republic of Bulgaria*,
804 F. Supp. 3d 141 (D.D.C. 2025) .....13

*Barnhart* v. *Peabody Coal Co.*,
537 U.S. 149 (2003) .....7

*Belize Soc. Dev. Ltd.* v. *Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012) .....1, 7

*Bison Bee LLC* v. *Republic of Argentina*,
778 F. App'x 72 (2d Cir. 2019) .....19

*Blasket Renewable Investments, LLC* v. *Kingdom of Spain*,
2026 WL 2941227 (D.D.C. Sept. 30, 2026) .....13

*Bugliotti* v. *Republic of Argentina*,
952 F.3d 410 (2d Cir. 2020) .....19

*Chambers* v. *NASCO, Inc.*,
501 U.S. 32 (1991) .....6

*Chevron Corp.* v. *Republic of Ecuador*,
949 F. Supp. 2d 57 (D.D.C. 2013) .....18

*Chevron U.S.A. Inc.* v. *Echazabal*,
536 U.S. 73 (2002) .....7

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
2017 WL 6349729 (D.D.C. June 9, 2017) .....23

*Cube Infrastructure Fund SICAV* v. *Kingdom of Spain*,
2021 WL 7447978 (D.D.C. May 17, 2021) .....5

*Europcar Italia, S.p.A.* v. *Maiellano Tours, Inc.*,
156 F.3d 310 (2d Cir. 1998) .....19, 20

*Hulley Enters. Ltd.* v. *Russian Fed'n*,
211 F. Supp. 3d 269 (D.D.C. 2016) .....11, 17

*InfraRed Env't Infrastructure GP Ltd.* v. *Kingdom of Spain*,
2021 WL 2665406 (D.D.C. June 29, 2021) ... 9, 12, 18, 19

*Landis* v. *N. Am. Co.*,
299 U.S. 248 (1936) ... 1, 5, 6

*Link* v. *Wabash R. Co.*,
370 U.S. 626 (1962) ... 6

*Matter of Arb. of Certain Controversies Between Getma Int'l and Republic of Guinea*,
142 F. Supp. 3d 110 (D.D.C. 2015) ... 10, 21

*Masdar Solar & Wind Cooperatief U.A.* v. *Kingdom of Spain*,
397 F. Supp. 3d 34 (D.D.C. 2019) ... 12, 23, 24

*Micula* v. *Gov't of Romania*,
104 F. Supp. 3d 42 (D.D.C. 2015) ... 8

*Ned Chartering & Trading, Inc.* v. *Republic of Pakistan*,
130 F. Supp. 2d 64 (D.D.C. 2001) ... 23

*NextEra Energy Glob. Holdings B.V.* v. *Kingdom of Spain*,
2020 WL 5816238 (D.D.C. Sept. 30, 2020) ... 9

*NextEra Energy Glob. Holdings B.V.* v. *Kingdom of Spain*,
112 F.4th 1088 (D.C. Cir. 2024) ... 12

*NJSC Naftogaz of Ukraine* v. *Russian Federation*,
2026 WL 2069990 (D.D.C. July 17, 2026) ... 17

*Novenergia II - Energy & Env't (SCA)* v. *Kingdom of Spain*,
2020 WL 417794 (D.D.C. Jan. 27, 2020) ... 17

*OI Eur. Grp. B.V.* v. *Bolivarian Republic of Venezuela*,
419 F. Supp. 3d 51 (D.D.C. 2019) ... 21

*Perenco Ecuador Ltd.* v. *Republic of Ecuador*,
2023 WL 2536368 (D.D.C. Mar. 16, 2023) ... 6

*Perimetral Oriental de Bogotá, S.A.S.* v. *Agencia Nacional de Infraestructura*,
2026 WL 3347264 (D.D.C. Nov. 5, 2026) ... 17

*RREEF Infrastructure (G.P.) Ltd.* v. *Kingdom of Spain*,
2021 WL 1226714 (D.D.C. Mar. 31, 2021) ... 12, 18, 23

*RWE Renewables GmbH* v. *Kingdom of Spain*,
No. 21-cv-03232 (JMC), ECF No. 28 (Order) (D.D.C. Apr. 13, 2023) ... 5

*TECO Guatemala Holdings, LLC* v. *Republic of Guatemala*,
2020 WL 2934951 (D.D.C. June 2, 2020) ....................23

*TECO Guatemala Holdings, LLC* v. *Republic of Guatemala*,
414 F. Supp. 3d 94 (D.D.C. 2019) ....................7, 8

*Telefónica, S.A.* v. *Republic of Colombia*,
No. 1:26-cv-01930-JDB, ECF No. 13 (Memorandum Opinion and Order) (D.D.C. Nov. 18, 2026) ....................10, 19

*Tenaris S.A.* v. *Bolivarian Republic of Venezuela*,
2020 WL 3265476 (D.D.C. June. 17, 2020) ....................5

*Tenaris S.A.* v. *Bolivarian Republic of Venezuela*,
2021 WL 1177996 (D.D.C. Mar. 29, 2021) ....................5

*Tethyan Copper Co. Pty Ltd.* v. *Islamic Republic of Pakistan*,
590 F. Supp. 3d 262 (D.D.C. 2022) .................... *passim*

*Unión Fenosa Gas, S.A.* v. *Arab Republic of Egypt*,
2020 WL 2996085 (D.D.C. June 4, 2020) .................... *passim*

*United States* v. *Williamson*,
161 F.4th 803 (D.C. Cir. 2025) ....................1, 6, 7

*Weinberger* v. *Romero-Barcelo*,
456 U.S. 305 (1982) ....................6

**ICSID Decisions**

*Agility Public Warehousing Company K.S.C.P.* v. *Republic of Iraq*,
ICSID Case No. ARB/17/7, Decision on Annulment (Feb. 8, 2024) ....................15

*CMS Gas Transmission Company* v. *Argentine Republic*,
ICSID Case No. ARB/01/8, Decision on *Annulment* (Sept. 25, 2007) ....................16

*Daimler Financial Services A.G.* v. *Argentine Republic*,
ICSID Case No. ARB/05/01, Decision on Annulment (Jan. 7, 2015) ....................16

*EDF Int'l S.A.* v. *Argentine Republic*,
ICSID Case No. ARB/03/23, Decision on Annulment (Feb. 5, 2016) ....................17

*El Paso Energy Int'l Co.* v. *Argentine Republic*,
ICSID Case No. ARB/03/15, Decision on Annulment (Sept. 22, 2014) ....................16

*Occidental Petroleum Corp.* v. *Republic of Ecuador (II)*,
ICSID Case No. ARB/06/11, Decision on Annulment (Nov. 2, 2015) ....................17

*Perenco Ecuador Limited* v. *Republic of Ecuador*,
ICSID Case No. ARB/08/6, Decision on Annulment (May 28, 2021) .......... 15

*Sempra Energy International* v. *Argentine Republic*,
ICSID Case No. ARB/02/16, Decision on Annulment (Jun. 29, 2010) .......... 15

*TECO Guatemala Holdings LLC* v. *Republic of Guatemala*,
ICSID Case No. ARB/10/23, Decision on Annulment (Apr. 5, 2016) .......... 15

*Teinver S.A., Transportes de Cercanías S.A., and Autobuses Urbanos S.A.* v. *Argentine Republic*,
ICSID Case No. ARB/09/1, Decision on Annulment (May 29, 2019) .......... 16

*Tidewater Investment SRL, Tidewater Caribe, C.A.* v. *The Bolivarian Republic of Venezuela*,
ICSID Case No. ARB/10/5, Decision on Annulment (Dec. 27, 2016) .......... 15

*Total S.A.* v. *Argentine Republic*,
ICSID Case No. ARB/04/01, Decision on Annulment (Feb. 1, 2016) .......... 16

**Statutes and Rules**

9 U.S.C. § 9 .......... 8

22 U.S.C. § 1650a .......... *passim*

28 U.S.C. § 1610(c) .......... 13, 23

Federal Arbitration Act .......... 6, 7, 8

Fed. R. Civ. P. 69(a)(2) .......... 21

**Other Authorities**

ICSID Arbitration Rules 1984 .......... 16

ICSID Arbitration Rules 2006 .......... 16

ICSID Convention .......... *passim*

ICSID, *The ICSID Caseload—Statistics*, Issue 2026-2 (2026) .......... 14

ICSID, Updated Background Paper on Annulment (Mar. 2024) .......... 16

IMF, *Total IMF Credit Outstanding, Movement From November 01, 2026 to November 24, 2026*, https://www.imf.org/external/np/fin/tad/balmov2.aspx?type=TOTAL .......... 22

*Suez, Sociedad General de Aguas de Barcelona S.A., and InterAgua Servicios Integrales del Agua S.A.* v. *Argentine Republic*,
ICSID Case No. ARB/03/17, "Procedural Details," available at
https://icsid.worldbank.org/cases/case-database/case-detail?CaseNo=ARB/03/17 .......... 17

## PRELIMINARY STATEMENT

Unable to seriously dispute that a stay would conserve judicial resources, prevent substantial hardship to the Republic, and impose little prejudice elsewhere, Petitioner[1] now asks this Court to hold—supposedly as a matter of first impression—that it lacks authority to grant one. Far from a novel theory, that argument has been rejected, repeatedly, by courts in this district. They instead regularly stay recognition and enforcement of ICSID arbitral awards under a familiar standard that "weigh[s] competing interests and maintain[s] an even balance" between judicial economy and hardship to the parties. *Belize Soc. Dev. Ltd.* v. *Gov't of Belize*, 668 F.3d 724, 732-33 (D.C. Cir. 2012). Applying that test, the answer here is straightforward. The Court should pause this action while the Committee decides the Republic's Annulment Application, which will be fully briefed by early 2027 and heard on March 11-12, 2027. Petitioner's challenges to the Court's authority and the merits of a stay fail for several reasons.

*First*, neither the ICSID Convention nor 22 U.S.C. § 1650a displaces the Court's inherent power to "control the disposition of the causes on its docket." *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936). Petitioner's claim to raise this argument for the first time ignores decisions that directly address (and reject) it. As those rulings make clear, this Court has inherent authority to grant a stay absent "any express rule or statute" to the contrary. *United States* v. *Williamson*, 161 F.4th 803, 809 (D.C. Cir. 2025). No such rule or statute exists here: Section 1650a directs that ICSID awards "shall be enforced," but says nothing about when. And Article 53(1) of the ICSID Convention governs the parties' obligation to comply with an award, not a domestic court's control of its own docket. (*See infra* Section I.A.)

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Republic's Motion to Stay the Proceeding and the accompanying Memorandum of Points and Authorities ("Mot.," ECF No. 24).

*Second*, the Committee's lifting of its provisional stay does not resolve this motion. The stay ended only because the Republic's financial constraints prevented it from furnishing security of more than $843 million, and Petitioner refused to consider any reduced amount. That unmet condition does not erase the Committee's express finding of the Republic's hardship or answer the separate judicial economy inquiry here, including whether this Court should devote its resources to recognizing and enforcing an award that may soon be annulled. Courts in this District have repeatedly stayed enforcement after an ICSID stay ended, including where the sovereign failed to satisfy a security condition. (*See infra* Section I.B.)

*Third*, the balance of interests decisively favors a stay.

**Judicial Economy.** A brief stay avoids the time, expense, and complications of entering judgment and pursuing execution, and having to then undo those measures if the Award is later annulled. This prospect "is not merely wishful thinking," as the Republic has identified serious defects in the Award, including jurisdiction exercised over waived claims, a denial of cross-examination, and a damages model withheld from the Republic. More generally, Petitioner's own ICSID data (Opp. at 3, 16-17) show that nearly 20 percent of decided annulment applications succeed in whole or in part—not the 5 percent it asserts. (*See infra* Section II.A.)

**Prejudice to Petitioner.** Petitioner's opposition confirms that a stay will cost it very little. Contrary to its claims that the stay would be "indefinite" (Opp. at 19), Petitioner's data demonstrate that the annulment proceedings are likely to be resolved within six months to a year of the March 2027 hearing. During a limited stay, interest would continue to accrue at the rate prescribed by the Award, compensating Petitioner for the short delay. Petitioner's undertaking to segregate any recovered funds also undercuts its assertion that a brief delay would deprive it of

higher investment returns. And Petitioner identifies no attachable asset at risk of being seized during the short stay. (*See infra* Section II.B.)

**Hardship to the Republic.** The Republic, by contrast, faces concrete and irremediable hardship absent a stay. The Committee found that hardship "sufficiently substantiated," citing "the deprivation of funds needed for [the Republic's] public policies and social programs," which "would likely not be reparable should the Award be enforced and subsequently annulled." (Ex. 2 (Stay Decision) ¶ 85.) Proceeding now would allow Petitioner to seek execution before the Committee rules on annulment. That would divert scarce funds from the Republic's essential public needs—a harm that the Committee recognized "could not be retroactively remedied" (*id.* ¶ 85). (*See infra* Section II.C.)

The competing hardships are not comparable. If the Court stays this action, Petitioner faces a limited delay and is compensated by interest. If the Court does not, the Republic's citizens bear a cost that cannot be undone. The Court should grant this motion.

## ARGUMENT

### I. This Court Has Well-Settled Authority to Stay Enforcement of the Award.

Petitioner argues that the ICSID Convention, as implemented by 22 U.S.C. § 1650a, displaces the Court's inherent judicial authority to stay enforcement. (Opp. at 8-13.) This theory is baseless. *First*, Petitioner mischaracterizes the issue as one of first impression (Opp. at 11), ignoring numerous decisions in this District rejecting this very argument. *Second*, it improperly equates Section 1650a's direction that awards "shall be enforced" with immediate enforcement, manufacturing a conflict with the Court's inherent authority where none exists. *Third*, it misreads Article 53(1) of the ICSID Convention as vesting in ICSID exclusive authority to stay enforcement. Neither Section 1650a nor the ICSID Convention supports Petitioner's position, so it is no surprise that courts have consistently rejected it.

Petitioner separately argues that, even if this Court retains inherent authority to control its docket, it should treat the Committee's decision to lift its own stay as dispositive. (Opp. at 11-13.) That argument makes no sense. The Committee lifted the stay only because the Republic, due to economic constraints, was unable to post a security of *over $843.7 million*—the *full* amount of principal and interest demanded as due under the Award. (Ex. 2 (Stay Decision) ¶¶ 108, 110; Ex. 10 (Apr. 15, 2026 Ltr. from Petitioner).) The Republic's inability to immediately post a massive bond has nothing to do with the standard this Court applies in considering a stay, which depends on judicial economy and balances the substantial hardship of going forward against a limited delay.

### A. The ICSID Convention, Implemented by 22 U.S.C. § 1650a, Does Not Displace the Court's Inherent Authority to Stay Enforcement.

Petitioner asserts that courts granting stays of enforcement proceedings "appear not to have considered (because the parties in those cases did not argue) the threshold question" of whether Section 1650a and the ICSID Convention strip federal courts of their inherent authority to stay enforcement of an ICSID award. (Opp. at 11.) That is wrong. At least four courts in this District—including *Tethyan Copper Co. Pty Ltd.* v. *Islamic Republic of Pakistan*, 590 F. Supp. 3d 262 (D.D.C. 2022), a case cited over nineteen times in Petitioner's Opposition (*see* Opp. at 2-3, 8, 14-15, 17-19, 21-24)—confronted this very question, and none accepted Petitioner's answer. Those decisions accord with the numerous other courts in this District that have exercised judicial authority to stay enforcement of ICSID awards pending annulment. (*See* Mot. at 1, 5-7.)

In *Tethyan*, the award creditor advanced the same statutory argument Petitioner makes here, contending that "only ICSID can impose a stay on enforcement of its own awards" because "Congress's direction in 22 U.S.C. § 1650a that courts 'shall' enforce ICSID awards withdraws courts' discretionary authority to delay enforcement of a valid award." 590 F. Supp.

3d at 269. Although the court ultimately ruled on other grounds, it observed that "[t]his argument contradicts most decisions in this district" and that the creditor "identifie[d] no court that has held that it lacks the power to stay enforcement of an ICSID award." *Id.*

Other courts have indeed squarely rejected this argument. In *RWE Renewables GmbH* v. *Kingdom of Spain*, the court rejected the contention that a stay pending annulment "would violate this Court's obligation under the ICSID Convention to enforce the arbitral award." No. 21-cv-03232 (JMC), ECF No. 28 (Order), at 4 (D.D.C. Apr. 13, 2023). Citing *Tethyan*, it held that while Section 1650a "limits the types of substantive arguments the Court may adjudicate," it "does not restrict the Court's inherent power to manage its docket." *Id.* Similarly, when the creditor in *9REN Holding S.A.R.L.* v. *Kingdom of Spain* argued that "under the ICSID, this court does not have discretion to stay the proceedings," the court held that its "authority to issue the stay arises under its inherent power." 2020 WL 5816012, at *3 (D.D.C. Sept. 30, 2020). And in *Cube Infrastructure Fund SICAV* v. *Kingdom of Spain*, the court reached the same conclusion, rejecting the argument that Article 53 of the ICSID Convention "expressly precludes this Court's examination of the discretionary factors" governing a stay. 2021 WL 7447978, at *4 (D.D.C. May 17, 2021). As the court explained, its "authority to issue the stay arises under its inherent power," and a stay was warranted even though the ICSID committee had declined to issue one. *Id.*[2]

Those decisions reflect settled principles of inherent judicial authority. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

---

[2] The two *Tenaris S.A.* v. *Bolivarian Republic of Venezuela* decisions that Petitioner cites (Opp. at 11) denied stays as unnecessary because the petitioner already needed OFAC approval to enforce. 2020 WL 3265476 (D.D.C. June 17, 2020), at *4; 2021 WL 1177996 (D.D.C. March 29, 2021), at *4. Their observations that the court "may" lack discretion or authority were dicta.

for litigants." *Landis*, 299 U.S. at 254. Courts "do not lightly assume that Congress has intended to depart from . . . the scope of a court's inherent power," and critically, that power is not displaced absent a "clear[] expression of purpose." *Chambers* v. *NASCO, Inc.,* 501 U.S. 32, 47, 49 (1991) (citing *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 313 (1982); *Link* v. *Wabash R. Co*., 370 U.S. 626, 630-32 (1962)). Accordingly, as Petitioner acknowledges, a court retains its inherent authority, including the authority to stay a case on its own docket, so long as "doing so does not contradict any express rule or statute." (Opp. at 1, 8 (quoting *Williamson*, 161 F.4th at 809).)

Petitioner cannot meet that high standard. It identifies no rule or statute that expressly prohibits a stay. Instead, it relies on a strained reading of Section 1650a's command that ICSID awards "shall be enforced," that statute's preclusion of challenges to enforcement based on the Federal Arbitration Act ("FAA"), and Article 53(1) of the ICSID Convention. (Opp. at 8-11.) None supplies the "clear[] expression of purpose" required to displace this Court's inherent authority to manage its own docket. *Chambers*, 501 U.S. at 49.

Section 1650a does not expressly address, let alone prohibit, a stay of enforcement. It provides only that an ICSID award "shall be enforced" and "given the same full faith and credit" as a final judgment of a state court. 22 U.S.C. § 1650a(a). A temporary stay does not contradict this language. As courts have recognized, Section 1650a says nothing about *when* a court must adjudicate a request for enforcement. *Perenco Ecuador Ltd.* v. *Republic of Ecuador*, 2023 WL 2536368, at *6 (D.D.C. Mar. 16, 2023) ("The ICSID Convention and its implementing statute do not provide a deadline for enforcement.") The timing of enforcement therefore remains subject to the Court's inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. Petitioner acknowledges that the D.C. Circuit applies this rule, and courts regularly stay enforcement of

foreign arbitral awards by "weigh[ing] . . . judicial economy and any possible hardship to the parties." (Opp. at 13 (quoting *Belize*, 668 F.3d at 732-33).)

The statement in Section 1650a that the FAA "shall not apply" to ICSID awards also does not preclude a stay. 22 U.S.C. § 1650a. Petitioner argues that because the FAA expressly permits stays or deferral of enforcement for certain international arbitrations, Congress's decision not to apply the FAA to ICSID awards (or to expressly authorize stays of ICSID enforcement proceedings) amounts to an implicit prohibition. (Opp. at 10.) As a threshold matter, an implicit prohibition would not be enough: again, courts retain inherent power to stay their cases where "doing so does not contradict any *express* rule or statute." *Williamson*, 161 F.4th at 809 (emphasis added). In any event, Section 1650a does not even imply a rule against stays; the statute simply provides that the FAA as a whole "shall not apply to enforcement of awards" with no mention of, much less a prohibition on, stays. 22 U.S.C. § 1650a. Declaring that an entire statute "shall not apply" does not implicitly enact the opposite of every one of the excluded statute's provisions.

To the contrary, statutory silence only supports a negative inference when "the term left out must have been meant to be excluded." *Chevron U.S.A. Inc.* v. *Echazabal*, 536 U.S. 73, 81 (2002); *see also Barnhart* v. *Peabody Coal Co*., 537 U.S. 149, 168 (2003) (omission must reflect "deliberate choice, not inadvertence"). Here, there is no indication that Congress intended to preclude stays of ICSID enforcement proceedings through the "shall not apply" provision. Congress instead excluded the FAA for a different reason—to "render[] [the FAA's] grounds of attack 'unavailable to ICSID award-debtors in federal court enforcement proceedings.'" *TECO Guatemala Holdings, LLC* v. *Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019); *see also Tethyan*, 590 F. Supp. 3d at 268 (Congress "prohibited courts from using the [FAA's] more

robust form of judicial review . . . to analyze ICSID awards").[3] There is no indication that Congress intended to preclude courts from using ordinary docket-management tools for ICSID-related proceedings.

*Finally*, the ICSID Convention does not reserve authority to stay enforcement exclusively to the *ad hoc* committee. Petitioner argues that Article 53(1) of the ICSID Convention permits a stay only "pursuant to the relevant provisions of this Convention," and that Article 52(5), which authorizes stays by an *ad hoc* committee, is the only such provision. (Opp. at 8-9.) But Article 53(1) addresses only the obligations of a "party": "[e]ach party shall abide by and comply with the terms of the award *except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention*." ICSID Convention Art. 53(1) (emphasis added). It does not purport to control a domestic court's enforcement authority or its ability to manage its docket by staying enforcement proceedings.[4]

Accordingly, neither Section 1650a nor the ICSID Convention contains the "express rule or statute" that *Williamson* requires. This Court retains its inherent authority to stay this action pending the resolution of the ICSID annulment proceedings.

### B. The Committee's Stay Decision Does Not Resolve Whether This Court Should Stay These Proceedings.

As a fallback, Petitioner urges this Court to defer to the Committee's decision lifting its provisional stay, characterizing the Republic's motion as an effort to relitigate arguments

---

[3] *Micula* v. *Gov't of Romania* does not suggest otherwise. (Opp. at 10 (citing 104 F. Supp. 3d 42, 50 (D.D.C. 2015)).) *Micula* addressed whether Section 1650a permits *ex parte* recognition, and its observation that Congress was "keenly aware" of the FAA concerned only the FAA's confirmation procedure under 9 U.S.C. § 9—not its stay provisions. 104 F. Supp. 3d at 44.

[4] Petitioner also cites *TECO* for the proposition that, absent an ICSID stay, the sovereign "must 'abide by and comply with the terms of the award.'" (Opp. at 11 (citing 414 F. Supp. 3d at 108).) But this language has nothing to do with a domestic court's authority to stay its own enforcement proceedings.

the Committee "already considered and rejected." (Opp. at 1, 11-13.) This conflates two distinct legal inquiries, misstates the Committee's findings, and raises yet another argument that courts in this District have repeatedly rejected.

Contrary to Petitioner's assertion (Opp. at 12), this Court faces "considerations unique to" it that the ICSID Committee had no occasion to resolve, including whether a stay would conserve *this Court's* judicial resources and avoid potentially unnecessary proceedings concerning an award that may later be annulled in whole or in part. And because a stay here would neither reinstate the ICSID stay—which was effective in every Contracting State—nor excuse the Republic's obligations under the Convention, it would not be an "end-run" around the Committee's stay decision (Opp. at 12).

Numerous courts in this District have rejected the contention that the absence of an ICSID stay requires U.S. courts to follow suit. In *Unión Fenosa Gas, S.A.* v. *Arab Republic of Egypt*, as here, an ICSID committee terminated its stay after the award debtor was unable to provide the required security. 2020 WL 2996085, at *5 (D.D.C. June 4, 2020). The court nevertheless stayed the enforcement proceeding, explaining that "[t]he conditions predicate for a stay in the ICSID . . . are not synonymous with those pertinent here." *Id.* *InfraRed Env't Infrastructure GP Ltd.* v. *Kingdom of Spain* likewise stayed enforcement and cautioned against "overstat[ing] the significance of the Annulment Committee's decision to lift its stay on enforcement of the award." 2021 WL 2665406, at *6 (D.D.C. June 29, 2021). In *NextEra Energy Glob. Holdings B.V.* v. *Kingdom of Spain*, the court rejected the contention that "because the annulment committee lifted its stay on enforcing the award, this court should not stay this case." 2020 WL 5816238, at *3 (D.D.C. Sept. 30, 2020). And *9REN* observed that "courts in this district have issued stays in cases arising under the ICSID, even when the ICSID lifted its stay on enforcing

an award before issuing a decision in annulment proceedings." 2020 WL 5816012, at *3 (D.D.C. Sept. 30, 2020). Indeed, just last week, a court in this District stayed enforcement proceedings pending resolution of Colombia's ICSID annulment application, even though the ICSID committee had lifted its own stay after Colombia failed to post an irrevocable bank guarantee. *See Telefónica, S.A.* v. *Republic of Colombia*, No. 1:26-cv-01930-JDB, ECF No. 13 (Memorandum Opinion and Order) at 4, 10 (D.D.C. Nov. 18, 2026) ("Telefónica's argument that this Court should deny a stay because the ICSID Annulment Committee lifted its own stay on enforcement is also mistaken.").

Petitioner is wrong that *Matter of Arb. of Certain Controversies Between Getma Int'l and Republic of Guinea* counsels against a stay here because no ICSID stay remains in place. (Opp. at 12 (citing 142 F. Supp. 3d 110, 116 (D.D.C. 2015)).) In that non-ICSID case, a stay followed automatically from Guinea's appeal under the applicable arbitration rules. 142 F. Supp. 3d at 116. But this Court also recognized *the prudence of issuing a stay* to allow the post-award review process under the applicable arbitration rules to "run its course." *Id.* at 114-15. As the Court explained, it would make little sense to risk "more expensive litigation involving more complex issues" if the award was confirmed and then set aside, particularly given the "likely possibility" of an annulment decision within a year. *Id.* at 114-16. Those same factors urge a stay here. Allowing the ICSID process to conclude before moving forward reflects "[r]espect for ICSID's . . . annulment review process"—not the opposite, as Petitioner contends. (Opp. at 12-13).

Moreover, Petitioner is wrong that the Committee "considered and rejected" the Republic's arguments for a stay. (Opp. at 1.) The exact opposite is true: the "key point" for the Committee was that "the deprivation of funds needed for [the Republic's] public policies and

social programs" "would likely not be reparable should the Award be enforced and subsequently annulled." (Ex. 2 (Stay Decision) ¶ 85.) The Committee considered the Republic's "hardship" to be "sufficiently substantiated" because public needs left unmet during enforcement could not be cured retroactively. (*Id.*)

The Committee accordingly granted a stay, conditioned on the Republic providing "suitable financial security . . . covering all compensation and interest . . . under the Award." (*Id.* ¶ 106.) On April 15, 2026, Petitioner demanded security of "over US$843.7 million"—or the full amount of the Award plus then-accrued interest according to its calculations. (Ex. 10 (Apr. 15, 2026 Ltr. from Petitioner).) Given ongoing economic hardship, the Republic could not meet those terms but offered to discuss reduced security. (Ex. 11 (May 18, 2026 Ltr. from the Republic).) Petitioner declined to consider any compromise. (Ex. 12 (May 19, 2026 Ltr. from Petitioner).) The Committee then lifted the stay because the security condition was unmet—not because it repudiated its hardship findings or concluded that a stay was unwarranted. (Ex. 3 (July 9, 2026 Ltr. from the Secretary of the ICSID Committee); *see* Ex. 2 (Stay Decision) ¶ 110.)

For these reasons, the Committee's lifting of its provisional stay does not preclude a stay here.

## II. Judicial Economy and Balance of Hardships Weigh in Favor of a Brief Stay of Enforcement.

In determining whether a stay is warranted, this Court must balance three factors: (i) the "benefits of a stay"; (ii) the "hardship to the [Republic] of denying a stay"; and (iii) "any injury to [Petitioner] from issuing a stay." *Hulley Enters. Ltd.* v. *Russian Fed'n*, 211 F. Supp. 3d 269, 280 (D.D.C. 2016). Each factor decisively favors a stay here.

### A. A Stay Would Promote Judicial Economy.

As the Republic explained, judicial economy strongly favors a stay for two reasons. (Mot. at 6-9.) *First*, premature recognition and enforcement risk "more expensive litigation involving more complex issues" and further delay if the Award is later annulled. (*Id.* at 6 (citing *Masdar Solar & Wind Cooperatief U.A.* v. *Kingdom of Spain*, 397 F. Supp. 3d 34, 39 (D.D.C. 2019)).) *Second*, annulment "is not merely wishful thinking" because the Republic has identified multiple serious defects in the Award, any one of which could support annulment under Articles 52(1)(b), (d), or (e) of the ICSID Convention. (*Id.* at 7-9 (citing *Unión Fenosa*, 2020 WL 2996085, at *4).) Petitioner offers no persuasive response to either point. (Opp. at 14-18.)

*First*, Petitioner argues that a stay would not conserve judicial resources because the issues before this Court and the Committee do not overlap—meaning that awaiting annulment would supposedly neither "narrow the issues" nor provide "additional clarity." (*Id.* at 14-16.) But the Committee's decision could vacate the Award and eliminate the basis for enforcement altogether. That outcome obviously conserves judicial resources regardless of whether the two proceedings present overlapping legal questions. Moreover, if an award is later annulled, proceeding with enforcement means that the court "acted for naught" and raises "the possibility for conflicting judgments," *InfraRed*, 2021 WL 2665406, at *3, 5, and "more expensive litigation involving more complex issues," *Masdar*, 397 F. Supp. 3d at 39. This could include further proceedings to vacate or amend the judgment, unwind execution, and potentially the "arduous task of trying to recover seized assets." *RREEF Infrastructure (G.P.) Ltd.* v. *Kingdom of Spain*, 2021 WL 1226714, at *3 (D.D.C. Mar. 31, 2021).[5] The limited stay the Republic requests avoids this potentially unnecessary cycle of enforcement and reversal.

[5] Petitioner dismisses these decisions as warranting stays because of overlapping and "[t]hickly tangled" EU-law questions. (Opp. at 15-16.) But as the decisions make clear, those

Petitioner's contrary authorities involved requests to await U.S. appellate decisions that might clarify governing law, rather than pending ICSID proceedings that could annul the awards themselves. In *ACF Renewable Energy Ltd.* v. *Republic of Bulgaria*, Bulgaria "did not seek annulment of the tribunal's award" and instead requested a stay pending a certiorari petition. 804 F. Supp. 3d 141, 148, 152 (D.D.C. 2025). Likewise, in *Blasket Renewable Investments, LLC* v. *Kingdom of Spain*, Spain's annulment applications had already been rejected, and it sought a stay pending D.C. Circuit appeals and a certiorari petition. 2026 WL 2941227, at *3-4, 11-13 (D.D.C. Sept. 30, 2026). Both courts found that binding D.C. Circuit precedent had already resolved the relevant legal questions, and neither confronted the prospect that a pending ICSID annulment decision would eliminate or reduce the award being enforced.

A stay is especially efficient at this stage. Although the Republic has answered the Petition (ECF No. 25), the resource-intensive stages of this action—summary judgment, any proceedings under 28 U.S.C. § 1610(c), any post-judgment discovery, and any execution efforts—all lie ahead. *Cf. Tethyan*, 590 F. Supp. 3d at 270 (denying stay in part because "[b]riefing before this Court on [the relevant] issues is now complete"). If the Republic prevails in the annulment proceedings, a stay will have preserved these resources in full. If annulment fails, enforcement can proceed. And if the "path to judgment" is as "straightforward" as Petitioner suggests (Opp. at 14-15), awaiting the Committee's decision will allow for prompt enforcement if the time comes—while sparing the Court from entering a judgment that a later annulment could require it to undo.

---

stays rested heavily on considerations of judicial economy. Petitioner also asserts that since *NextEra Energy Global Holdings B.V.* v. *Kingdom of Spain*, "courts have been far less willing to grant further stays of enforcement based on parallel proceedings." (Opp. at 16 (quoting 112 F.4th 1088, 1109-10 (D.C. Cir. 2024)).) But *NextEra*'s language about "open[ing] the doors" of courthouses to ICSID award holders referred to limiting anti-suit injunctions, not stays pending enforcement. *Id.* at 1109. And none of the subsequent decisions Petitioner cites (Opp. at 16) even involved a pending ICSID annulment proceeding.

*Second*, the Republic has identified substantial grounds for annulment, meaning the prospect of annulment is particularly concrete here. The Republic's Annulment Application details serious procedural and substantive defects in the Award under Articles 52(1)(b), (d), and (e) of the ICSID Convention, including that the Tribunal (i) exercised jurisdiction over claims that Petitioner had waived through its subsidiaries; (ii) barred cross-examination of the only two Petitioner's witnesses with direct knowledge of those waivers; (iii) quantified damages using an economic model to which the Republic was denied access; and (iv) failed to state reasons connecting the alleged breaches to the damages awarded. (Mot. at 8.) Any one of these grounds, if established, could support full or partial annulment, and ICSID committees have annulled awards for comparable defects. (*Id.* at 8-9 (collecting cases).) Rather than address the Award's deficiencies, Petitioner dismisses the Annulment Application as an effort to "reargue substantive and procedural issues that the Tribunal already resolved." (Opp. at 18.) But Petitioner acknowledges that annulment is designed to remedy "violation[s] of fundamental principles [that] undermine[] the integrity of arbitral proceedings"—precisely the type of defects the Republic has identified here. (*Id.* at 16.)

Petitioner's citation to historical annulment rates substantially understates the possibility of annulment. It asserts that only about five percent of ICSID awards are annulled, citing eight full annulments and 20 partial annulments out of 543 awards rendered since 1972. (Opp. at 3, 16-17.) But Petitioner reaches that figure by including every award rendered, including awards that no party sought to annul. Of the 152 annulment applications actually decided by ICSID committees, 28 (including three filed by the Republic)—over 18 percent, or nearly one in five—resulted in full or partial annulment. *See* ICSID, *The ICSID Caseload—Statistics*, Issue

2026-2, at 21 (2026). Petitioner's selective calculation provides no basis to dismiss the Republic's annulment prospects as "merely wishful thinking." *Unión Fenosa*, 2020 WL 2996085, at *4.

Nor does it undermine the prospects for annulment that the dissent focuses on "legal costs and fees" rather than substantive errors. (Opp. at 17-18 & n.16.) ICSID committees regularly annul unanimous awards and awards whose dissents did not address the annulled issue.[6] The same outcome should hold here, where the Republic has identified numerous serious errors that warrant annulment. A dissent is merely one of "several unique circumstances" favoring a stay, not a prerequisite to one. *Unión Fenosa*, 2020 WL 2996085, at *4-5.

A limited stay would allow the Committee to resolve those grounds before the Court and parties undertake recognition and enforcement proceedings that annulment could make unnecessary or require them to undo. Judicial economy therefore strongly favors a stay.

### B. A Limited Stay Would Cause Petitioner Little, If Any, Prejudice.

A limited stay would result in no meaningful prejudice to Petitioner: an annulment decision can reasonably be expected in 2027, interest continues to accrue on the Award meanwhile, and Petitioner retains its substantive enforcement right if the Award survives annulment. (Mot. at 9-11.) Petitioner nevertheless contends that a stay would prolong its wait "indefinite[ly]," that interest cannot adequately compensate for the delay, and that postponing recognition would

---

6 *See TECO Guatemala Holdings LLC* v. *Republic of Guatemala*, ICSID Case No. ARB/10/23, Decision on Annulment (Apr. 5, 2016) ¶ 382 (partially annulling a unanimous award); *Tidewater Investment SRL, Tidewater Caribe, C.A.* v. *The Bolivarian Republic of Venezuela*, ICSID Case No. ARB/10/5, Decision on Annulment (Dec. 27, 2016), ¶ 230 (partially annulling a unanimous award); *Perenco Ecuador Limited* v. *Republic of Ecuador*, ICSID Case No. ARB/08/6, Decision on Annulment (May 28, 2021) ¶ 744 (partially annulling a unanimous award); *Agility Public Warehousing Company K.S.C.P.* v. *Republic of Iraq*, ICSID Case No. ARB/17/7, Decision on Annulment (Feb. 8, 2024) ¶ 207 (partially annulling a unanimous award); *Sempra Energy International* v. *Argentine Republic*, ICSID Case No. ARB/02/16, Decision on Annulment (June 29, 2010) ¶ 229 (annulling a majority decision where the dissent was unrelated to reasons for annulment).

jeopardize collection. (Opp. at 18-22.) None of these arguments has merit, much less establishes prejudice sufficient to outweigh the judicial economy served by a limited stay and the hardship that premature enforcement would impose on the Republic.

*First*, Petitioner's repeated description of the requested stay as "indefinite" is simply wrong. (Opp. at 1, 14, 19, 20.) Petitioner does not dispute that briefing will conclude in early 2027, that the Committee will hear argument on March 11-12, 2027, or that the governing 1984 ICSID Arbitration Rules require a decision within 60 days after closure of the proceedings, subject to a single 30-day extension. (*Id.* at 7.) Petitioner instead argues that closure can come "well after" the hearing (*id.*), which self-evidently does not make a stay indefinite.

*Second*, any delay after the hearing is likely to be brief. ICSID committees frequently rule in annulment proceedings involving the Republic within six months of a hearing,[7] and Petitioner's own statistics suggest that a decision is likely to come quickly. (Opp. at 7 (citing ICSID, Updated Background Paper on Annulment (Mar. 2024) ("ICSID Paper") ¶ 67).) All 73 of the new annulment decisions considered in the ICSID Paper arose under the more leisurely 2006 Rules, which allowed 120 days after closure for a decision, extendable by 60 days—twice the period permitted by the governing rules here. *See* ICSID Paper ¶ 1; ICSID Arbitration Rules (2006), Rules 38, 46, 53. Even so, nearly three-quarters of those decisions were issued within a year of the hearing, and the average time from the hearing to issuance of those decisions was nine

---

[7] *See, e.g.*, *Teinver S.A., Transportes de Cercanías S.A., and Autobuses Urbanos S.A.* v. *Argentine Republic*, ICSID Case No. ARB/09/1, Decision on Annulment (May 29, 2019) ¶ 41 (less than 4 months after hearing); *Total S.A.* v. *Argentine Republic*, ICSID Case No. ARB/04/01, Decision on Annulment (Feb. 1, 2016) ¶ 32 (5 months after hearing); *Daimler Financial Services A.G.* v. *Argentine Republic*, ICSID Case No. ARB/05/01, Decision on Annulment (Jan. 7, 2015) ¶ 15 (less than 6 months after hearing); *CMS Gas Transmission Company* v. *Argentine Republic*, ICSID Case No. ARB/01/8, Decision on Annulment (Sept. 25, 2007) ¶ 28 (approximately 6 months after hearing).

months. (ICSID Paper ¶ 67.) In *El Paso Energy Int'l Co.* v. *Argentine Republic* (Opp. at 7-8), for example, where post-hearing submissions delayed closure by ten months, the committee still ruled within a year of the hearing. ICSID Case No. ARB/03/15, Decision on Annulment ¶¶ 21, 23, 25 (Sept. 22, 2014). Petitioner's cherry-picked examples of longer delays (Opp. at 7-8, 20) were slowed by pre- or post-annulment-hearing disputes there is no reason to expect here.[8] Courts in this District have stayed enforcement of arbitral awards despite expected delays substantially longer than one year. *See Hulley*, 211 F. Supp. 3d at 288 (two and a half years); *Novenergia II - Energy & Env't (SCA)* v. *Kingdom of Spain*, 2020 WL 417794, at *3 (D.D.C. Jan. 27, 2020) (one to two years).

*Third*, decisions finding prejudicial delay (Opp. at 19) are distinguishable. In *NJSC Naftogaz of Ukraine* v. *Russian Federation*, a stay of enforcement would have harmed the petitioner because appeal proceedings were—unlike here—actually indefinite. 2026 WL 2069990, at *6 (D.D.C. July 17, 2026) (Hague Court of Appeal was "free to extend the deadline," and a further appeal to the Dutch Supreme Court could prolong the proceedings indefinitely). Similarly, in *Perimetral Oriental de Bogotá, S.A.S.* v. *Agencia Nacional de Infraestructura*, the respondent "ha[d] given no time estimate for the conclusion" of set-aside proceedings before the Colombian Council of State, and its belated stay request suggested an intent to "delay resolution

---

8 *Suez* involved a one-month delay associated with the claimant's request to submit additional evidence. *Suez, Sociedad General de Aguas de Barcelona S.A., and InterAgua Servicios Integrales del Agua S.A.* v. *Argentine Republic*, ICSID Case No. ARB/03/17, "Procedural Details," available at https://icsid.worldbank.org/cases/case-database/case-detail?CaseNo=ARB/03/17. *EDF* was suspended for more than three months while a proposal to disqualify a committee member was resolved. *EDF Int'l S.A.* v. *Argentine Republic*, ICSID Case No. ARB/03/23, Decision on Annulment ¶¶ 13, 16 (Feb. 5, 2016). And *Occidental* involved a post-hearing application to modify a stay decision. *Occidental Petroleum Corp.* v. *Republic of Ecuador (II)*, ICSID Case No. ARB/06/11, Decision on Annulment ¶¶ 42-43 (Nov. 2, 2015).

of the dispute." 2026 WL 3347264, at *3-4 (D.D.C. Nov. 5, 2026). Here, by contrast, the Republic sought a stay at the outset and has demonstrated that a decision is likely to be made in 2027.[9]

*Fourth*, the Award's interest provision substantially mitigates the financial consequences of a limited stay. Interest accrues at the one-year U.S. Treasury Bills rate, which was 4.46% as of October 9, 2026. (Mot. at 10.) Courts in this District have found that even substantially lower rates alleviate an award holder's hardship pending annulment. *See InfraRed*, 2021 WL 2665406, at *6 (interest rate of 2 percent "diminish[ed] . . . hardship even further"); *RREEF*, 2021 WL 1226714, at *2-3 (2.07% interest rate sufficient compensation for delay).[10]

Petitioner responds that the 4.46% interest rate "yield[s] far less than the returns [it] could make if it had access to those funds." (Opp. at 22.) The Tribunal rejected this very argument, finding that "a short-term risk-free rate would be appropriate to achieve full reparation." (Ex. A (Award) ¶¶ 568, 573.) Nor does the Committee's observation that interest is "unlikely to fully compensate" Petitioner "for the loss of immediate access to the funds" and "potential additional enforcement costs" (Opp. at 22 (quoting Ex. 2 (Stay Decision) ¶ 92)) change the analysis. Petitioner would not enjoy "immediate access" to any funds collected pending an annulment decision, because it has undertaken to hold them in a segregated account during that period. (Opp. at 24.) And far from imposing "additional enforcement costs," a stay would avoid the costs of post-judgment proceedings—and of unwinding any execution—should the Award be annulled.

---

9 Nor does Petitioner's claim to have "waited nearly a quarter-century" establish prejudice. (Opp. at 18.) By its own account, the arbitration was suspended from 2006 to 2018 by agreement while the parties pursued settlement (*Id.* at 4), suggesting limited prejudice from a short stay now.

10 *Chevron Corp.* v. *Republic of Ecuador* does not establish that accruing interest is categorically insufficient to mitigate delay. There, the court assessed interest alongside the dispute's procedural posture: the award had already survived set-aside review in the Hague and only Ecuador's appeal remained pending. 949 F. Supp. 2d 57, 72-73 (D.D.C. 2013). Here, the Committee has not yet ruled on annulment.

*Fifth*, as to the "crux" of Petitioner's concern—namely, whether it "will be compensated at all" (Opp. at 19)—Petitioner identifies no reason why a limited stay would impact its ability to collect any Award that survives annulment. Petitioner's conclusory assertion that a "delay may jeopardize [its] ability to obtain priority liens on [the Republic's] assets" (Opp. at 22) is baseless: Petitioner has identified no attachable asset at risk, and the limited stay requested here would leave Petitioner free to pursue enforcement in other countries. *See InfraRed*, 2021 WL 2665406, at *6 (prejudice mitigated where plaintiffs could "seek enforcement of the award" in other jurisdictions "during the pendency of the annulment proceedings"). Indeed, the court in *Telefónica* recently dismissed precisely this argument as "wholly speculative." No. 1:26-cv-01930-JDB, ECF No. 13 (Memorandum Opinion and Order) at 9-10 ("Courts would have little room to stay arbitration enforcement actions if stays were routinely denied every time a foreign country owed other debts and lamented its financial condition.").

Petitioner's assertion that the Republic has "flout[ed]" obligations to creditors or engaged in "abusive tactics" in other cases (Opp. at 21-22) is baseless and irrelevant to ultimate payment here. More than five years ago, the Second Circuit determined that the Republic was "'recalcitrant' no more." *Bison Bee LLC* v. *Republic of Argentina*, 778 F. App'x 72, 73 (2d Cir. 2019); *Bugliotti* v. *Republic of Argentina*, 952 F.3d 410, 415 (2d Cir. 2020). The cases cited by Petitioner (Opp. at 21-22) are not remotely comparable. In *Tethyan*, for example, Pakistan refused to commit to pay the award if annulment failed, raising concerns about whether Pakistan would "abide by" the tribunal's decision. 590 F. Supp. 3d at 271. Here, in contrast, the Committee specifically found such a commitment "redundant" and declined to require one. (Ex. 2 (Stay Decision) ¶¶ 105, 108(a).) In *Europcar Italia, S.p.A.* v. *Maiellano Tours, Inc.*, the judgment debtor filed foreign proceedings "initiated under circumstances indicating an intent to hinder or delay

resolution of the dispute." 156 F.3d 310, 317-18 (2d Cir. 1998). Here the Republic timely filed the Annulment Application pursuant to the ICSID Convention and seeks a related stay. (Ex. 2 (Stay Decision) ¶ 2.) That is respect for the review process prescribed by the ICSID Convention, not abuse of it. Indeed, *Europcar* itself recognized that where, like here, "there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." 156 F.3d at 317-18.

In sum, Petitioner's asserted prejudice supplies no basis to deny a limited stay.

**C. Denying a Stay Would Expose the Republic to Substantial and Irremediable Hardship.**

The Republic has shown that denying a stay would cause irreparable harm by diverting scarce funds from essential public needs and, if the Award is annulled, force the Republic to recover seized assets through burdensome litigation. (Mot. at 11-13.) In response, Petitioner disputes the Republic's fiscal showing, argues that execution-related harms are unlikely, and dismisses the Republic's concern about the difficulties of recovering seized assets as "unwarranted." (Opp. at 23-25.) None of these arguments rebut the hardship the Committee recognized or establish that the Court should disregard it. (Ex. 2 (Stay Decision) ¶ 85.)

*First*, Petitioner's assertion that the Republic has identified no "concrete fiscal hardship" disregards both the Republic's evidence and the Committee's findings. (Opp. at 25.) The Award's principal of $715.9 million is approximately 7.9 times the Republic's 2026 defense ministry budget, 4.8 times its justice ministry budget, and 3.6 times its budget for preventing communicable diseases. (Mot. at 12-13.) Petitioner does not dispute these figures. Citing "the deprivation of funds needed for [the Republic's] public policies and social programs," the Committee found the Republic's allegations of hardship "sufficiently substantiated" and identified that hardship as "the key point in this proceeding." (Ex. 2 (Stay Decision) ¶ 85.) It further

concluded that the harm to the Republic of being deprived of funds needed for critical services "would likely not be reparable should the Award be enforced and subsequently annulled." (*Id.* ¶ 85.) Petitioner repeatedly urges deference to the Committee elsewhere, yet fails to confront that finding here.

Petitioner also overlooks the substantial costs the Republic could incur as soon as judgment is entered, all while the validity of the Award remains under review. Even before attaching a single asset, Petitioner could seek post-judgment discovery from the Republic. *See* Fed. R. Civ. P. 69(a)(2); *Republic of Argentina* v. *NML Capital, Ltd.*, 573 U.S. 134, 138 (2014) ("The rules governing discovery in postjudgment execution proceedings are quite permissive.") The Republic would then have to divert personnel and public funds to gather and review records, respond to discovery requests, and litigate any disputes. If the Committee annuls the Award in whole or in part, the Republic could then face a *second* round of litigation to obtain relief from the judgment and undo any enforcement measures. (Mot. at 11-12.) Indeed, as this Court has recognized, there is "very real harm" whenever a court confirms an award, the petitioner "take[s] action to execute on the judgment," and a subsequent review "determine[s] that the award was improper." *Getma*, 142 F. Supp. 3d at 118. A limited stay would spare the Republic those injuries while the Committee determines whether, and to what extent, the Award may be enforced.

Rather than answer this evidence, Petitioner demands that the Republic identify a "particular expenditure" that enforcement would "displace." (Opp. at 25.) But public funds are fungible: diverting resources to satisfy the Award or engage in post-judgment discovery makes those funds unavailable for other public needs. No authority requires line-item accounting of what

will be cut.[11] In *Unión Fenosa*, for example, the court found hardship based on "the enormity of [the] award" relative to Egypt's "already fragile economy," with "$12 billion in debt to the International Monetary Fund," and the "immense shock" of COVID-19. 2020 WL 2996085, at *4. The Republic likewise has shown substantial hardship through evidence of the Award's magnitude and the potentially unnecessary post-judgment litigation costs against the nation's financial constraints.

Notwithstanding recent progress noted by the IMF (Opp. at 25 n.21), the Republic's financial challenges are substantial. The Republic is the IMF's largest debtor, owing approximately $42 billion—more than three times Egypt's debt when *Unión Fenosa* was decided.[12] In May, the IMF reported that the Republic's external position "remains vulnerable," that its net foreign-exchange position was "deeply negative," with net reserves excluding the IMF program at "around negative US$10 billion," and that it faced "still-high inflation," "low reserve buffers," and a "lack of sustained access to international capital markets amid sizable FX debt obligations." (Ex. 6 (May 8, 2026 IMF Country Report) at 9, 40, 66.) In this context, the Republic cannot absorb immediate enforcement of an award of over $732 million dollars before interest without impairing essential public spending. Indeed, Petitioner's own SEC filing from earlier this month recognizes that "[t]he overall economic climate in Argentina has deteriorated, resulting in volatility." (Ex. 13 (AES Corp., Nov. 3, 2026 Form 10-Q), at 74.)

---

[11] *OI Eur. Grp. B.V.* v. *Bolivarian Republic of Venezuela* is inapposite. (Opp. at 25 (citing 419 F. Supp. 3d 51, 56 (D.D.C. 2019)).) There, annulment had already been denied and judgment entered. 419 F. Supp. 3d at 53. Venezuela then sought a *further* 120-day stay of attachment and execution based on a humanitarian crisis, which the court required it to substantiate. *Id.* at 53-54. That holding does not establish any requirement to identify displaced expenditures when seeking a stay pending annulment.

[12] IMF, *Total IMF Credit Outstanding, Movement From November 01, 2026 to November 24, 2026*, https://www.imf.org/external/np/fin/tad/balmov2.aspx?type=TOTAL.

Petitioner's attempt to dismiss this hardship as the price of the Republic's "breach" fares no better. (Opp. at 25.) That response does not explain why the Republic and its citizens should bear irreparable consequences before the designated annulment process concludes. The Committee rejected precisely that reasoning, which improperly "prejudge[s] the outcome of the Annulment Application." (Ex. 2 (Stay Decision) ¶ 84.) This Court should reject it for the same reason.

*Second*, Petitioner cannot wave away these severe consequences on the basis that it will seek judgment before execution. (Opp. at 23.) Of course. But as Petitioner elsewhere admits, its entire purpose in this case is to execute on the judgment as quickly as possible, including by obtaining "priority liens" on the Republic's assets. (Opp. at 22.) Nor will the FSIA's requirement that this Court find that a "reasonable period of time" has passed before execution, 28 U.S.C. § 1610(c), ameliorate the Republic's hardship. Courts in this District have found periods as short as six weeks to two months to be "reasonable." *See, e.g.*, *Ned Chartering & Trading, Inc.* v. *Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001) (six weeks); *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 2017 WL 6349729, at *1, 3 (D.D.C. June 9, 2017) (60 days); *TECO Guatemala Holdings, LLC* v. *Republic of Guatemala*, 2020 WL 2934951, at *2 (D.D.C. June 2, 2020) ("the Court is unaware of any such precedent" where "a period of two months was found to be insufficient to satisfy [28 U.S.C.§ 1610(c)]"). If this case proceeds now, Petitioner could begin execution within months, leaving the Republic to shortly confront the very consequences Petitioner says are too remote to consider. Moreover, Petitioner could pursue post-judgment discovery, forcing the Republic to divert personnel and public funds to respond.[13]

---

[13] Although the court in *Tethyan* concluded Pakistan could raise hardship concerns at the execution stage, 590 F. Supp. 3d at 270-71, courts in this District have consistently treated the

*Third*, the Republic's concern about recovering seized assets is not, as Petitioner asserts, "unwarranted." (Opp. at 24.) Regardless of Petitioner's "offer to hold any collected funds in a segregated account," recoupment is an arduous task for which the Republic would bear the expense. (*Id.* (quoting Ex. 2 (Stay Decision) ¶ 82).) And as the Committee observed, the "key point" is that it can never remedy harms from "any public needs left unmet during the enforcement period—due to the diversion of available funds to satisfy the Award." (Ex. 2 (Stay Decision) ¶ 85.)

## CONCLUSION

For the foregoing reasons, the Court should stay the proceeding until the Republic's Annulment Application is resolved.

prospect of premature seizure as a reason to stay at the outset. *See Masdar*, 397 F. Supp. 3d at 40; *RREEF*, 2021 WL 1226714, at *8.

Respectfully submitted,

/s/ *Amanda F. Davidoff*
Amanda F. Davidoff (D.C. Bar No. 978033)
Stephanie M. Kelly (D.C. Bar No. 1671765)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Washington, D.C. 20006-5215
Telephone: (202) 956-7500
Facsimile: (202) 956-7676
davidoffa@sullcrom.com
kellys@sullcrom.com

Sergio J. Galvis (NY Reg. No. 1934264)
(*pro hac vice*)
Qingyang Song (NY Reg. No. 5925474)
(*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
galviss@sullcrom.com
songq@sullcrom.com

*Counsel for the Argentine Republic*

November 24, 2026

**CERTIFICATE OF SERVICE**

Pursuant to Local Civil Rule 5.4(d), I hereby certify that, on November 24, 2026, I caused the foregoing Respondent the Argentine Republic's Reply In Support of Its Motion to Stay the Proceeding to be electronically filed via the Court's CM/ECF system, which effected service of the document upon all counsel of record.

/s/ *Amanda F. Davidoff*
Amanda F. Davidoff

*Counsel for the Argentine Republic*